# EXHIBIT B



# Contract (Long Form)

This is a Contract between the below named Contractor ("Contractor"), an Ohio corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.

| | | |
|---|---|---|
| Contractor's Legal Name: | ACRT, INC. | PG&E Contract No. 4400007121 |
| Contractor's Address: | 13333 Home Avenue<br>Akron, OH 44310 | This Contract consists of 265 pages. |
| Project Name: | Pre-Inspection Services – Distribution, Reliability, and Transmission and System Orchard | |
| Job Location: | The Vegetation Management Program Manager Areas identified below and other locations in the PG&E service area, as mutually agreed:<br>Distribution and Reliability Work: Mission, East Bay, Stockton, Diablo, Sacramento, Yosemite, Sierra, and Fresno<br>Transmission and System Orchard Work: Mission, East Bay, Stockton, Diablo, Sacramento, Yosemite, Sierra, and Fresno<br>Orchard - System wide | |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Specification No. 4851 Scope of Work. This is not an exclusive Contract. This Contract does not guarantee Contractor any Work nor is there any guarantee as to any volume or duration of Work.

1. Contractor shall perform pre-inspection Work for Distribution Tree Trimming and Tree and Brush Removal in accordance with Specification No.4851, dated November 15, 2013. In consideration of the recitals, terms, covenants and conditions herein, the parties agree that Contract Number 4400007121 be established. The parties further agree that this Contract supersedes MSA 44000004201, effective 04/14/2010, and MSA 4600017544, effective 01/18/2007, both of which are hereby terminated by mutual agreement.

2. Contract termination date shall be December 31, 2019; provided, however, that PG&E may extend the Contract for up to two additional one-year periods by written notice to Contractor.

(Continue on page three)

**ATTACHMENTS**: Each of the following documents is attached to this Contract and incorporated herein by this reference:
Attachment 1: Supplemental Terms and Conditions, (6 pages)
Attachment 2: Specification 4851, (36 pages)
Attachment 3: Specification 4851, Exhibits, (177 pages)
Attachment 4: General Conditions, (29 pages)
Attachment 5: Pricing Sheet, (6 pages)
Attachment 6: Performance Security, (2 pages)
Attachment 7: Exhibit A of Performance Security -- Letter of Credit Copy, (6 pages)

| | |
|---|---|
| **CONTRACT TERM:** | This Contract is effective upon signature by both parties and expires on 12/31/2019. |
| **COMPLETION:** | Contractor shall commence performance hereof when directed to do so by PG&E. Work shall be completed by the completion date of 12/31/2019. Time is of the essence. |
| **INSURANCE:** | Contractor shall maintain insurance in accordance with Section 7.0 of the General Conditions. |
| **TERMS OF PAYMENT:** | In accordance with Section 3.0 of the General Conditions. |

**CONSIDERATION**: As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

**TOTAL**: The Sum of all Pricing specified on duly authorized Vegetation Management Work Requests

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: ACRT, INC. | |
|---|---|---|---|
| Signature | *(signed)* | Signature | *(signed)* |
| Name | Gun Shim | Name | Todd Jones |
| Title | Vice President, Supply Chain | Title | Chief Operating Officer |
| Date | 9-25-14 | Date | 9-22-14 |

Contract 4400007121
Attachment 2: Specification No. 4851
Pre-Inspection and Post Audit Work
Part 1 – Pre-Inspection Work
ACRT, Inc.
Page **9** of **36**

    2.2.1    Contractor shall perform all T&M Work not associated with Lump Sum Work as defined in Section 2.1 in accordance with VM standards and VM processes. T&M Work to be performed shall include, but not be limited to, the following: training of contractor employees associated with implementation of new VM standards or VM processes; investigations of tree-related outages resulting from a storm event; emergency Work associated with a storm event; outage reduction or removal projects not associated with routine maintenance; incident investigations associated with LE-38's, CDF citations, CPUC notification of violations and fires; attendance at customer/property owner/agency meetings where the purpose of the meeting is to describe the VM program and VM practices; attendance at public events such as Arbor Day, Fire Safe Expos and fairs; patrol and notification for tree work associated with PG&E new business and re-construction; stand-by at Grade 1 locations.; training of PG&E tree contractors to facilitate their understanding of PG&E paperwork processes and post auditing of tree contractor work as requested by PG&E.

    2.2.2    All work associated with open, pending and audit findings of open work requests, including reprints, field checking, checking VM office archives for a copy is considered to be tree contractor work. Requests by the PG&E Representative to perform these tasks shall be considered T&M Work.

2.3    STANDARDS FOR WORK: Contractor shall diligently perform all Work in a proper and professional manner in accordance with the requirements of all applicable federal, state, and/or local laws, rules, ordinances, and regulations, in accordance with approved principles of modern Arboriculture, and to the satisfaction of PG&E.

    2.3.1    Whenever possible, pruning techniques described in the Best Management Practices – Utility Pruning of Trees – Special Companion Publication to the ANSI A300 Part 1 shall be prescribed to direct growth away from electric facilities. Contractor shall be responsible for obtaining one copy of this publication for each SCUF, PA, and CUF.

    2.3.2    Units of Work: During Pre-Inspection it shall be the Contractor's responsibility to patrol PG&E distribution lines and existing overbuilt transmission and underbuilt communication lines to identify tree Work to be performed by a PG&E tree contractor and prescribe that work using a Work Request. Contractor shall use the following six categories to identify and prescribe a "Unit" of work to be performed.

