# EXHIBIT F

Steven M. Campora (SBN 110909)
DREYER BABICH BUCCOLA
WOOD CAMPORA, LLP
20 Bicentennial Circle
Sacramento, CA 95826
Telephone: (916) 379-3500
scampora@dbbwc.com

Dario de Ghetaldi (SBN 126782)
Amanda L. Riddle (SBN 215221)
COREY, LUZAICH, DE GHETALDI,
NASTARI & RIDDLE LLP
700 El Camino Real
Millbrae, CA 94030-0669
Telephone: (650) 871-5666
deg@coreylaw.com
alr@coreylaw.com

Co-Liaison Counsel for Individual Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| Coordination Proceeding Special Title (Rule 3.550) | No. JCCP 4853 |
|---|---|
| **BUTTE FIRE CASES**. | **MASTER COMPLAINT**<br>(Individual Plaintiffs)<br><br>Judge:  Hon. Allen H. Sumner<br>Dept:    42<br><br>**JURY TRIAL DEMANDED** |

1

**CONTENTS**

2   I.    INTRODUCTION ................................................................................... 1

3   II.   THE PARTIES ..................................................................................... 3

4         A.   PLAINTIFFS ............................................................................ 3

5         B.   DEFENDANTS ......................................................................... 4

6         C.   DOE DEFENDANTS ................................................................ 7

7         D.   AGENCY, JOINT VENTURE, AND CONCERT OF ACTION ....... 7

8         E.   JURISDICTION AND VENUE ................................................... 7

9   III.  FACTUAL BASIS FOR THE CLAIMS ASSERTED ................................ 8

10        A.   DEFENDANTS WERE REQUIRED TO REMOVE HAZARDS TO

11             ENSURE THE SAFE OPERATION OF ELECTRICAL POWER LINES ........ 8

12        B.   AMADOR & CALAVERAS COUNTIES WERE IN THE MIDST OF A

13             SEVERE DROUGHT ................................................................. 9

14        C.   THE BUTTE FIRE WAS CAUSED BY DEFENDANTS' CONSCIOUS

15             DISREGARD FOR BOTH THE DANGEROUS CONDITIONS AND

16             THEIR ATTENDANT RESPONSIBILITIES ................................... 10

17        D.   PG&E HAS A PATTERN AND PRACTICE OF CONDUCT

18             DEMONSTRATING A DISREGARD FOR PUBLIC SAFETY .................... 12

19   IV.   CAUSES OF ACTION .......................................................................... 14

20   FIRST CAUSE OF ACTION – NEGLIGENCE ................................................ 14

21   SECOND CAUSE OF ACTION – WRONGFUL DEATH .................................... 16

22   THIRD CAUSE OF ACTION – SURVIVAL ACTION ....................................... 17

23   FOURTH CAUSE OF ACTION – INVERSE CONDEMNATION .......................... 18

24   FIFTH CAUSE OF ACTION – PUBLIC NUISANCE ........................................ 19

25   SIXTH CAUSE OF ACTION – PRIVATE NUISANCE ...................................... 22

26   SEVENTH CAUSE OF ACTION – PREMISES LIABILITY ................................ 22

27   EIGHTH CAUSE OF ACTION – TRESPASS ................................................. 23

28   NINTH CAUSE OF ACTION – VIOLATION OF PUBLIC UTILITIES CODE § 2106 ........ 24

TENTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE §

13007 ...................................................................................................... 25

PRAYER FOR RELIEF ............................................................................... 25

JURY DEMAND ......................................................................................... 28

## I.      INTRODUCTION

1.      On the afternoon of September 9, 2015, residents and property owners of Calaveras and Amador Counties had no idea devastation would soon ensue from a raging wildland fire that later became known as the Butte Fire ("Butte Fire").  The Butte Fire started near Butte Mountain Road, southeast of Jackson in Amador County, when electrical power lines constructed, owned, operated, managed, and/or maintained by **PG&E CORPORATION** and/or **PACIFIC GAS AND ELECTRIC COMPANY** (collectively "**PG&E**") came into contact with adjacent native vegetation that had been left in a hazardous condition due to the disregard of established fire safety management practices by **PG&E** and/or their subcontractors **ACRT, INC.** ("**ACRT**") and **TREES, INC.** ("**TREES**").

2.      Over the following weeks, the Butte Fire spread rapidly, causing extensive damage within Calaveras and Amador Counties.  Over 4,000 firefighters battled the blaze.  The fire was



**Figure 1:  The Uncontrolled Butte Wildfire**

not reported as "contained" until October 1, 2015 – nearly one month after it started.  The Butte Fire caused the deaths of two people, injured others, burned 70,868 acres, destroyed 571 homes, 368 outbuildings, and damaged approximately 44 other structures.  **PLAINTIFFS** in this case are victims of the Butte Fire, who seek damages for, *inter alia*: (1) personal injury, including wrongful

death; (2) damage to and loss of use and enjoyment of real property, including structures, trees and vegetation; (3) damage to personal property; (4) injury to livestock and pets; (5) loss of income, profits, and/or loss of earning capacity; (6) consequential and incidental damages; (7) discomfort, annoyance, emotional suffering, fear and anxiety; (8) and other harm caused by the wrongful conduct of Defendants named herein; including, but not limited to punitive damages against Defendants **PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY**.

3.      Prior to the Butte Fire, the State of California, including Calaveras and Amador Counties, was experiencing record drought conditions that had persisted for approximately five years.  As a result of the drought plaguing the state, Governor Edmund G. Brown, Jr., declared a state of emergency on two separate occasions leading up to the Butte Fire. It is well-known that drought conditions create a significantly increased risk for uncontrolled wildfires, and if power lines come into contact with vegetation during a drought, the consequences will likely be catastrophic.  **PG&E**, **ACRT**, and **TREES** (collectively "**DEFENDANTS**") failed to identify, inspect, manage, and/or control vegetation growth near power lines that were constructed, owned, operated, managed, and/or maintained by **PG&E**.  **DEFENDANTS'** failure created the foreseeable danger of vegetation coming into contact with energized power lines and igniting a raging wildfire.

4.      Power lines were the second-leading cause of wildfires in 2013 (the most recent year for which statistics are available).  Conditions that cause power line fires – particularly high winds – are generally the same conditions that contribute to the volatile spread of fires, and power line fires tend to be disproportionately larger than those caused by other ignition sources.  Cal Fire long ago determined that communities along the Sierras foothills – including Calaveras and Amador Counties – were at high risk from wildfire.