        2.3.2.1    Tree Pruned: For tree pruning purposes, a tree qualifying for "Tree Pruned" status shall be defined as being a plant with at least one stem that is four (4) inches or larger DBH and where final cuts are made above four and one-half (4.5) feet from the ground. Multiple stems originating from the same common

personal or confidential information from unauthorized access, destruction, use, modification, or disclosure.

6.0 INDEMNIFICATION, WITHHOLDING AND LIMITATION OF LIABILITY

    6.1 INDEMNIFICATION

        6.1.1 Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; (iv) strict liability imposed by any law or regulation; or (v) a breach of its confidentiality obligations under Article 5.0; so long as such injury, violation, or strict liability (as set forth in (i) - (v) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation that is caused by the sole negligence or willful misconduct of PG&E, its officers, managers, or employees.

        6.1.2 Contractor acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arise from or are in any way connected with the release or spill of any legally designated hazardous material or waste and arise from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

        6.1.3 Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity, using counsel acceptable to PG&E. Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees. To the extent necessary, each Party was represented by counsel in the negotiation and execution of this Contract.

    6.2. CLAIMS PROCEDURE

        6.2.1 REPORTS: Contractor shall report to PG&E each case of injury to or death of person or damage to property as soon as possible after knowledge of the occurrence. This condition shall be included in all Subcontracts.

        6.2.2 CONTRACTOR'S RESPONSIBILITY: Contractor shall make every effort to satisfactorily settle, within a reasonable time after it arises or occurs, any loss, damage, expense, or liability for which Contractor is responsible under this Contract.

        6.2.3 Contractor shall promptly resolve all claims for private property damage or loss caused by Contractor, with all payments to be issued by the Contractor.

    6.3. WITHHOLDING

        6.3.1 PG&E may withhold from payment due Contractor hereunder such amounts as,

Contractor performs Work.

7.1.2 Employers' Liability insurance shall not be less than $1,000,000 (One Million Dollars) for injury or death each accident.

7.2 COMMERCIAL GENERAL LIABILITY

7.2.1 Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, with no coverage deletions.

7.2.2 The limit shall not be less than $10,000,000 (Ten Million Dollars) each occurrence for bodily injury, property damage and personal injury. Coverage limits may be satisfied using an umbrella or excess liability policy.

7.2.3 Coverage shall: a) By "Additional Insured" endorsement add as insureds PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of or connected with the Work performed by or for the Contractor. (ISO Form CG2010 or equivalent is preferred). If the Commercial General Liability policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement: "PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement."; b) Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

7.3 BUSINESS AUTO

7.3.1 Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

7.3.2 The limit shall not be less than $5,000,000 (Five Million Dollars) each accident for bodily injury and property damage. Coverage limits may be satisfied using an umbrella or excess liability policy

7.4 PROFESSIONAL LIABILITY INSURANCE

7.4.1 Errors and Omissions Liability insurance appropriate to the Contractor's profession. Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract consequential financial loss and fire suppression, with no coverage deletions.

7.4.2 The limit shall not be less than $10,000,000 (Ten Million Dollars) each claim.

7.5 ADDITIONAL INSURANCE REQUIREMENTS

7.5.1 Before commencing performance of Work, Contractor shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Contractor.

7.5.2 Should any of the above described policies be cancelled before the expiration date thereof, the insurer shall deliver notification to PG&E in accordance with the policy provisions.

7.5.3 PG&E uses a third party vendor, Exigis, to confirm and collect insurance documents. Certificates of insurance and endorsements shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf and must be submitted by e-mail or fax only to the following address:

Certificate Holder: Pacific Gas and Electric Company
c/o EXIGIS LLC
E-mail: support@exigis.com
Fax: 646-755-3327

A copy of all such insurance documents shall be sent to PG&E's Contract negotiator and/or Contract administrator at Contract execution and whenever the terms of the insurance policy are updated or renewed.

7.5.4 PG&E may inspect the original policies or require complete certified copies at any time.

7.5.5 Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

7.5.6 Contractor shall not allow any required insurance coverage to lapse. Contractor shall obtain and have in place replacement coverage in accordance with the terms specified in this Article 7, Insurance Requirements, and shall furnish PG&E with certificates of insurance and additional insured endorsements of all required insurance before termination or expiration of prior coverage.

7.5.7 All policies or binders with respect to insurance maintained by Contractor shall waive any right of subrogation of the insurers hereunder against PG&E, its parent company, affiliates and officers, directors, employees, agents and representatives of each of them.

7.6 RESPONSIBILITY FOR NON-COMPLIANCE WITH INSURANCE REQUIREMENTS

7.6.1 None of the foregoing insurance requirements can be waived without the express written consent of an officer of PG&E or PG&E representative authorized to sign this Contract.

7.6.2 Notwithstanding any other provisions of this Contract and separate and apart from Contractor's obligation to indemnify PG&E and the insurance requirements herein, if Contractor's insurance carrier fails or refuses to defend or indemnify PG&E pursuant to an additional insured endorsement because of a failure to obtain an additional insured endorsement, policy deductible, self-insured retention, or other unauthorized coverage deletion, Contractor shall stand in the place of its insurer and shall defend and indemnify PG&E and its officers, directors, agents, and employees to the same extent that an insurer issuing ISO form occurrence coverage without coverage deletions would under California law. If Contractor unreasonably fails or refuses to do so, Contractor shall be liable to PG&E for all damages caused thereby, including reasonable attorney's fees and imposition of punitive damages.

8.0 FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT

8.1 FORCE MAJEURE: Neither PG&E nor Contractor shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control, and without the fault or negligence, of the affected Party. If either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party shall promptly notify the other Party in writing and describe the circumstances preventing or delaying performance. The Party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

8.2 CANCELLATION FOR CAUSE