5.      The tree that came in contact with the **PG&E's** power line and started the Butte Fire was a gray pine approximately forty-four (44) feet tall and only seven (7) inches in diameter ("**ORIGIN PINE**").  It was surrounded and held upright by a closed stand of other gray pines until **DEFENDANTS** removed two exterior gray pines from the stand.  That left the weak, interior

**ORIGIN PINE** exposed and vulnerable to failure, leaning in a direct path toward the sun and **PG&E's** power line.  Within less than one year after the other pines were removed, the **ORIGIN PINE** leaned further over, made contact with **PG&E's** power line, and ignited the Butte Fire – all while the area of origin was at high risk of a wildfire and under a state of emergency due to severe drought.



**Figure 2:  The Charred Tip of the Origin Tree Showing Where It Hit the Live Wire**

## II.      THE PARTIES

###        A.       PLAINTIFFS

6.       **PLAINTIFFS** are individuals and/or business entities who suffered damage, loss, and/or harm as a result of the Butte Fire.

7.       **PLAINTIFFS** are now and at all relevant times were residents, occupants, and/or property owners in Calaveras and/or Amador Counties.  All of **PLAINTIFFS'** injuries and damages alleged herein resulted from the Butte Fire, specifically including, but not limited to, personal injury and harm to real and personal property.

/  /  /

**B.    DEFENDANTS**

8.    At all relevant times Defendants **PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY** were corporations authorized to do business and doing business in the State of California, with their principal place of business in San Francisco.  Defendant, **PG&E CORPORATION**, is an energy-based holding company headquartered in San Francisco. It is the parent company of Defendant **PACIFIC GAS AND ELECTRIC COMPANY**.  **PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY** provide customers with public utility services, and services relating to the generation of energy, distribution of electricity and natural gas, generation of electricity, and the distribution of energy.

9.    **PLAINTIFFS** allege, on information and belief, that **PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY** are jointly and severally liable for each other's wrongful acts and/or omissions as hereafter alleged, in that:

a.    **PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY** operate as a single business enterprise at 77 Beale St, San Francisco, California for the purpose of effectuating and carrying out **PG&E CORPORATION's** business and operations and/or for the benefit of **PG&E CORPORATION**;

b.    **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** do not operate as completely separate entities, but rather integrate their resources to achieve a common business purpose;

c.    **PACIFIC GAS AND ELECTRIC COMPANY** is so organized and controlled, and its decisions, affairs and business so conducted as to make it a mere instrumentality, agent, conduit, and/or adjunct of **PG&E CORPORATION**;

d.    **PACIFIC GAS AND ELECTRIC COMPANY's** income contribution results from its function, integration, centralization of management and economies of scale with **PG&E CORPORATION**;

e.    **PACIFIC GAS AND ELECTRIC COMPANY's** and **PG&E CORPORATION's** officers and management are intertwined and do not act independently of one another;

4

f.      **PACIFIC GAS AND ELECTRIC COMPANY's** and **PG&E CORPORATION's** officers and managers act in the interest of **PG&E CORPORATION** as a single enterprise;

g.      **PG&E CORPORATION** has control and authority to choose and appoint **PACIFIC GAS AND ELECTRIC COMPANY's** board members as well as its other top officers and managers;

h.      **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** do not compete with one another, and are structured and organized with their businesses effectuated so as to create a synergistic, integrated single enterprise electric company and public utility where various components operate in concert;

i.      **PG&E CORPORATION** maintains unified administrative control over **PACIFIC GAS AND ELECTRIC COMPANY**;

j.      **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** are insured by the same carriers and provide uniform or similar pension, health, life and disability insurance plans for employees;

k.      **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** have unified 401(k) plans, pensions and investment plans, bonus programs, vacation policies and paid time off from work schedules and policies;

l.      **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** invest funds from their programs and plans by a consolidated and/or coordinated Employee Benefit Committee controlled by **PG&E CORPORATION** and administered by common trustees and administrators;

m.      **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** have unified personnel policies and practices and/or a consolidated personnel organization or structure;

n.      **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** have unified accounting policies and practices dictated by **PG&E CORPORATION** and/or common or integrated accounting organizations or personnel;

o.     **PACIFIC GAS AND ELECTRIC COMPANY** and **PG&E CORPORATION** are represented by common legal counsel;

p.     **PG&E CORPORATION's** officers, directors and other management make policies and decisions that are effectuated by **PACIFIC GAS AND ELECTRIC COMPANY** and/or otherwise play roles in providing directions and making decisions for **PACIFIC GAS AND ELECTRIC COMPANY**;

q.     **PG&E CORPORATION's** officers, directors and other management direct certain financial decisions for **PACIFIC GAS AND ELECTRIC COMPANY** including the amount and nature of capital outlays;

r.     **PG&E CORPORATION's** written guidelines, policies, and procedures control **PACIFIC GAS AND ELECTRIC COMPANY's** employees, policies, and practices;

s.     **PG&E CORPORATION** files consolidated earnings statements factoring all revenue and losses from **PACIFIC GAS AND ELECTRIC COMPANY** and files consolidated tax returns, including those seeking tax relief; and

t.     **PG&E CORPORATION** generally directs and controls **PACIFIC GAS AND ELECTRIC COMPANY's** relationship with, requests to, and responses to inquiries from the California Public Utilities Commission ("CPUC") and uses such direction and control for the benefit of **PG&E CORPORATION**.

10.     Defendant **ACRT** is an Ohio corporation doing business all over the United States as a utility vegetation management consulting and training company, and has been doing business in California since 1995.  At all relevant times, **ACRT** provided vegetation management consulting services to **PG&E** in Calaveras and Amador Counties pursuant to an agency, service, employment and/or joint venture relationship.  At all relevant times **ACRT** was the agent of **PG&E** and was acting within the course and scope of that agency, service, employment, and/or joint venture relationship.

11.     Defendant **TREES** is a Delaware corporation doing business all over the United States as a utility vegetation management company, and has been doing business in California since 2013.  **TREES** provided vegetation management services to defendant **PG&E** in Calaveras

6

and Amador Counties pursuant to an agency, service, employment, and/or joint venture relationship. At all relevant times, **TREES** was the agent of **PG&E** and was acting within the course and scope of that agency, service, employment, and/or joint venture relationship.

### C. DOE DEFENDANTS

12. Except as described herein, **PLAINTIFFS** are ignorant of the true names and/or capacities of the Defendants sued as Does 1 through 100, inclusive, and therefore, **PLAINTIFFS** sue these Defendants by such fictitious names. Following further investigation and discovery, **PLAINTIFFS** will seek leave of this Court to amend this Master Complaint to allege their true names and capacities when ascertained. These fictitiously named Doe Defendants are responsible in some manner for the acts, occurrences, and events alleged herein. These Doe Defendants aided, abetted, and/or conspired with **Defendants** in the wrongful acts and course of conduct, or otherwise negligently caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences, and events alleged in this Master Complaint.

### D. AGENCY, JOINT VENTURE, AND CONCERT OF ACTION

13. At all relevant times, **DEFENDANTS** were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other **DEFENDANTS** and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each **DEFENDANT** has ratified and approved the acts of each of the remaining **DEFENDANTS**. Each **DEFENDANT** aided and abetted, encouraged, and rendered substantial assistance to the other **DEFENDANTS** in breaching their obligations to **PLAINTIFFS**. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings alleged herein, each of the **DEFENDANTS** acted with an awareness of his/her/its primary wrongdoing and realized his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

### E. JURISDICTION AND VENUE

14. This Court has jurisdiction over **DEFENDANTS** and the subject matter of this action pursuant to Code of Civil Procedure § 410.10.

15.     Venue is proper in this Court pursuant to Code of Civil Procedure § 404.3 and California Rules of Court, rule 3.540.  The Honorable Allen H. Sumner of the Superior Court of California, County of Sacramento was assigned to sit as Coordination Trial Judge by the Judicial Council of California.

## III.     FACTUAL BASIS FOR THE CLAIMS ASSERTED

### A.     DEFENDANTS WERE REQUIRED TO REMOVE HAZARDS TO ENSURE THE SAFE OPERATION OF ELECTRICAL POWER LINES

16.     At all relevant times, Defendants **PG&E CORPORATION** and **PG&E COMPANY**, and DOES 1 through 50 (collectively "**PG&E DEFENDANTS**"), were suppliers of electricity to members of the public in both Calaveras and Amador Counties.  As part of supplying electricity to members of the public, the **PG&E DEFENDANTS** installed, constructed, built, maintained, managed, owned, and/or operated overhead power lines, together with supporting poles and appurtenances, in both Calaveras and Amador Counties for the purpose of providing electricity for delivery to the general public.  Such lines existed at the point of origin of the Butte Fire near Butte Mountain Road, southeast of Jackson.

17.     Defendants **ACRT, TREES**, and DOES 51 to 100 contracted with **PG&E** for the purpose of maintaining **PG&E's** overhead power lines and/or providing utility vegetation management services near the power lines and facilities operated by **PG&E.**  Those services include, but are not limited to, assessing, monitoring, inspecting, trimming, cutting, maintaining, managing, and/or replacing vegetation surrounding and in close proximity to the lines and facilities operated by **PG&E** to insure that those power lines operate safely and consistently with State and Federal regulations, specifically including but not limited to Public Resources Code §§ 4292 and 4293, and Public Utilities Commission General Orders 95 and 165.

18.     At all relevant times, **DEFENDANTS** had a duty to properly construct, inspect, repair, maintain, manage, and/or operate the power lines and to keep vegetation properly trimmed and maintained so as to prevent foreseeable contact with power lines.  In the construction, inspection, repair, maintenance, management, ownership, and/or operation of the power lines, **DEFENDANTS** had an obligation to comply with statutes, regulations and standards, specifically

8

including, but not limited to Public Resources Code §§ 4292 and 4293, and Public Utilities Commission General Orders 95 and 165.  In addition, **DEFENDANTS** were specifically aware that such standards and regulations were minimum standards and that **DEFENDANTS** had a duty to identify all vegetation that posed a foreseeable hazard to **PG&E's** power lines, and to manage the growth of vegetation near the power lines to prevent the foreseeable danger of contact between vegetation and power lines starting a wildfire, and to avoid exposing members of the general public to a risk of death, serious injury, and property damage.

**B.     AMADOR & CALAVERAS COUNTIES WERE IN THE MIDST OF A SEVERE DROUGHT**

19.     At all relevant times **DEFENDANTS** were aware that the State of California, and in particular Calaveras and Amador Counties, were in the midst of a severe drought. **DEFENDANTS** were aware that the drought conditions had existed for a number of years and were aware that fire danger was extraordinarily high.  At least a full year before the fire, California's climate was classified as suffering from "exceptional drought" conditions by the U.S. Drought Monitor.

20.     On January 17, 2014, Governor Edmund G. Brown, Jr., declared a state of emergency **"*due to severe drought conditions*."**  The Governor's proclamation declared that **"*dry conditions and lack of precipitation present urgent problems . . . and the risk of wildfires across the state is greatly increased*."**

21.     Further, on August 2, 2014, Governor Brown declared a state of emergency due to the effects of wildfires in Northern California, declaring in part:  "WHEREAS on January 17, 2014, I declared a State of Emergency based on the extreme drought that has persisted in the State. ***The drought conditions have increased the State's risk of wildfires***. Recent lightning storms and high temperatures have further increased this risk and the spread of additional wildfires."

22.     When the Butte Fire started on the afternoon of September 9, 2015, the temperature in the area was nearly 100 degrees, or close to 20 degrees higher than normal for that time of year, and relative humidity was near 8%.  Further, a trough over the Central Valley maintained winds out of the northwest at 7 to 12 miles per hour with gusts reaching as high as 24 miles per hour.

23.    **DEFENDANTS** knew that if power lines came into contact with nearby, weak and vulnerable vegetation, a fire would likely result.  Given the well-publicized drought and wind conditions in the area, **DEFENDANTS** were aware that such a fire would rapidly escalate into an uncontrollable wildfire capable of profound devastation that would cause loss of life, personal injury, significant damage to real and personal property, and other serious harm to members of the general public, including **PLAINTIFFS**.

**C.    THE BUTTE FIRE WAS CAUSED BY DEFENDANTS' CONSCIOUS DISREGARD FOR BOTH THE DANGEROUS CONDITIONS AND THEIR ATTENDANT RESPONSIBILITIES**

24.    **DEFENDANTS** were wanton, reckless, careless, and/or negligent in failing to properly maintain, manage, repair, and/or inspect the subject lines and adjacent vegetation.  They failed to properly trim, prune, remove, and/or otherwise maintain vegetation near their lines so as to prevent hazardous contact with power lines.  As a consequence, **DEFENDANTS** imperiled public safety, and increased the risk of exposing **PLAINTIFFS** to harm or injury due to a wildfire. The **ORIGIN PINE** that came in contact with **PG&E's** powerline and caused the Butte Fire had previously been surrounded or "captured" by a stand of other gray pines.  A "stand" is a group of forest trees sufficiently similar in age, size and type to be considered a unit.  In or around October 2014, **DEFENDANTS** performed an inspection of the area of origin and identified two gray pines for removal that were adjacent to the **ORIGIN PINE** and part of the exterior of the stand.  In or around January 2015, **DEFENDANTS** removed those two gray pines.  The removal of the two gray pines exposed interior trees, including the **ORIGIN PINE**, that were left open and leaning to the south, directly toward the path of the sun and the power lines.  It is commonly known that when a stand is altered and interior trees previously captured are then exposed to open spaces, they are prone to failure.  It is also well understood that trees have a physical orientation toward the path of the sun and this can have significant consequences for maintaining safety. Nonetheless, **DEFENDANTS**, and each of them: (1) ignored the safety hazard presented by exposing the interior, weaker trees; (2) recklessly cut the two exterior, strong trees that prevented the weak **ORIGIN PINE** from leaning over onto **PG&E's** powerline, causing a safety hazard; and (3)

1   disregarded the obvious safety hazard at any subsequent inspection, monitoring, and/or

2   maintenance work in the area of origin.



**Figure 3: The Origin Pine After It Struck the PG&E Power Line and Started the Butte Fire**

25.     Prior to the Butte Fire, the **PG&E DEFENDANTS** used aerial images and LIDAR

data to inspect and/or monitor vegetation in the origin area, but the **ORIGIN PINE** could not be

identified and/or recognized solely by the use of such an imaging technique.   The **PG&E**

**DEFENDANTS** refused and/or failed to conduct an adequate inspection of individual trees

despite having more than enough financial resources to do so.   The **PG&E DEFENDANTS** knew

or should have known of the inadequacy of the aerial images and LIDAR data in performing such

inspections and/or monitoring vegetation, but failed to undertake supplemental inspection

methods to adequately identify potential hazards, choosing to put profits over safety.

26.     As a result of **DEFENDANTS'** acts and omissions, the **ORIGIN PINE** contacted

**PG&E's** electrical power line, and the top part of the tree ignited.   Burning embers fell onto the

fine dead fuels below the wire, and started the Butte Fire, which in turn resulted in the deaths of

two people, caused severe personal injuries to others, and burned in excess of 70,000 acres,

including the destruction of real and personal property owned, occupied, controlled, and/or possessed by **PLAINTIFFS**.



**Figure 4: The Perimeter of the Butte Fire**

**D.     PG&E HAS A PATTERN AND PRACTICE OF CONDUCT DEMONSTRATING A DISREGARD FOR PUBLIC SAFETY**

27.     The **PG&E DEFENDANTS** were aware of the foreseeable danger from fires in Calaveras and Amador Counties during the summer months when environmental conditions pose a high risk of extensive conflagration, exacerbated by the prevalence of wind and a lack of moisture that are known factors in the spread of wildland fire.

28.     With full knowledge of these sensitive conditions and their potential catastrophic consequences, the **PG&E DEFENDANTS** recklessly ignored the safety of the public. **PG&E's** callous disregard for safety is well-documented by the extensive history of fires caused by the **PG&E DEFENDANTS'** utility lines in Calaveras County, Amador County and surrounding communities. **According to records maintained by Cal Fire, approximately 100 fires have**

12

**been started and attributed to PG&E's utility lines in Calaveras County, Amador County, and surrounding counties in the five years immediately before the Butte Fire erupted**.

29.     Over approximately the past 10 years, the **PG&E DEFENDANTS** have been subject to numerous fines and penalties as a result of their failure to abide by safety rules and regulations.  Yet, despite these penalties and fines, the **PG&E DEFENDANTS** have failed and refused to modify their behavior and have continued to conduct their business with a conscious disregard for the safety of the public, and in particular the safety of **PLAINTIFFS**.  As a result of the **PG&E DEFENDANTS'** corporate culture that repeatedly chooses to put profits over safety, the CPUC launched an investigation into the manner by which officers, directors, and/or managing agents of the **PG&E DEFENDANTS** establish safety policies and practices to prevent catastrophic events such as the Butte Fire.  Recognizing that the **PG&E DEFENDANTS** have repeatedly failed to modify their conduct despite having incurred over $1.6 billion in penalties and fines for safety violations, the president of the CPUC recommended an investigation of **PG&E's** actions and operations.  In July of 2015, only two months before this fire, the president of the CPUC, ominously warned:

> **Despite major public attention, ongoing CPUC investigations (OIIs) and rulemakings (OIRs) into PG&E's actions and operations, including the investigations we voted on today, federal grand jury, and California Department of Justice investigation, continued safety lapses at PG&E continue to occur.**

30.     As a result of the **PG&E DEFENDANTS'** repeated failure and/or refusal to follow safety rules and regulations, they have incurred almost two billion dollars in fines.  Yet they continue – undeterred – to manage their utility operations in a manner demonstrating a conscious disregard for the safety of the public, including that of **PLAINTIFFS**. The **PG&E DEFENDANTS** admit to having been responsible for the deaths of at least ten (10) people, and burns and injuries inflicted on at least forty (40) others, since December of 2008.  They also conceded in public filings with the CPUC to having made safety decisions that put profits over safety and that they repeatedly violated safety regulations.  Five years to the day before the Butte Fire, the **PG&E DEFENDANTS**, acting with conscious disregard for the safety of others, caused the deaths of eight people and destroyed an entire neighborhood in San Bruno, California.  The

deaths, injuries, and damage occasioned by the Butte Fire are the result of the ongoing policies, practices, and/or financial decisions made by the **PG&E DEFENDANTS** who have acted with a conscious disregard for public safety, and created a corporate culture that places a priority for profits above safety in their business operations.  The direct and legal consequence of these actions is to create an environment in which management is incentivized to circumvent safety regulations, search for loopholes to avoid compliance, and/or delay safety expenditures, for the sole purpose of enhancing financial performance. Despite having caused the Butte Fire calamity, and the resultant death, injury, and property damage to thousands of affected citizens of Calaveras and Amador Counties, the **PG&E DEFENDANTS** have ratified their disregard for the safety of others in failing to discipline any of the corporate executives who were responsible for creating the corporate culture and decisions that led to underfunding necessary vegetation management practices that created the foreseeable risk of this calamity occurring.

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION – NEGLIGENCE

### (Against All Defendants)

31.    **PLAINTIFFS** incorporate and re-allege each of the paragraphs set forth above as though fully set forth herein.

32.    The Butte Fire was a direct and legal result of the negligence, carelessness, recklessness, and/or unlawfulness of **DEFENDANTS** who breached their respective duties owed individually and/or collectively to **PLAINTIFFS** by, including but not limited to: (1) failing to comply with the applicable statutory, regulatory, and/or professional standards of care;  (2) failing to timely and properly maintain, manage, inspect, and/or monitor the subject power line and/or adjacent vegetation; (3) failing to properly cut, trim, prune, and/or otherwise keep vegetation at a sufficient distance to avoid foreseeable contact with its power lines; (4) failing to trim and/or prune vegetation so as to avoid creation of a safety hazard within close proximity of the subject power line; (5) failing to make the overhead lines safe under all the exigencies created by surrounding circumstances and conditions; (6) failing to conduct adequate, reasonably prompt, proper, effective, and/or frequent inspections of the electrical distribution lines, wires, and/or associated

equipment; (7) failing to design, construct, monitor, and/or maintain high voltage electrical distribution lines in a manner that avoids the potential to ignite a fire during long, dry seasons by allowing vegetation to grow in an unsafe manner; (8) failing to install the equipment necessary and/or to inspect and repair the equipment installed, to prevent electrical distribution and distribution lines from improperly sagging, operating, and/or making contact with other metal wires placed on its poles and igniting fires; (9) failing to keep equipment in a safe condition at all times to prevent fire; (10) failing to de-energize power lines during fire prone conditions; (11) failing to de-energize power lines after the fire's ignition; and/or (12) failing to properly train and to supervise employees and agents responsible for maintenance and inspection of the distribution lines and/or vegetation areas near those lines.

33.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** have suffered damage to real property, including the loss of vegetation, trees, and structures, the creation of hydrophobic soil conditions, and a loss of use, benefit, goodwill, diminution in value and/or enjoyment of such property in an amount according to proof at trial.

34.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** have suffered damage to and/or a loss of personal property, including but not limited to items of peculiar value to **PLAINTIFFS** in an amount according to proof at trial.

35.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** have incurred and will continue to incur expenses and other economic damages related to the damage to their property, including costs relating to storage, clean-up, disposal, repair, depreciation, and/or replacement of their property and other related consequential damages in an amount according to proof at trial.

36.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** were injured in their health, strength, and activity in an amount according to proof at trial.

37.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** were required to and/or continue to employ physicians and other health care providers to examine, treat, and care for their physical injuries.  **PLAINTIFFS** have incurred, and will continue to incur, medical and incidental expenses in an amount according to proof at trial.

38.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** have suffered great mental pain and suffering, including worry, emotional distress, humiliation, embarrassment, anguish, anxiety, and nervousness.  **PLAINTIFFS** are informed and believe and upon such information and belief allege, that such injuries have resulted in debilitating injury in an amount according to proof at trial.

39.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** have suffered a loss of income, loss of earning capacity, loss of profits, increased expenses due to displacement, and/or other consequential economic losses in an amount according to proof at trial.

40.     The **PG&E DEFENDANTS** and each of them, acted willfully, wantonly, with oppression, fraud, malice, and/or with a knowing, conscious disregard for the rights and or safety of others, such that **PLAINTIFFS** request that the trier of fact, in the exercise of sound discretion, award **PLAINTIFFS** additional damages for the sake of example and sufficient to punish the **PG&E DEFENDANTS** for their despicable conduct, in an amount reasonably related to **PLAINTIFFS'** actual damages and the **PG&E DEFENDANTS'** financial condition, yet sufficiently large enough to be an example to others and to deter **DEFENDANTS** and others from engaging in similar conduct in the future.

**SECOND CAUSE OF ACTION – WRONGFUL DEATH**

**(Against All Defendants)**

41.     **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

42.     As a result of **DEFENDANTS'** acts and omissions, at least two persons died ("**DECEDENTS**").

43.     Due to **DECEDENTS'** wrongful death, **PLAINTIFFS** suffered and continue to suffer loss of love, companionship, society, training, guidance, comfort, affection, solace, and the moral support of their deceased in an amount according to proof of trial.

44.     Due to **DECEDENTS'** wrongful death, **PLAINTIFFS** incurred funeral and burial expenses, and related medical expenses in an amount according to proof at trial.

/   /   /

45.    Due to **DECEDENTS'** wrongful death, **PLAINTIFFS** suffered economic losses, including but not limited to the loss of financial support, and/or the loss of household services in an amount according to proof of trial.

### THIRD CAUSE OF ACTION – SURVIVAL ACTION

### (Against All Defendants)

46.    **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

47.    **PLAINTIFFS** are **DECEDENTS'** successor/s in interest and/or personal representative/s and bring this action in that capacity pursuant to Code of Civil Procedure § 337.30.

48.    **DEFENDANTS** failed to properly inspect, operate, and maintain the subject power line, and failed to maintain the vegetation around that power line.  **DEFENDANTS** knew about the tinder-like vegetation and drought conditions and knew that a fire was the likely result if dry vegetation came in contact with the power lines.  **DEFENDANTS** also knew that any resulting fire posed a risk of serious injury or death to the general public, including the **DECEDENTS**.

49.    As a result of **DEFENDANTS'** actions and omissions, **DECEDENTS** suffered damage to their real and/or personal property.  Additionally, **DECEDENTS** lived for a period of time after being initially injured and suffered injury and damages prior to their death.  **DECEDENTS** sustained those damages in an amount according to proof at trial.  Had they survived, **DECEDENTS** would have been entitled to recover all such damages allowed under Code of Civil Procedure § 377.34 under the causes of action alleged in this Master Complaint for, *inter alia*, inverse condemnation, negligence, nuisance, premises liability, trespass, and violations of statutes and regulations.

50.    Pursuant to Code of Civil Procedure § 377.34, as **DECEDENTS'** successor/s in interest and/or personal representative/s, **PLAINTIFFS** also seek to recover punitive and exemplary damages for the conduct described above to which **DECEDENTS** would have been entitled to recover had they survived.

## FOURTH CAUSE OF ACTION – INVERSE CONDEMNATION

### (Against the PG&E DEFENDANTS and DOES 1 through 50)

51.     **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

52.     On or about September 9, 2015, **PLAINTIFFS** were owners of real property and/or personal property located within Calaveras and Amador Counties in the area of the Butte Fire.

53.     Prior to and on September 9, 2015, the **PG&E DEFENDANTS** installed, owned, operated, used, controlled, and/or maintained power lines for the public delivery of electricity, including a power line in the area of Butte Mountain Road, near Jackson, California.

54.     On September 9, 2015, as a direct, necessary, and legal result of the **PG&E DEFENDANTS'** installation, ownership, operation, use, control, management, and/or maintenance for a public use of the power lines, the power line came in contact with vegetation and started the Butte Fire that burned in excess of 70,000 acres, including property owned or occupied by **PLAINTIFFS**.  The fire damaged and/or destroyed **PLAINTIFFS'** real and personal property.

55.     The damage to **PLAINTIFFS'** real and personal property was caused by the actions and omissions of the **PG&E DEFENDANTS** in their installation, ownership, operation, use, control, management, and/or maintenance of the power lines for a public use.

56.     **PLAINTIFFS** have not received adequate compensation for the damage to and/or destruction of their real and personal property, thus constituting a taking of **PLAINTIFFS'** property by the **PG&E DEFENDANTS** without just compensation.

57.     As a result of the actions and omissions of the **PG&E DEFENDANTS**, **PLAINTIFFS** suffered damages to their real and personal property, including loss of use, interference with access, and diminution in value and/or marketability in an amount according to proof at trial.

58.     As a result of the actions and omissions of the **PG&E DEFENDANTS**, **PLAINTIFFS** have incurred and will continue to incur costs, disbursements, and expenses,

including reasonable attorney, appraisal, engineering, and other expert fees due to the conduct of the **PG&E DEFENDANTS** in amounts that cannot yet be ascertained, but which are recoverable pursuant to Code of Civil Procedure § 1036.

## FIFTH CAUSE OF ACTION – PUBLIC NUISANCE

### (Against All Defendants)

59.     **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

60.     **PLAINTIFFS** own and/or occupy property at or near the site of the Butte Fire.  At all relevant times, **PLAINTIFFS** had a right to occupy, enjoy, and/or use their property without interference by **DEFENDANTS**.

61.     **DEFENDANTS** owed a duty to the public, including **PLAINTIFFS**, to conduct the maintenance and/or operation of power lines and vegetation near their power lines in Calaveras and Amador Counties, specifically including the power line near Butte Mountain Road, in a manner that did not threaten harm or injury to the public welfare from operation of those power lines.

62.     The Butte Fire scorched the earth over 70,000 acres leaving only black matchsticks where there were once homes, farms, meadows, fields, and forests.  **DEFENDANTS** created a condition that was harmful to the health of the public, including these **PLAINTIFFS**, and that interfered with the comfortable occupancy, use, and/or enjoyment of **PLAINTIFFS**' property. **PLAINTIFFS** did not consent, expressly or impliedly, to **DEFENDANTS'** wrongful conduct.

63.     The hazardous condition that **DEFENDANTS** created and/or permitted to exist affected a substantial number of people within the general public, including **PLAINTIFFS**, and constituted a public nuisance under Civil Code §§ 3479 and 3480, and Public Resources Code § 4171.  Further, the ensuing uncontrolled wildfire constituted a public nuisance under Public Resources Code § 4170.

64.     The damaging effects of **DEFENDANTS'** poor maintenance of fire hazards and the resulting wildfire are ongoing and affect the public at large.  Because of the fire's location, temperature, and duration, extensive areas of hydrophobic soils developed within the fire's

perimeter. This caused significant post fire runoff hazards to occur, including hillside erosion, debris flow hazards, and sediment laden flow hazards. As a result, large quantities of ash and sediment will be deposited in perennial and ephemeral watercourses, including the Calaveras River and the Mokelumne River, that flow into the Pardee Reservoir and the New Hogan Reservoir where that ash and sediment will ultimately be deposited. Hazardous minerals including mercury left over from historic mining activities and asbestos from the geologic units of ultramafic rock within the fire's perimeter will be found in the sediment and debris deposited into those watercourses and reservoirs. The Pardee Reservoir is the primary water source for the East Bay Municipal Water District and the New Hogan Reservoir is used as a source of irrigation and drinking water by the Calaveras County Water District and the Stockton East Water District. As a result of ash and sediment loading, the turbidity of the water in the reservoirs will increase and there will be changes in water chemistry. These effects are expected to last 2 to 5 years or longer.

65. As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** suffered harm that is different from the type of harm suffered by the general public. Specifically, **PLAINTIFFS** have lost the occupancy, possession, use, and/or enjoyment of their land, real, and/or personal property, including, but not limited to: a reasonable and rational fear that the area is still dangerous; a diminution in the fair market value of their property; an impairment of the salability of their property; soils that have become hydrophobic; exposure to an array of toxic substances on their land; the presence of "special waste" (as defined in 22 California Code of Regulations § 66261.120) on their property that requires special management and disposal; and a lingering smell of smoke, and/or constant soot, ash, and/or dust in the air.

66. As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** have suffered, and will continue to suffer, discomfort, anxiety, fear, worries, and stress attendant to the interference with **PLAINTIFFS'** occupancy, possession, use, and/or enjoyment of their property, as alleged above.

67. A reasonable, ordinary person would be annoyed or disturbed by the condition created by **DEFENDANTS** and the resulting fire.

/ / /

68.     The conduct of **DEFENDANTS** is unreasonable and the seriousness of the harm to the public, including **PLAINTIFFS**, outweighs the social utility of **DEFENDANTS**' conduct.

69.     The individual and/or collective conduct of **DEFENDANTS** set forth above resulting in the Butte Fire is not an isolated incident, but is ongoing and/or a repeated course of conduct, and **DEFENDANTS'** prior conduct and/or failures have resulted in other fires and damage to the public.

70.     The unreasonable conduct of **DEFENDANTS** is a direct and legal cause of the harm, injury, and/or damage to the public, including **PLAINTIFFS**.

71.     **DEFENDANTS** have individually and/or collectively, failed and refused to conduct proper inspections and to properly trim, prune, and/or cut vegetation to ensure the safe delivery of electricity to residents through the operation of power lines in the affected area, and **DEFENDANTS'** individual and/or collective failure to do so exposed every member of the public, residing and/or owning property in Calaveras and Amador Counties, to a foreseeable danger of personal injury, death, and/or a loss of or destruction real and personal property.

72.     The conduct of **DEFENDANTS** constitutes a public nuisance within the meaning of Civil Code §§ 3479 and 3480, Public Resources Code §§ 4104 and 4170, and Code of Civil Procedure § 731.  Under Civil Code § 3493, **PLAINTIFFS** have standing to maintain an action for public nuisance because the nuisance is one that is specially injurious and/or offensive to the senses of the **PLAINTIFFS**, unreasonably interferes with the comfortable enjoyment of their properties, unlawfully obstructs the free and customary use of **PLAINTIFFS**' properties, and caused individualized harm, injury, and damages to **PLAINTIFFS**.

73.     For these reasons, **PLAINTIFFS** seek a permanent injunction ordering that **DEFENDANTS** stop continued violation of Public Resource Code §§ 4292 and 4293, and Public Utilities Commission General Order 95, Rule 35.  **PLAINTIFFS** also seek an order directing **DEFENDANTS** to abate the existing and continuing nuisance described above.

/  /  /

/  /  /

/  /  /

**SIXTH CAUSE OF ACTION – PRIVATE NUISANCE**

**(Against All Defendants)**

74.     **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

75.     **DEFENDANTS**, by their acts and omissions set forth above, directly and legally caused an obstruction to the free use of **PLAINTIFFS**' property, an invasion the **PLAINTIFFS**' right to use their property, and/or an interference with the enjoyment of **PLAINTIFFS**' property resulting in the **PLAINTIFFS** suffering unreasonable harm and substantial actual damages constituting a nuisance pursuant to Civil Code §§ 3479 and 3481.

76.     As a result of **DEFENDANTS'** actions and omissions, **PLAINTIFFS** and each of them, suffered harm, injury, and damages in an amount according to proof at trial.

77.     As a result of the **PG&E DEFENDANTS'** actions and omissions, **PLAINTIFFS** seek the imposition of punitive and exemplary damages against the **PG&E DEFENDANTS**.

**SEVENTH CAUSE OF ACTION – PREMISES LIABILITY**

**(Against the PG&E DEFENDANTS and DOES 1 through 50)**

78.     **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

79.     The **PG&E DEFENDANTS** were the owners of an easement and/or real property in the area of origin of the Butte Fire near Butte Mountain Road, southeast of Jackson, and/or were the owners of the power lines upon said easement and/or right of way.

80.     The **PG&E DEFENDANTS** acted wantonly, unlawfully, carelessly, recklessly, and/or negligently in failing to properly inspect, manage, maintain, and/or control the vegetation near its power lines along the real property and easement, allowing an unsafe condition to exist on said property creating a foreseeable risk of fire.

81.     As a result of the **PG&E DEFENDANTS'** actions and omissions, **PLAINTIFFS** seek the imposition of punitive and exemplary damages against the **PG&E DEFENDANTS**.

/  /  /

/  /  /

## EIGHTH CAUSE OF ACTION – TRESPASS

### (Against All Defendants)

82.     **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

83.     At all relevant times, **PLAINTIFFS** were the owners, tenants, and/or lawful occupants of property damaged by the Butte Fire.

84.     **DEFENDANTS**, in wrongfully acting and/or failing to act in the manner set forth above, caused the Butte Fire to ignite and/or spread out of control, causing harm, damage, and/or injury to **PLAINTIFFS**, resulting in a trespass upon **PLAINTIFFS'** property interests.

85.     **PLAINTIFFS** did not grant permission for **DEFENDANTS** to wrongfully act in a manner so as to cause the Butte Fire that spread and wrongfully entered upon their property, resulting in the harm, injury, and/or damage alleged above.

86.     As a direct and legal result of the wrongful conduct of **DEFENDANTS** that led to the trespass, **PLAINTIFFS** have suffered and will continue to suffer damages in an amount according to proof at trial.

87.     As a further direct and legal result of the wrongful conduct of **DEFENDANTS** **PLAINTIFFS**, whose land was under cultivation, and was used for raising livestock or was intended to be used for raising livestock, have hired and retained counsel to recover compensation for loss and damage and are entitled to recover all attorneys' fees, expert fees, consultant fees, and litigation costs and expense, as allowed under Code of Civil Procedure § 1021.9.

88.     As a further direct and legal result of the conduct of **DEFENDANTS** **PLAINTIFFS** seek treble damages for wrongful injuries to timber, trees, or underwood on their property, as allowed under Civil Code § 3346.

89.     As a result of the **PG&E DEFENDANTS'** actions and omissions, **PLAINTIFFS** seek the imposition of punitive and exemplary damages against the **PG&E DEFENDANTS**.

/   /   /

/   /   /

/   /   /

**NINTH CAUSE OF ACTION – VIOLATION OF PUBLIC UTILITIES CODE § 2106**

**(Against the PG&E DEFENDANTS and DOES 1 through 50)**

90.    **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

91.    The **PG&E DEFENDANTS** are legally required to comply with the rules and orders promulgated by the Public Utilities Commission pursuant to Public Utilities Code § 702.

92.    Pursuant to Public Utilities Code § 2106, a public utility that fails to carry out duties required by the California Constitution, a law of the State, a regulation or order of the Public Utilities Commission, which thereby leads to loss or injury, is liable for that loss or injury.

93.    The **PG&E DEFENDANTS** are required to provide and maintain service, equipment and facilities in a manner adequate to maintain the safety, health and convenience of their customers and the public, pursuant to Public Utilities Code § 451.

94.    The **PG&E DEFENDANTS** are required to design, engineer, construct, operate, manage and maintain electrical supply lines in a manner consistent with their use, taking into consideration local conditions and other circumstances, so as to provide safe and adequate electric service, pursuant to Public Utility Commission General Orders 95 and 165, and  Rule 33.1.

95.    The **PG&E DEFENDANTS** are required to maintain vegetation in compliance with Public Resources Code §§ 4293, 4294, and 4435, and Health & Safety Code § 13001.

96.    By their conduct alleged above, the **PG&E DEFENDANTS** violated Public Utilities Code §§ 702 and 451, and/or Public Utilities Commission General Order 95, thereby imposing liability on the **PG&E DEFENDANTS** for losses, damages, and/or injury sustained by Plaintiff pursuant to Public Utilities Code § 2106.

97.    By further reason of the premises set forth above, the **PG&E DEFENDANTS**, acted in a manner that violated the laws of this State and/or the orders or decisions of the Public Utilities Commission, as referenced herein.

98.    As a result of the act and omissions of the **PG&E DEFENDANTS**, **PLAINTIFFS**, and each of them have suffered harm, injury and damages as set forth above.

/  /  /

99.     As a result of the **PG&E DEFENDANTS'** actions and omissions, **PLAINTIFFS** seek the imposition of punitive and exemplary damages against the **PG&E DEFENDANTS**.

**TENTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE § 13007**

**(Against All Defendants)**

100.    **PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

101.    By engaging in the acts and/or omissions alleged in this Master Complaint, **DEFENDANTS** willfully, negligently, carelessly, recklessly, and/or in violation of law, set fire to and/or allowed fire to be set to the property of another in violation of Health & Safety Code § 13007.

102.    As a result of **DEFENDANTS'** violation of Health & Safety Code §13007, **PLAINTIFFS** suffered recoverable damages to property under Health & Safety Code § 13007.21.

103.    As a result of the **DEFENDANTS'** violation of Health & Safety Code §13007, **PLAINTIFFS** are entitled to reasonable attorneys' fees under Code of Civil Procedure § 1021.9.

104.    As a result of the act and omissions of the **PG&E DEFENDANTS**, **PLAINTIFFS**, and each of them have suffered harm, injury and damages as set forth above.

105.    As a result of the **PG&E DEFENDANTS'** actions and omissions, **PLAINTIFFS** seek the imposition of punitive and exemplary damages against the **PG&E DEFENDANTS**.

**PRAYER FOR RELIEF**

WHEREFORE, **PLAINTIFFS** pray for judgment against **DEFENDANTS PG&E CORPORATION**, **PACIFIC GAS AND ELECTRIC COMPANY**, **TREES, INC.**, **ACRT, INC.**, and DOES 1 through 100, and each of them as follows:

For an award against **DEFENDANTS PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY** for Inverse Condemnation, all according to proof, for:

1.      Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

2.      Loss of wages, earning capacity and/or business profits, use, goodwill, and/or proceeds and/or any related displacement expenses;

3.     All costs of suit, including reasonable attorneys' fees, appraisal fees, engineering fees, other expert fees, and related costs;

4.     Prejudgment interest;

5.     For such other and further relief as the Court shall deem just and proper.

For an award against **ALL DEFENDANTS** for Negligence, Wrongful Death, Survival Action, Public Nuisance, Private Nuisance, Premises Liability, Trespass, Violation of Public Utilities Code § 2106, and from **DEFENDANTS PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY** for Violation of Health & Safety Code § 13007, all according to proof, for:

1.     Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost personal and/or real property;

2.     Loss of the use and benefit of Plaintiffs' real and/or personal property;

3.     Loss of wages, earning capacity, goodwill, and/or business profits or proceeds and/or any related displacement expenses;

4.     Past and future medical expenses and incidental expenses according to proof;

5.     Attorneys' fees, expert fees, consultant fees, and litigation costs and expenses as allowed under Code of Civil Procedure § 1021.9;

6.     Treble damages for wrongful injuries to timber, trees, or underwood as allowed under Civil Code § 3346;

7.     Punitive/exemplary damages from **DEFENDANTS PG&E CORPORATION** and **PACIFIC GAS AND ELECTRIC COMPANY** only;

8.     General damages for fear, worry, annoyance, disturbance, inconvenience, mental anguish, emotional distress, loss of quiet enjoyment of property, and personal injury;

9.     An order enjoining continued violation of Public Resource Code §§ 4292 and 4293, and Public Utilities Commission General Order 95, Rule 35, and to abate the nuisances caused by the Butte Fire;

10.     All costs of suit;

11.     Prejudgment interest; and

26

1        12.    For such other and further relief as the Court shall deem just and proper.

2    Dated:  May 23, 2016                    DREYER BABICH BUCCOLA
                                             WOOD CAMPORA, LLP
3

4                                            By:  _____
5                                                 Steven M. Campora
                                                  As Co-Liaison Counsel for Plaintiffs
6
     Dated:  May 23, 2016                    COREY, LUZAICH, DE GHETALDI,
7                                            NASTARI & RIDDLE LLP

8

9                                            By:  _____
                                                  Amanda L. Riddle
10                                                As Co-Liaison Counsel for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MASTER COMPLAINT; Butte Fire Cases, JCCP Case No. 4853

**JURY DEMAND**

**PLAINTIFFS** demand a trial by jury as to all claims in this action.

Dated:  May 23, 2016

DREYER BABICH BUCCOLA
WOOD CAMPORA, LLP

By: _____
Steven M. Campora
As Co-Liaison Counsel for Plaintiffs

Dated:  May 23, 2016

COREY, LUZAICH, DE GHETALDI,
NASTARI & RIDDLE LLP

By: _____
Amanda L. Riddle
As Co-Liaison Counsel for Plaintiffs

MASTER COMPLAINT; Butte Fire Cases, JCCP Case No. 4853

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Butte Wildfire Litigation*

**ELECTRONIC PROOF OF SERVICE**

I, Diana Prisk, hereby declare as follows:

I am employed by Corey, Luzaich, de Ghetaldi, Nastari & Riddle LLP, 700 El Camino Real, Millbrae, California, 94030.  I am over the age of 18 years and am not a party to this action.

On May 23, 2016, I caused service of true and correct copies of the following:

**MASTER COMPLAINT (Individual Plaintiffs)** on the interested parties in this action pursuant to the most recent Omnibus Service List by submitting an electronic version of the document(s) via file transfer protocol (FTP) to CaseHomePage through the upload feature at www.casehomepage.com.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 23, 2016 at Millbrae, California.

DIANA PRISK

-1-