# EXHIBIT A

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kenneth R. Chiate (Bar No. 39554)
kenchiate@quinnemanuel.com
Jeffrey N. Boozell (Bar No. 199507)
jeffboozell@quinnemanuel.com
Sarah J. Cole (Bar No. 222719)
sarahcole@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

GOUGH & HANCOCK LLP
Gayle L. Gough (Bar No. 154398)
gayle.gough@ghcounsel.com
Two Embarcadero Center, Suite 640
San Francisco, CA 94111
Telephone:  (415) 848-8900

Attorneys for Defendants
PACIFIC GAS AND ELECTRIC COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| *Coordination Proceeding*<br>*Special Title (CRC 3.550)*<br><br>**BUTTE FIRE JCCP 4853 AND**<br>**INCLUDED ACTIONS (See next page)**<br><br>PACIFIC GAS AND ELECTRIC<br>COMPANY,<br><br>          Defendant and<br>          Cross-Complainant,<br><br>               v.<br><br>TREES, INC., a Delaware Corporation; and<br>ACRT, INC. an Ohio Corporation; and DOES<br>1-10,<br><br>          Cross-Defendants | No. JCCP 4853<br>And Included Actions (see next page)<br><br>**DEFENDANT AND**<br>**CROSS-COMPLAINANT PACIFIC GAS**<br>**AND ELECTRIC COMPANY'S FIRST**<br>**AMENDED CROSS-COMPLAINT**<br>**AGAINST CROSS-DEFENDANTS**<br>**TREES, INC., ACRT INC., AND DOES 1-**<br>**10 FOR:**<br><br>**1) CONTRACTUAL INDEMNITY;**<br>**2) CONTRACTUAL DUTY TO DEFEND;**<br>**3) DECLARATORY RELIEF;**<br>**4) BREACH OF CONTRACT**<br>**(PERFORMANCE); AND**<br>**5) BREACH OF CONTRACT**<br>**(INSURANCE)**<br><br>**DEMAND FOR JURY TRIAL** |

**Actions Included in JCCP 4853 Coordinated Proceeding:**

*Adair, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41876

*Adams, Jon, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41717

*Adams, Sylvia, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-549629

*Alander, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41216

*Alberg, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41878

*Allstate Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41279

*American Modern Home Ins., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41429

*Amerman, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 16-553719

*Ancar, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 16-551597

*Andrews v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41209

*Armstrong, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41879

*Bankers Standard Ins., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41278

*Barragan, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41255

*Biggs-Adams, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548386

*Bolton v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41635

*Brundage, et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41224

*Burriss, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548899

*California Casualty Indemnity Exchange v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41676

1   *Christopher, et al. v. PG&E, PG&E Corp.; Trees, Inc.; ACRT*; Amador Superior Court 16-CV-
2        9797
3   *Cooper, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41663
4   *CSAA Ins. Exchange, et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41267
5   *Finch, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Sacramento Superior Court 34-2016-
6        00196865
7   *Fire Ins. Exchange; Farmers; et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court
8        15CV41276
9   *Hartford Casualty Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court
10       15CV41274
11  *Kern v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41290
12  *Liberty Ins., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41289
13  *Lloyds Policy No. LMHO01163 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior
14       Court 16CV41632
15  *Lloyds Policy No. LMHO1044 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior
16       Court 16CV41630
17  *Lloyds Policy No. LSI101819-01 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior
18       Court 16CV41629
19  *Lloyds Policy No. LSI102892 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior
20       Court 16CV41631
21  *Mainville, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 16-
22       552778
23  *Mathes, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-
24       548619
25  *Moeller, et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41162
26  *Monteith, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-
27       549036
28  *Moresco, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41474

47620.003-3516967v3
03765-00001/8601985.2

-2-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1  *National General Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court

2        16CV41601

3  *Nationwide Mutual Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court

4        15CV41277

5  *Norfolk, et al. v. PG&E; Trees, Inc.; ACRT*; San Francisco Superior Court 16-551700

6  *Pargett, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41335

7  *Rush, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41261

8  *Sacks, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-549334

9  *Slifkoff, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41194

10 *Smith, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548611

11 *State Farm General Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court

12        15CV41266

13 *Thomas, et al. v. PG&E Corp; PG&E, Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41774

14 *Thompson, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-

15        549623

16 *Travelers Commercial Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court

17        16CV41581

18 *Tyler v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548319

19 *United Services Auto. Assoc., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court

20        15CV41275

21 *White, et al. v. PG&E; PG&E Corp.; Trees, Inc., ACRT*; Calaveras Superior Court 16CV41622

22 *Wilcox, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41955

23

24

25

26

27

28

47620.003-3516967v3
03765-00001/8601985.2

-3-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

Defendant and Cross-Complainant Pacific Gas and Electric Company, with knowledge as to its own acts and otherwise upon information and belief, alleges against Cross-Defendant Trees, Inc. ("TREES"), ACRT, Inc. ("ACRT"), and Does 1-10 as follows:

## THE PARTIES

1.     Defendant and Cross-Complainant Pacific Gas & Electric Company ("PG&E") is a corporation organized under the laws of the State of California, with its principal place of business in San Francisco, California.

2.     Cross-Defendant TREES is a corporation organized under, and existing by virtue of, the laws of the State of Delaware.  TREES is registered to do business in the State of California and does business throughout the State of California, including in Amador and Calaveras Counties.

3.     Cross-Defendant ACRT is a corporation organized under, and existing by virtue of, the laws of the State of Ohio.  ACRT is registered to do business in the State of California and does business throughout the State of California, including in Amador and Calaveras Counties.

4.     The true names and capacities, whether individual, corporate, associate or otherwise, of the Cross-Defendants sued herein as Does 1 through 10 are unknown to PG&E, which therefore sues said Cross-Defendants by such fictitious names.  PG&E will amend this Cross-Complaint to show the true names and capacities of such Cross-Defendants when they have been ascertained.  Each Cross-Defendant designated herein as a Doe is in some manner responsible for the damages suffered by PG&E as alleged in this Cross-Complaint.

## JURISDICTION AND VENUE

5.     Numerous plaintiffs have filed actions in Calaveras, San Francisco, and Sacramento Counties alleging TREES, ACRT, and PG&E are liable for damages arising out of the Butte Fire.  All such actions have been coordinated by the Judicial Counsel of California and transferred to this Court under case number JCCP 4853.  These cross-claims relate to the subject matter of those actions and are being filed in each of the included actions.

6.      Thus, jurisdiction and venue over these cross-claims is proper under Cal. Code of Civ. Proc. § 410.10, Cal. Code of Civ. Proc. § 404 et seq., California Rules of Court 3.501 et seq., and Cal. Code Civ. Proc. § 428.10 *et seq.*

## THE TREES AGREEMENT

7.      TREES and/or its predecessors, parents, subsidiaries, and/or affiliates entered into an agreement with PG&E for "Distribution Tree Pruning and Tree Brush Removal and Reliability Tree Pruning," contract number 4400009030 dated September 25, 2014 (the "TREES Agreement").  Relevant excerpts from the contract are attached as Exhibit 1.  The TREES Agreement sets forth the terms pursuant to which TREES would perform services for PG&E.

8.      The TREES Agreement obligates TREES, among other things, to "diligently perform all Work in a proper, appropriate and professional manner, in accordance with All Applicable Requirements and approved principles of modern Arboriculture." (Exhibit 1; Attachment 2: Paragraph 2.5)

9.      Under the TREES Agreement, TREES as "Contractor" agreed, among other things, that:

> To the maximum extent permitted by applicable law, Contractor shall indemnify, hold harmless and defend PG&E, it's affiliates, officers, managers, directors, agents, and employees, from and against all claims demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; so long as such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation as is caused by (a) the sole negligence or willful misconduct of PG&E, its affiliates, officers, managers, directors, agents or employees; or (b) by such injury to property (as set forth in (ii) above) resulting from the pre-inspecting party's failure to give adequate notice or obtain prior written permission of the property owner as required by this Contract, where pre-inspection was performed by a third party and Contractor was not responsible under the Contract to notify property owner or obtain a property owner's prior written permission; or (c) by PG&E's written directions to Contractor not to perform Work modifications proposed in writing by Contractor in accordance with the Specific Conditions, provided that Contractor was performing Work that had been pre-inspected by a third party, had timely and properly notified PG&E that the Work prescribed on the PG&E work request form should be modified; had timely and properly documented the recommended modification on the PG&E work request form; and had timely and properly

submitted the PG&E work request form, noting recommended modifications in writing, to the PG&E Representative. (Exhibit 1; Attachment 4: Paragraph 9.1.1)

10.     The TREES Agreement also obligates TREES to "defend any action, claim, or suit asserting a claim which might be covered by this indemnity. . . [and] pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees." (*Id.*, Paragraph 9.1.3)

11.     The TREES Agreement also requires TREES to maintain insurance coverage, including Commercial General Liability insurance that "shall be at least as broad as the Insurance Services Office (ISO) Commercial Liability Coverage 'occurrence' form . . . with no coverage deletions." (*Id.*, Paragraph 10.2.1). The Commercial General Liability Insurance "limit shall not be less than $10,000,000 per occurrence for bodily injury, property damage, and personal injury. . . . [and] [d]efense costs shall be provided as an additional benefit and not included within the limits of liability." (*Id.*, Paragraph 10.2.2). TREES had $207,500,000 in general liability insurance during the relevant time period.

12.     The TREES Agreement also requires TREES to add PG&E as an "Additional Insured" to its Commercial General Liability policies "with respect to liability arising out of Work performed by or for [TREES] . . . ." The TREES Agreement does not specify or limit the insurance policies to which PG&E is to be added as an "Additional Insured nor does it cap or otherwise limit the amount of insurance to be afforded to PG&E as an "Additional Insured." The TREES Agreement also requires that the TREES insurance policies "[b]e endorsed to specify that [TREES'S] insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it . . . ." (*Id.,* Paragraph 10.2.3).

13.     The TREES Agreement also contains a "RESPONSIBILITY FOR NON-COMPLIANCE WITH INSURANCE REQUIREMENTS" provision that states:

> Notwithstanding any other provisions of this Contract and separate and apart from Contractor's obligation to indemnify PG&E pursuant to Article 9 and the insurance requirements in Article 10 hereof, if Contractor's insurance carrier fails or refuses to defend or indemnify PG&E pursuant to an additional insured endorsement because of a failure to obtain an additional insured endorsement, policy deductible, self-insured retention, or other unauthorized coverage deletion, Contractor shall stand in the place of its insurer and shall defend and indemnify PG&E . . . to the same extent that an insurer issuing ISO form occurrence coverage without coverage deletions would under California

47620.003-3516967v3
03765-00001/8601985.2

-6-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1   law. If Contractor unreasonably fails or refuses to so defend and indemnify, Contractor
2   shall be liable to PG&E for all damages, including but limited to attorney's fees and
    imposition of punitive damages.  (*Id.*, Paragraph 10.6.2)

3   **THE ACRT AGREEMENT**

4   14.     ACRT and/or its predecessors, parents, subsidiaries, and/or affiliates entered into

5   an agreement with PG&E for "Pre-Inspection Services – Distribution, Reliability, and

6   Transmission and System Orchard," contract number 4400007121 dated September 25, 2014 (the

7   "ACRT Agreement").  Relevant excerpts from the contract are attached as Exhibit 2.  The ACRT

8   Agreement sets forth the terms pursuant to which ACRT would perform services for PG&E.

9   15.     The ACRT Agreement obligates ACRT, among other things, to "diligently perform

10  all Work in a proper, appropriate and professional manner, in accordance with the requirements of

11  all applicable federal, state, and/or local laws, rules ordinances, and regulations, in accordance

12  with approved principles of modern Arboriculture, and to the satisfaction of PG&E." (Exhibit 2;

13  Attachment 2: paragraph 2.3)

14  16.     Under the ACRT Agreement, ACRT as "Contractor" agreed, among other things,

15  that:

16     Contractor shall indemnify, hold harmless, and defend PG&E, its affiliates, subsidiaries,
       parent company, officers, managers, directors, agents, and employees, from and against all
17     claims, demands, losses, damages, costs, expenses and liability (legal, contractual, or
       otherwise), which arise from or are in any way connected with any: (i) injury to or death of
18     persons, including but not limited to employees of PG&E or Contractor; (ii) injury to
       property or other interests of PG&E, Contractor, or any third party; (iii) violation of local,
19     state, or federal common law, statute or regulation, including but not limited to
       environmental laws or regulations; (iv) strict liability imposed by any law or regulation; or
20     (v) a breach of its confidentiality obligations under Article 5.0; so long as such injury,
       violation, or strict liability (as set forth in (i) - (v) above) arises from or is in any way
21     connected with Contractor's performance of, or failure to perform, this Contract, however
       caused, regardless of any strict liability or negligence of PG&E, whether active or passive,
22     excepting only such loss, damage, cost, expense, liability, strict liability, or violation of
       law or regulation that is caused by the sole negligence or willful misconduct of PG&E, its
23     officers, managers, or employees. (Exhibit 2; Attachment 4: Paragraph 6.1.1)

24  17.     The ACRT Agreement also obligates ACRT to "defend any action, claim, or suit

25  asserting a claim which might be covered by this indemnity. . .  [and] pay all costs and expenses

26  that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees."

27  (*Id.*, Paragraph 6.1.3)

28

47620.003-3516967v3
03765-00001/8601985.2

-7-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

18.     The ACRT Agreement also requires ACRT to maintain insurance coverage, including Commercial General Liability insurance that "shall be at least as broad as the Insurance Services Office (ISO) Commercial Liability Coverage  'occurrence' form . . . with no coverage deletions."  (*Id.*, Paragraph 7.2.1).  The Commercial General Liability Insurance "limit shall not be less than $10,000,000 each occurrence for bodily injury, property damage, and personal injury."  (*Id.*, Paragraph 7.2.2).  ACRT purchased $20,000,000 in general liability insurance during the relevant time period.

19.     The ACRT Agreement also requires ACRT to add PG&E as an "Additional Insured" to its Commercial General Liability policies "with respect to liability arising out of Work performed by or for [ACRT] . . . ."  The ACRT Agreement does not specify or limit the insurance policies to which PG&E is to be added as an Additional Insured nor does it cap or otherwise limit the amount of insurance to be afforded to PG&E as an Additional Insured.  The ACRT Agreement also requires that the ACRT insurance policies must "[b]e endorsed to specify that [ACRT'S] insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it."  (*Id.,* Paragraph 7.2.3).

20.     The ACRT Agreement also contains a "RESPONSIBILITY FOR NON-COMPLIANCE WITH INSURANCE REQUIREMENTS" provision that states:

> Notwithstanding any other provisions of this Contract and separate and apart from Contractor's obligation to indemnify PG&E pursuant to Article 9 and the insurance requirements in Article 10 hereof, if Contractor's insurance carrier fails or refuses to defend or indemnify PG&E pursuant to an additional insured endorsement because of a failure to obtain an additional insured endorsement, policy deductible, self-insured retention, or other unauthorized coverage deletion, Contractor shall stand in the place of its insurer and shall defend and indemnify PG&E . . . to the same extent that an insurer issuing ISO form occurrence coverage without coverage deletions would under California law. If Contractor unreasonably fails or refuses to so defend and indemnify, Contractor shall be liable to PG&E for all damages, including but limited to attorney's fees and imposition of punitive damages.  (*Id.*, Paragraph 7.6.2)

### THE UNDERLYING ACTIONS AND PG&E'S CLAIM

21.     On or about September 9, 2015, a wildfire ignited southeast of Jackson, in Amador County.  This wildfire became known as the "Butte Fire."

22.     The Butte Fire spread quickly into Calaveras County, burned thousands of acres, and caused substantial property damage.

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

23.     Beginning on September 29, 2015, or soon thereafter, PG&E was sued by multiple plaintiffs alleging that TREES, ACRT and PG&E are liable for losses they sustained as a result of the Butte Fire.  On February 7, 2016, these cases were coordinated by the Judicial Counsel of California and transferred to this Court.  On May 23, 2016, plaintiffs caused to be filed in the Superior Court of the State of California for the County of Sacramento, two Master Complaints in the Butte Fire Cases, bearing case number JCCP 4853, and register number 935.  These complaints were filed on behalf of Individual Plaintiffs and, separately, Subrogation Plaintiffs (the "Master Complaints").  All plaintiffs in the included actions have since filed Adoption Complaints in this matter which "adopt" all or portions of the Master Complaint.  For the purpose of this pleading only, and without admitting the truth of any claims therein, PG&E refers to the allegations in the Master and Adoption Complaints, and the allegations of those complaints are incorporated herein by reference.

24.     Plaintiffs in the included actions, as set forth in the Master and Adoption Complaints, assert causes of action against PG&E including negligence, wrongful death, survival action, inverse condemnation, public nuisance, private nuisance, premises liability, trespass, violation of public utilities code § 2106, and violation of Health and Safety Code § 13007.  PG&E denies the allegations of the plaintiffs in the underlying actions.

25.     In 2015, ACRT and TREES were responsible for vegetation management pre-inspection and tree pruning services in PG&E's service territory, respectively.  Plaintiffs in the underlying actions have alleged that on or about September 9, 2015, a tree in ACRT and TREES'S service territory contacted PG&E conductors.  Plaintiffs further allege ACRT and TREES performed work that ultimately led to the ignition of the Butte Fire.

**TREES'S BREACH OF ITS DUTIES**

26.     On November 19, 2015, PG&E notified TREES of the Butte Fire litigation and demanded that TREES defend and indemnify PG&E in connection with the Butte Fire litigation pursuant to the TREES Agreement.  PG&E also asked that TREES provide PG&E with copies of the TREES insurance policies and all correspondence with TREES'S insurers concerning the Butte Fire litigation, including TREES'S notice to its insurers of PG&E's claim for indemnity.

47620.003-3516967v3
03765-00001/8601985.2

-9-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1    27.    On November 23, 2015, TREES rejected PG&E's tender of its defense, stating that

2    "it does not appear that the fire arose from or was connected to any performance or failure to

3    perform by Trees, Inc. . . . "

4    28.    On December 3, 2015, Liberty Mutual Insurance Company, the TREES primary

5    insurer, responded to PG&E's tender of the Butte Fire litigation, stating "your request is currently

6    under review.  Once we have determined our position relative to your tender, we will advise you

7    in writing."

8    29.    On February 19, 2016, PG&E asked TREES to "reconsider its refusal to defend

9    PG&E in the Butte Fire litigation. . . . [and] reserve[d] its right to seek 'all costs and expenses . . .

10    including reasonable attorney's fees' that it incurs enforcing Trees' agreement to defend PG&E

11    pursuant to  . . . the [TREES] Contract."

12    30.    In April and June 2016, PG&E again demanded that the TREES insurers defend

13    and indemnify PG&E in the Butte Fire litigation.   None of the TREES insurers agreed to do so.

14    31.    To date, the TREES insurers have either reserved their rights to deny coverage for

15    PG&E as an Additional Insured under the policies that provide coverage in excess of $10,000,000

16    or refused to respond to PG&E's requests for defense and indemnity.  None of the TREES insurers

17    have agreed to defend or indemnify PG&E.  Instead, various of the TREES insurers have asserted

18    that PG&E is not an Additional Insured under their policies.

19    32.    Despite that none of its insurers have indemnified or agreed to indemnify PG&E

20    with respect to the damages that it has incurred in the Butte Fire litigation and that none of its

21    insurers that provide coverage in excess of $10,000,000 have acknowledged that PG&E is an

22    Additional Insured with respect to such coverage, TREES has not agreed to stand in the place of

23    its insurers, as required by the TREES Agreement, and has refused to defend and indemnify

24    PG&E.

25    **ACRT'S BREACH OF ITS DUTIES**

26    33.    On November 19, 2015, PG&E notified ACRT of the Butte Fire litigation and

27    demanded that ACRT defend and indemnify PG&E in connection with the Butte Fire litigation

28    pursuant to the ACRT Agreement.  PG&E also asked that ACRT provide PG&E with copies of

47620.003-3516967v3
03765-00001/8601985.2

-10-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1    the ACRT insurance policies and all correspondence with ACRT'S insurers concerning the Butte

2    Fire litigation.

3         34.    On November 24, 2015, ACRT rejected PG&E's tender of its defense, stating that

4    "nothing ACRT did, nor any action it took at the site, can be viewed to have caused the fire or

5    otherwise equate to a failure to perform under its PG&E contract."

6         35.    On December 3, 2015, PG&E responded, stating, "ACRT'S obligations of

7    indemnity arise if the claims arise from or are in any way connected with ACRT'S performance

8    of, or failure to perform, under its agreement with PG&E.  The plaintiffs allege this, and thus the

9    claims tendered clearly require a defense of the claims, and ultimately indemnity."

10        36.    On February 19, 2016, PG&E again requested that ACRT reconsider its refusal to

11   defend PG&E in the Butte Fire litigation.

12        37.    In April and June 2016, PG&E demanded that ACRT'S general liability insurers

13   defend and indemnify PG&E in the Butte Fire litigation.  None of the ACRT insurers agreed to do

14   so.

15        38.    To date, ACRT continues to refuse to defend or indemnify PG&E in connection

16   with the Butte Fire litigation.

17        39.    To date, ACRT'S general liability insurers have denied coverage or reserved rights

18   to deny coverage based on a "professional services" limitation in the Additional Insured

19   endorsement to the general liability insurance policies.  Therefore, none of ACRT'S insurers have

20   agreed to defend or indemnify PG&E as an Additional Insured under their policies.

21                              **FIRST CROSS-CLAIM**

22                    (Cause of Action Against TREES for Contractual Indemnity)

23        40.    PG&E realleges and incorporates by reference each of the allegations in Paragraphs

24   1 through 39, as though fully set forth herein.

25        41.    As set forth above, the TREES Agreement expressly provides, in substance, among

26   other things, and TREES expressly agreed, that TREES would:

27

28        indemnify, hold harmless and defend PG&E . . . from and against all claims demands,
          losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which

-11-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

arise from or are in any way connected with any: (i) injury to or death of persons, . . . (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; so long as such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation as is caused by (a) the sole negligence or willful misconduct of PG&E, its affiliates, officers, managers, directors, agents or employees. . . .  (Exhibit 1; Attachment 4: Paragraph 9.1.1)

42.     PG&E has performed all conditions, covenants, and promises to be performed by it under the TREES Agreement, or such obligations have been excused by TREES.

43.     PG&E and TREES have been named in numerous lawsuits arising out of the Butte Fire that allege, among other things, that "vegetation coming into contact with energized power lines…ignit[ed] a raging wildfire" which was the direct result of TREES'S failure "to identify, inspect, manage, and/or control vegetation growth near power lines."  (Master Complaint Butte Fire Cases, JCCP Case No. 4853: Paragraph 3).

44.     PG&E denies the allegations of the plaintiffs in the underlying actions.  If, however, PG&E is adjudged to be liable under the law or settles or has settled with the plaintiffs in any of the underlying actions as a result of the alleged acts or omissions of TREES, whether such liability would be based solely or in part upon the alleged acts and/or omissions of TREES, PG&E is entitled to complete or partial indemnity from TREES for such liability and/or settlement payments.

45.     PG&E has paid to settle claims brought by the Butte Fire plaintiffs.  TREES has refused to indemnify PG&E for the Butte Fire litigation settlements.

46.     As a direct and proximate result of TREES'S breach of its duty to indemnify, PG&E has been damaged in an amount in excess of this Court's jurisdictional limits, plus interest. The actual amount of PG&E's damages has not been precisely ascertained yet.  When the precise amount of damages is known, PG&E will seek leave to amend this complaint.

47620.003-3516967v3
03765-00001/8601985.2

-12-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

47.     Pursuant to the TREES Agreement, PG&E also is entitled to recover its attorneys' fees and costs incurred in enforcing its right to an indemnity under the TREES Agreement.  (*Id.,* Paragraph 9.1.3).

## SECOND CROSS-CLAIM

(Cause of Action Against ACRT for Contractual Indemnity)

48.     PG&E realleges and incorporates by reference each of the allegations in Paragraphs 1 through 47, as though fully set forth herein.

49.     As set forth above, the ACRT Agreement expressly provides, in substance, among other things, and ACRT expressly agreed, that ACRT would:

> indemnify, hold harmless, and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; (iv) strict liability imposed by any law or regulation; or (v) a breach of its confidentiality obligations under Article 5.0; so long as such injury, violation, or strict liability (as set forth in (i) - (v) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation that is caused by the sole negligence or willful misconduct of PG&E, its officers, managers, or employees. (Exhibit 2; Attachment 4: Paragraph 6.1.1)

50.     PG&E has performed all conditions, covenants, and promises to be performed by it under the ACRT Agreement, or such obligations have been excused by ACRT.

51.     PG&E and ACRT have been named in numerous lawsuits arising out of the Butte Fire that allege, among other things, that "vegetation coming into contact with energized power lines…ignit[ed] a raging wildfire" which was the direct result of ACRT'S failure "to identify, inspect, manage, and/or control vegetation growth near power lines."  (Master Complaint Butte Fire Cases, JCCP Case No. 4853: Paragraph 3).

52.     PG&E denies the allegations of the plaintiffs in the underlying actions.  If, however, PG&E is adjudged to be liable under the law or settles or has settled with the plaintiffs in

47620.003-3516967v3
03765-00001/8601985.2

-13-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1  any of the underlying actions as a result of the alleged acts or omissions of ACRT, whether such

2  liability would be based solely or in part upon the alleged acts and/or omissions of ACRT, PG&E

3  is entitled to complete or partial indemnity from ACRT for such liability and/or settlement

4  payments.

5  53.   PG&E has paid to settle claims brought by the Butte Fire plaintiffs.  ACRT has

6  refused to indemnify PG&E for the Butte Fire litigation settlements.

7  54.   As a direct and proximate result of ACRT'S breach of its duty to indemnify, PG&E

8  has been damaged in an amount in excess of this Court's jurisdictional limits, plus interest.  The

9  actual amount of PG&E's damages has not been precisely ascertained yet.  When the precise

10  amount of damages is known, PG&E will seek leave to amend this complaint.

11  55.   Pursuant to the ACRT Agreement, PG&E also is entitled to recover its attorneys'

12  fees and costs incurred in enforcing its right to an indemnity under the TREES Agreement.  (*Id.,*

13  Paragraph 6.1.3).

### THIRD CROSS-CLAIM

(Cause of Action Against TREES for Contractual Duty to Defend)

16  56.   PG&E realleges and incorporates by reference each of the allegations in Paragraphs

17  1 through 55, as though fully set forth herein.

18  57.   PG&E has performed all conditions, covenants, and promises to be performed by it

19  under the TREES Agreement, or such obligations have been excused by TREES.

20  58.   PG&E and TREES have been named in numerous lawsuits arising out of the Butte

21  Fire that allege, among other things, that "vegetation coming into contact with energized power

22  lines…ignit[ed] a raging wildfire" which was the direct result of TREES'S failure "to identify,

23  inspect, manage, and/or control vegetation growth near power lines."  (Master Complaint Butte

24  Fire Cases, JCCP Case No. 4853: Paragraph 3).

25  59.   Pursuant to the TREES Agreement, TREES is obligated to defend PG&E against

26  "any action, claim, or suit asserting a claim which might be covered" under the TREES

27  Agreement's Indemnity provision.

28

47620.003-3516967v3
03765-00001/8601985.2

-14-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

60.     TREES breached its duty to defend PG&E under the TREES Agreement by refusing to defend PG&E in the Butte Fire litigation.

61.     As a direct and proximate result of TREES'S breach of its duty to defend, PG&E has been damaged in an amount in excess of this Court's jurisdictional limits, plus interest.  The actual amount of PG&E's damages has not been precisely ascertained yet.  When the precise amount of damages is known, PG&E will seek leave to amend this complaint.

62.     Pursuant to the TREES Agreement, PG&E also is entitled to recover its attorneys' fees and costs incurred in enforcing its right to a defense under the TREES Agreement.  (*Id.,* Paragraph 9.1.3).

## FOURTH CROSS-CLAIM

(Cause of Action Against ACRT for Contractual Duty to Defend)

63.     PG&E realleges and incorporates by reference each of the allegations in Paragraphs 1 through 62, as though fully set forth herein.

64.     PG&E has performed all conditions, covenants, and promises to be performed by it under the ACRT Agreement, or such obligations have been excused by ACRT.

65.     PG&E and ACRT have been named in numerous lawsuits arising out of the Butte Fire that allege, among other things, that "vegetation coming into contact with energized power lines…ignit[ed] a raging wildfire" which was the direct result of ACRT'S failure "to identify, inspect, manage, and/or control vegetation growth near power lines."  (Master Complaint Butte Fire Cases, JCCP Case No. 4853: Paragraph 3).

66.     Pursuant to the ACRT Agreement, ACRT is obligated to defend PG&E against "any action, claim, or suit asserting a claim which might be covered" under the ACRT Agreement's Indemnity provision.

67.     ACRT breached its duty to defend PG&E under the ACRT Agreement by refusing to defend PG&E in the Butte Fire litigation.

68.     As a direct and proximate result of ACRT'S breach of its duty to defend, PG&E has been damaged in an amount in excess of this Court's jurisdictional limits, plus interest.  The

47620.003-3516967v3
03765-00001/8601985.2

1   actual amount of PG&E's damages has not been precisely ascertained yet.  When the precise

2   amount of damages is known, PG&E will seek leave to amend this complaint.

3       69.     Pursuant to the ACRT Agreement, PG&E also is entitled to recover its attorneys'

4   fees and costs incurred in enforcing its right to a defense under the ACRT Agreement.  (*Id.,*

5   Paragraph 6.1.3).

6                                **FIFTH CROSS-CLAIM**

7                (Cause of Action Against TREES for Declaratory Relief)

8       70.     PG&E realleges and incorporates by reference each of the allegations in Paragraphs

9   1 through 69, as though fully set forth herein.

10      71.     California Code of Civil Procedure Section 1060 provides that "[a]ny person

11  interested under . . . a contract . . . may, in cases of actual controversy relating to the legal rights

12  and duties of the respective parties, bring an original action or cross-complaint in the superior

13  court for . . . a determination of any question of construction or validity arising under the . . .

14  contract. . . .  [T]he court may make a binding declaration of these rights or duties, whether or not

15  further relief is or could be claimed at the time.  The declaration may be either affirmative or

16  negative in form and effect, and the declaration shall have the force of a final judgment. The

17  declaration may be had before there has been any breach of the obligation in respect to which said

18  declaration is sought."

19      72.     An actual controversy has arisen and now exists between PG&E and TREES,

20  concerning the proper construction of the TREES Agreement and their respective rights, duties,

21  and obligations arising under the TREES Agreement with regard to the foregoing as set forth

22  herein.  PG&E and TREES are interested parties under the TREES Agreement.

23      73.     PG&E contends that pursuant to the TREES Agreement, it is entitled to indemnity

24  to the extent it is determined that any liability, judgment, settlement, or award against PG&E in

25  favor of plaintiffs, as well as all costs, expenses, and attorney's fees incurred or paid by PG&E in

26  its defense of the underlying actions relating to the Butte Fire and prosecution of these cross-

27  claims, arose out of or were connected in any way to TREES'S performance of services pursuant

28

47620.003-3516967v3
03765-00001/8601985.2

-16-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1   to the TREES agreement or TREES'S breach of the TREES Agreement, notwithstanding the

2   degree of fault of PG&E and/or TREES.

3        74.   PG&E contends that pursuant to the TREES Agreement, it is entitled to indemnity

4   from TREES for all liability, judgment, settlement, or award against PG&E in favor of plaintiffs,

5   as well as all costs, expenses, and attorney's fees incurred or paid by PG&E in its defense of the

6   underlying actions relating to the Butte Fire and prosecution of these cross-claims, by way of

7   complete or partial indemnity against TREES.  In no event shall such indemnification be for an

8   amount less than is commensurate with TREES'S relative share of fault.

9        75.   PG&E contends that pursuant to the TREES Agreement it is entitled to be defended

10   by TREES with respect to the allegations and claims by plaintiffs in the underlying actions related

11   to the Butte Fire which "might be covered" by the above indemnity, including payment or defense

12   costs.

13        76.   PG&E is informed and believes, and thereon alleges, that TREES denies fault and

14   any obligation to indemnify PG&E pursuant to the TREES Agreement.

15        77.   PG&E desires a judicial declaration of the proper construction of the TREES

16   Agreement and its and TREES'S respective rights, duties, and obligations arising under the

17   TREES Agreement as set forth herein.

18        78.   A judicial declaration is necessary and appropriate at this time, under the

19   circumstances described herein and pursuant to Code of Civil Procedure Section 1060, in order

20   that the parties may ascertain the proper construction of the TREES Agreement and their

21   respective rights, duties, and obligations arising under the TREES Agreement, and in order to

22   avoid a miscarriage of justice, irreparable harm, and multiplicity of actions.

23   **SIXTH CROSS-CLAIM**

24   (Cause of Action Against ACRT for Declaratory Relief)

25        79.   PG&E realleges and incorporates by reference each of the allegations in Paragraphs

26   1 through 78, as though fully set forth herein.

27        80.   California Code of Civil Procedure Section 1060 provides that "[a]ny person

28   interested under . . . a contract . . . may, in cases of actual controversy relating to the legal rights

47620.003-3516967v3
03765-00001/8601985.2

-17-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

and duties of the respective parties, bring an original action or cross-complaint in the superior court for . . . a determination of any question of construction or validity arising under the . . . contract. . . .  [T]he court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time.  The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

81.     An actual controversy has arisen and now exists between PG&E and ACRT, concerning the proper construction of the ACRT Agreement and their respective rights, duties, and obligations arising under the ACRT Agreement with regard to the foregoing as set forth herein. PG&E and ACRT are interested parties under the ACRT Agreement.

82.     PG&E contends that pursuant to the ACRT Agreement, it is entitled to such indemnity to the extent it is determined that any liability, judgment, settlement, or award against PG&E in favor of plaintiffs, as well as all costs, expenses, and attorney's fees incurred or paid by PG&E in its defense of the underlying actions relating to the Butte Fire and prosecution of these cross-claims, arose out of or were connected in any way to ACRT'S performance of services pursuant to the ACRT agreement or ACRT'S breach of the ACRT Agreement, notwithstanding the degree of fault of PG&E and/or ACRT.

83.     PG&E contends that pursuant to the ACRT Agreement, it is entitled to indemnity from ACRT for all liability, judgment, settlement, or award against PG&E in favor of plaintiffs, as well as all costs, expenses, and attorney's fees incurred or paid by PG&E in its defense of the underlying actions relating to the Butte Fire and prosecution of these cross-claims, by way of complete or partial indemnity against ACRT.  In no event shall such indemnification be for an amount less than is commensurate with ACRT'S relative share of fault.

84.     PG&E contends that pursuant to the ACRT Agreement it is entitled to be defended by ACRT with respect to the allegations and claims by plaintiffs in the underlying actions related to the Butte Fire which "might be covered" by the above indemnity, including payment or defense costs.

85.     PG&E is informed and believes, and thereon alleges, that ACRT denies fault and any obligation to indemnify PG&E pursuant to the ACRT Agreement.

86.     PG&E desires a judicial declaration of the proper construction of the ACRT Agreement and its and ACRT'S respective rights, duties, and obligations arising under the ACRT Agreement as set forth herein.

87.     A judicial declaration is necessary and appropriate at this time, under the circumstances described herein and pursuant to Code of Civil Procedure Section 1060, in order that the parties may ascertain the proper construction of the ACRT Agreement and their respective rights, duties, and obligations arising under the ACRT Agreement, and in order to avoid a miscarriage of justice, irreparable harm, and multiplicity of actions.

## SEVENTH CROSS-CLAIM

(Cause of Action Against TREES and Does 1 through 10 for Breach of Contract (Performance))

88.     PG&E realleges and incorporates by reference each of the allegations in Paragraphs 1 through 87, as though fully set forth herein.

89.     As set forth above, the TREES Agreement between PG&E and TREES, and/or its predecessors, parents, subsidiaries, and/or affiliates, sets forth the terms pursuant to which TREES would perform services for PG&E.

90.     Pursuant to the TREES Agreement, TREES agreed, among other things, to "diligently perform all Work in a proper, appropriate and professional manner, in accordance with All Applicable Requirements and approved principles of modern Arboriculture." (Exhibit 1; Attachment 2: paragraph 2.5)

91.     PG&E has performed all conditions, covenants, and promises to be performed by it under the TREES Agreement, or such obligations have been excused by TREES.

92.     PG&E is therefore informed and believes, and thereon alleges, that plaintiffs' allegations in the underlying actions, if proven, would constitute a breach of the TREES Agreement by TREES and Does 1 through 10.

47620.003-3516967v3
03765-00001/8601985.2

-19-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

93.     PG&E is informed and believes, and thereon alleges, that the breach of the TREES Agreement by TREES as plaintiffs allege in the underlying actions, if proven, would have been a substantial cause of the Butte Fire.

94.     To the extent TREES has breached the TREES Agreement, PG&E has been injured as a result of the breach.  PG&E's injuries include, but are not limited to, damage to PG&E's equipment and facilities, and the payment of settlements or judgments to plaintiffs in the wildfire litigation for damages arising from the Butte Fire.  PG&E has been damaged in an amount in excess of this Court's jurisdictional limits, plus interest.  The actual amount of PG&E's damages has not been precisely ascertained yet.  When the precise amount of damages is known, PG&E will seek leave to amend this complaint.

## EIGHTH CROSS-CLAIM

(Cause of Action Against ACRT and Does 1 through 10 for Breach of Contract (Performance))

95.     PG&E realleges and incorporates by reference each of the allegations in Paragraphs 1 through 94, as though fully set forth herein.

96.     As set forth above, the ACRT Agreement between PG&E and ACRT, and/or its predecessors, parents, subsidiaries, and/or affiliates, set forth the terms pursuant to which ACRT would perform services for PG&E.

97.     Pursuant to the ACRT Agreement, ACRT agreed, among other things, to "diligently perform all Work in a proper, appropriate and professional manner, in accordance with the requirements of all applicable federal, state, and/or local laws, rules, ordinances, and regulations, in accordance with approved principles of modern Arboriculture, and to the satisfaction of PG&E." (Exhibit 2; Attachment 2: paragraph 2.3)

98.     PG&E has performed all conditions, covenants, and promises to be performed by it under the ACRT Agreement, or such obligations have been excused by ACRT.

99.     PG&E is therefore informed and believes, and thereon alleges, that plaintiffs' allegations in the underlying actions, if proven, would constitute a breach of the ACRT Agreement by ACRT and Does 1 through 10.

47620.003-3516967v3
03765-00001/8601985.2

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

100.     PG&E is informed and believes, and thereon alleges, that the breach of the ACRT Agreement by ACRT as plaintiffs allege in the underlying actions, if proven, would have been a substantial cause of the Butte Fire.

101.     To the extent ACRT has breached the ACRT Agreement, PG&E has been injured as a result of the breach.  PG&E's injuries include, but are not limited to, damage to PG&E's equipment and facilities, and the payment of settlements or judgments to plaintiffs in the wildfire litigation for damages arising from the Butte Fire.  PG&E has been damaged in an amount in excess of this Court's jurisdictional limits, plus interest.  The actual amount of PG&E's damages has not been precisely ascertained yet.  When the precise amount of damages is known, PG&E will seek leave to amend this complaint.

## NINTH CROSS-CLAIM

(Cause of Action Against TREES for Breach of Contract (Insurance))

102.     PG&E realleges and incorporates by reference each of the allegations in Paragraphs 1 through 101, as though fully set forth herein.

103.     As stated above, the TREES Agreement requires TREES to maintain insurance coverage, including Commercial General Liability insurance that "shall be at least as broad as the Insurance Services Office (ISO) Commercial Liability Coverage  'occurrence' form . . . with no coverage deletions." (*Id.*, Paragraph 10.2.1).  The Commercial General Liability Insurance "limit shall not be less than $10,000,000 per occurrence for bodily injury, property damage, and personal injury  . . . . [and] [d]efense costs shall be provided as an additional benefit and not included within the limits of liability." (*Id.*, Paragraph 10.2.2).

104.     As also stated above, the TREES Agreement also requires TREES to add PG&E as an "Additional Insured" to its Commercial General Liability policies "with respect to liability arising out of Work performed by or for [TREES] . . . ."  The TREES Agreement does not specify or limit the insurance policies to which PG&E is to be added as an "Additional Insured nor does it cap or otherwise limit the amount of insurance to be afforded to PG&E as an "Additional Insured."  The TREES Agreement also requires that the TREES insurance policies "[b]e endorsed

47620.003-3516967v3
03765-00001/8601985.2

-21-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1   to specify that [TREES'S] insurance is primary and that any insurance or self-insurance

2   maintained by PG&E shall not contribute with it . . . ."  (*Id.,* Paragraph 10.2.3).

3        105.    PG&E timely tendered the Butte Fire litigation to the TREES insurers and

4   demanded that they defend and indemnify PG&E as an Additional Insured under the TREES

5   insurance policies.  PG&E is informed and believes, and on that basis alleges, that the TREES

6   insurers that provide coverage in excess of $10,000,000 dispute that PG&E is an Additional

7   Insured under their policies.  Indeed, none of the TREES insurers have acknowledged PG&E's

8   status as an Additional Insured above $10,000,000 and various of the TREES insurers have

9   reserved their rights to deny coverage to PG&E.  Furthermore, none of the TREES insurers have

10  defended PG&E in the Butte Fire litigation or paid any portion of the damages that PG&E has

11  incurred in the Butte Fire litigation.

12       106.    Pursuant to the TREES Agreement, because the TREES insurers whose coverage

13  attaches in excess of $10,000,000 have "fail[ed] or refuse[ed] to . . .  indemnify PG&E pursuant to

14  an additional insured endorsement because of a failure to obtain an additional insured

15  endorsement, . . . or other unauthorized coverage deletion,"  TREES was and is obligated to "stand

16  in the place of its insurer[s]" and to "indemnify PG&E . . . ."  TREES has breached its duty by

17  unreasonably failing and refusing to "stand in the place of its insurer[s]" and by unreasonably

18  failing and refusing to indemnify PG&E for any portion of the damages that PG&E has incurred in

19  the Butte Fire litigation.  TREES'S breach is a continuing breach.

20       107.    PG&E has performed all conditions, covenants, and promises to be performed by it

21  under the TREES Agreement, or such obligations have been excused by TREES.

22       108.    As a result of TREES'S breach of the TREES Agreement and TREES'S failure to

23  "stand in the place of its insurer[s]," PG&E has been, and is continuing to be, damaged in an

24  amount to be proven at trial.  PG&E's damages include the amounts PG&E would have received

25  under the TREES insurance policies for indemnity with respect to the Butte Fire litigation had the

26  TREES insurers acknowledged that PG&E is an Additional Insured and performed the duties that

27  they otherwise owe to PG&E as an Additional Insured.

28

47620.003-3516967v3
03765-00001/8601985.2

-22-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

109.     Pursuant to paragraph 10.6.2 of the TREES Agreement, "[i]f [TREES] unreasonably fails or refuses to [] . . .  indemnify, [TREES] shall be liable to PG&E for all resulting damages, including . . . attorney's fees . . . ."  Moreover, because TREES stands in the place of its insurers, PG&E also is entitled to attorneys' fees pursuant to *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985).  PG&E is entitled to recover all attorneys' fees and expenses that it reasonably has incurred, and is incurring, in its efforts to obtain the benefits due under the TREES Agreement, plus interest.

## TENTH CROSS-CLAIM

(Cause of Action Against ACRT for Breach of Contract (Insurance))

110.     PG&E realleges and incorporates by reference each of the allegations in Paragraphs 1 through 109, as though fully set forth herein.

111.     As set forth above, the ACRT Agreement requires ACRT to maintain insurance coverage, including Commercial General Liability insurance that "shall be at least as broad as the Insurance Services Office (ISO) Commercial Liability Coverage  'occurrence' form, with no coverage deletions."  (*Id.*, Paragraph 7.2.1).  The Commercial General Liability Insurance "limit shall not be less than $10,000,000 each occurrence for bodily injury, property damage, and personal injury."  (*Id.*, Paragraph 7.2.2).

112.     The ACRT Agreement also requires ACRT to add PG&E as an Additional Insured to its Commercial General Liability policies "with respect to liability arising out of Work performed by or for [ACRT] . . . ."  The ACRT Agreement does not specify or limit the insurance policies to which PG&E is to be added as an Additional Insured nor does it cap or otherwise limit the amount of insurance to be afforded to PG&E as an Additional Insured.  The ACRT Agreement also requires that the ACRT insurance policies "[b]e endorsed to specify that [ACRT'S] insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it."  (*Id.,* Paragraph 7.2.3).

113.     PG&E timely tendered the Butte Fire litigation to ACRT'S general liability insurers and demanded that they defend and indemnify PG&E as an Additional Insured under the ACRT general liability insurance policies.  ACRT'S general liability insurers have either denied coverage

47620.003-3516967v3
03765-00001/8601985.2

-23-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

or reserved their rights to deny coverage for PG&E's claim as an Additional Insured under their policies for the Butte Fire litigation based on the professional services limitation in the additional insured endorsement to the ACRT general liability insurance policies. Furthermore, none of ACRT'S insurers have paid any portion of the damages that PG&E has incurred in the Butte Fire litigation. As a result, PG&E has been deprived of the insurance coverage that ACRT was obligated to provide it under the ACRT Agreement.

114.    Pursuant to the ACRT Agreement, because ACRT'S insurers have "fail[ed] or refuse[d] to defend or indemnify PG&E pursuant to an additional insured endorsement because of [an] unauthorized coverage deletion," ACRT was and is obligated to "stand in the place of its insurer[s]" and to "defend and indemnify PG&E . . . ." (*Id.,* Paragraph 7.6.2). ACRT has breached its duty by unreasonably failing and refusing to "stand in the place of its insurer[s]" and by unreasonably failing and refusing to defend and indemnify PG&E for any portion of the damages that PG&E has incurred in the Butte Fire litigation. ACRT'S breach is a continuing breach.

115.    PG&E has performed all conditions, covenants, and promises to be performed by it under the ACRT Agreement, or such obligations have been excused by ACRT.

116.    As a result of ACRT'S breach of the ACRT Agreement and ACRT'S failure to "stand in the place of its insurer[s]," PG&E has been, and is continuing to be, damaged in an amount to be proven at trial. PG&E's damages include the amounts PG&E would have received under the ACRT insurance policies for defense and indemnity with respect to the Butte Fire litigation had the ACRT general liability insurers acknowledged that PG&E is an Additional Insured and performed the duties that they otherwise owe to PG&E as an Additional Insured.

117.    Pursuant to paragraph 7.6.2 of the ACRT Agreement, "[i]f [ACRT] unreasonably fails or refuses to [] defend and indemnify, [ACRT] shall be liable to PG&E for all resulting damages, including . . . attorney's fees . . . ." Moreover, because ACRT stands in the place of its insurers, PG&E also is entitled to attorneys' fees pursuant to *Brandt v. Superior Court,* 37 Cal. 3d 813 (1985). PG&E is entitled to recover all attorneys' fees and expenses that it reasonably has

47620.003-3516967v3
03765-00001/8601985.2

-24-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

incurred, and is incurring, in its efforts to obtain the benefits due under the ACRT Agreement, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant and Cross-Complainant PG&E prays for judgment against TREES, ACRT and Does 1 through 10, as follows:

1.      On the First and Second Cross-Claims, if PG&E is adjudged to be liable under the law or settles or has settled with the plaintiffs in any of the underlying actions as a result of the alleged acts or omissions of TREES and/or ACRT, that PG&E be awarded complete or partial indemnification and/or a reduction, offset, and/or apportionment from TREES and/or ACRT;

2.      On the First, Second, Seventh and Eighth Cross-Claims, for amounts paid in settlement or judgments in the Butte Fire litigation;

3.      On the Fifth and Sixth Cross-Claims, that PG&E obtain a determination and declaration of this Court as to the proper construction of the TREES Agreement and the ACRT Agreement, and the rights, duties, and obligations of PG&E and TREES and ACRT, and the amount for which TREES and ACRT are obligated to indemnify PG&E if PG&E is compelled to pay or has already paid any sum as a result of any damages, judgment, settlement or other awards recovered by any of the plaintiffs in any of the underlying actions on any of their allegations for damages arising from the Butte Fire, as well as all costs, expenses, and attorney's fees incurred or paid by PG&E in its defense of the underlying actions relating to the Butte Fire and prosecution of these cross-claims;

4.      On the Seventh and Eighth Cross-Claims, for diminished value, and/or the cost of repair, and/or replacement of PG&E's equipment and facilities damaged and/or destroyed as a result of the Butte Fire;

5.      On the Ninth and Tenth Cross-Claims, for the amount equal to the insurance that would have been available to PG&E had ACRT and TREES fulfilled their contractual obligations, as well as other amounts to be proven at trial;

47620.003-3516967v3
03765-00001/8601985.2

-25-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

1    6.    On the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth

2  Cross-Claims, for attorneys' fees incurred by PG&E in connection with this litigation, to the

3  extent permitted by contract or law;

4    7.    On the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth,

5  Cross-Claims, for costs of suit incurred herein;  and

6    8.    For such other, further, and/or different relief as the Court may deem just and

7  proper.

8

9  DATED: January 10, 2017                QUINN EMANUEL URQUHART &
10                                        SULLIVAN, LLP

11

12  By    Kenneth R. Chiate

13        Kenneth R. Chiate

14        Attorneys for Defendant and Cross-Complainant
          PACIFIC GAS & ELECTRIC COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

47620.003-3516967v3
03765-00001/8601985.2

-26-

PG&E'S FIRST AMENDED CROSS-COMPLAINT AGAINST TREES, INC. AND ACRT, INC.

## DEMAND FOR JURY TRIAL

Cross-Complainant PG&E hereby demands a trial by jury in this action.


DATED:  January 10, 2017                QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By _____
                                           Kenneth R. Chiate

                                        Attorneys for Defendant and Cross-Complainant
                                        PACIFIC GAS & ELECTRIC COMPANY

47620.003-3516967v3
03765-00001/8601985.2

# EXHIBIT 1



Contract – Long Form

# Contract (Long Form)

This is a Contract between the below named Contractor ("Contractor"),  a Delaware corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.

| Contractor's Legal Name: | TREES, INCORPORATED | PG&E Contract No. 4400009030 |
|---|---|---|
| Contractor's Address: | 650 N. Sam Houston Parkway E Houston, TX 77080 | This Contract consists of 140 pages. |

| Project Name: | Distribution Tree Pruning and Tree and Brush Removal and Reliability Tree Pruning |
|---|---|
| Job Location: | The Vegetation Management Program Manager Areas identified below and other locations in the PG&E service area, as mutually agreed: |
| | Distribution Tree Pruning Work: Central Valley (Stockton and Fresno areas) |
| | Reliability Tree Pruning: Central Valley (Stockton and Fresno areas) |

WORK: Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Specification No. 5404 Scope of Work. This is not an exclusive Contract. This Contract does not guarantee Contractor any Work nor is there any guarantee as to any volume or duration of Work.

1) Contractor shall perform Distribution and Reliability Tree Pruning and Tree and Brush Removal in accordance with Specification No.5404, dated August 1, 2014. In consideration of the recitals, terms, covenants and conditions herein, the parties agree that Contract Number 4400009030 be established. The parties further agree that this Contract supersedes MSA 4400004205, effective 04/30/2010, which are hereby terminated by mutual agreement.

ATTACHMENTS: Each of the following documents is attached to this Contract and incorporated herein by this reference:

Attachment 1: Supplemental Terms and Conditions (5 pages)
Attachment 2: Specification 5404 (45 pages)
Attachment 3: Specification 5404 Exhibits (51 pages)
Attachment 4: General Conditions (31 pages)
Attachment 5: Pricing Sheet (6 pages)

| CONTRACT TERM: | This Contract is effective upon signature by both parties and expires on 12/31/2019. |
|---|---|
| COMPLETION: | Contractor shall commence performance hereof when directed to do so by PG&E. Work shall be completed by the completion date of 12/31/2019. Time is of the essence. |
| INSURANCE: | Contractor shall maintain insurance in accordance with Section 10 of the General Conditions. |
| TERMS OF PAYMENT: | In accordance with Section 7 of the General Conditions. |

CONSIDERATION: As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

TOTAL: The Sum of all Pricing specified on duly authorized Vegetation Management Work Requests.

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR TREES, INCORPORATED | |
|---|---|---|---|
| Signature | | Signature | |
| Name | Gun Shim | Name | Scott Huffmaster |
| Title | Vice President, Supply Chain | Title | Vice President |
| Date | 9.25.14 | Date | 09/19/2014 |

training is not included.  Contractor shall submit a manual invoice monthly to PG&E's Vegetation Management Department Planning Manager listing the following:

- Employee name
- Whether employee is a certified arborist; and if so, include certification number
- Type of training (first aid or CPR)
- Date of training
- Duration of training (in hours)
- Location of training
- Employee's hourly wage (including payroll taxes and any other associated costs but excluding profit)

2.5    STANDARDS FOR WORK:  Contractor shall diligently perform all Work in a proper, appropriate and professional manner, in accordance with All Applicable Requirements and  approved principles of modern Arboriculture.

2.5.1    The Contractor shall perform the Work so as to obtain the vegetation line clearances prescribed in the Vegetation Work Request Form and in compliance with All Applicable Requirements,  while taking into consideration the effect of pruning on the health and appearance of the tree and PG&E's legal rights and/or clearance requirements.

2.5.2    Contractor shall perform all Work in accordance with All Applicable Requirements, including but not limited to ANSI A300 Pruning Standards and "Best Management Practices - Utility Pruning of Trees – Special Companion Publication to the ANSI A300 Part 1: Tree, Shrub, and Other Woody Plant Maintenance – Standard Practices, Pruning."  Contractor shall be responsible for obtaining and maintaining one copy of each of these publications with each crew and ensure each crew member knows, understands and practices these pruning standards.

2.5.3    A "Unit" shall be Work performed in any one of the tree and brush categories listed below.  For all Units of Work, any cut tree parts less than 4 inches diameter shall be chipped and removed from the site unless otherwise directed by PG&E.  Contractor shall incur a processing charge of $100 for each Work location which incorrectly reports the number of Units satisfactorily completed.

2.5.3.1    Tree Pruned:  For tree pruning purposes, a tree qualifying for "Tree Pruned" status is defined as a plant with at least one stem that is four (4) inches or larger DBH and where final cuts are made above four and one-half (4.5) feet above the ground.  Multiple stems originating from the same common root crown are considered as one (1) tree.  If there is no visible connecting wood, the following process is used to determine Unit count: Place a 6-inch measuring device between two stems of same species at ground level.  If the measuring device touches bark to bark or does not fit between

Case 3:16-cv-07365-JD  Document 33-1  Filed 03/08/17  Page 33 of 42

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 11 of 31

changes shall, at PG&E's option, be based on unit prices, fixed prices, or time and material prices quoted by Contractor in its Proposal.

9. INDEMNIFICATION, WITHHOLDING, LIMITATION OF LIABILITY, CLAIMS

### 9.1 INDEMNIFICATION

9.1.1 To the maximum extent permitted by applicable law, Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any:  (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor;(ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; so long as such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation as is caused by (a) the sole negligence or willful misconduct of PG&E, its affiliates, officers, managers, directors, agents or employees; or (b) by such injury to property (as set forth in (ii) above) resulting from the pre-inspecting party's failure to give adequate notice or obtain prior written permission of the property owner as required by this Contract, where pre-inspection was performed by a third party and Contractor was not responsible under the Contract to notify property owner or obtain a property owner's prior written permission; or (c) by PG&E's written directions to Contractor not to perform Work modifications proposed in writing by Contractor in accordance with the Specific Conditions, provided that Contractor was performing Work that had been pre-inspected by a third party, had timely and properly notified PG&E that the Work prescribed on the PG&E work request form should be modified; had timely and properly documented the recommended modification on the PG&E work request form; and had timely and properly submitted the PG&E work request form, noting recommended modifications in writing, to the PG&E Representative.

9.1.2 Contractor acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arises from or are in any way connected with the release or spill of any legally designated Hazardous Material or Waste and arises from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

9.1.3 Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity.  Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

9.1.4 To the extent necessary, each party was represented by counsel in the negotiation and execution of this Contract.

### 9.2 CLAIMS PROCEDURE

9.2.1 REPORTS: Contractor shall report to PG&E's Representative each case of injury to or death of person or injury to property immediately after knowledge of the occurrence. This condition shall be included in all Subcontracts.

9.2.2 CONTRACTOR'S RESPONSIBILITY: Contractor shall make every effort to promptly acknowledge and satisfactorily settle, within a reasonable time after it arises or occurs, any loss, damage, expense, or liability for which Contractor is responsible under this Contract.

9.2.3 Contractor shall promptly resolve, at Contractor's expense, all claims for private property

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 13 of 31

10.2    COMMERCIAL GENERAL LIABILITY

10.2.1    Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, including coverage for fire suppression, with no coverage deletions.  Work that involves chemical spraying shall include coverage for pesticide and herbicide application.

10.2.2    The limit shall not be less than $10,000,000 per occurrence for bodily injury, property damage and personal injury and products/completed operations.  Defense costs shall be provided as an additional benefit and not included within the limits of liability.  Coverage limits may be satisfied using an umbrella or excess liability policy.

10.2.3    Coverage shall: (i) By "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of Work performed by or for the Contractor, including completed operations; (ISO Form CG 2010 11/85 or equivalent).  If the CGL policy includes "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement:  "PG&E, its affiliates, subsidiaries, parent company, directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement"; (ii) Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; and (iii) include a severability of interest clause. The additional insureds shall fully cooperate with the Contractor on any Claim.

10.3    PROFESSIONAL LIABILITY INSURANCE

10.3.1    Errors and Omissions Liability insurance appropriate to the Contractor's profession.  Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract, including coverage for consequential financial loss and fire suppression, with no coverage deletions.

10.3.2    The limit shall not be less than $10,000,000 per occurrence.

10.3.3    Coverage shall be endorsed to specify that the Contractor's insurance is primary and that any Insurance or self-insurance maintained by PG&E shall not contribute with it.

10.4    BUSINESS AUTO

10.4.1    Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

10.4.2    The limit shall not be less than $5,000,000 each accident for bodily injury and property damage. Coverage limits may be satisfied using an umbrella or excess liability policy.

10.5    ADDITIONAL INSURANCE REQUIREMENTS

10.5.1    Before commencing performance of Work, Contractor shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Contractor.

10.5.2    Should any of the above described policies be cancelled before the expiration date thereof, the insurer shall deliver notification to PG&E in accordance with the policy provisions.

10.5.3    Certificates of insurance and endorsements shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf and must be submitted by e-mail or fax only:

Certificate Holder:  Pacific Gas and Electric Company
c/o EXIGIS LLC
E-mail: support@exigis.com
Fax: 646-755-3327

Case 3:16-cv-07365-JD   Document 33-1   Filed 03/08/17   Page 35 of 42

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 14 of 31

A copy of all such insurance documents shall be sent to PG&E's Contract negotiator and/or Contract administrator at Contract execution and whenever the terms of the insurance policy are updated or renewed.

10.5.4   PG&E may inspect the original policies or require complete certified copies, at any time.

10.5.5   Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

10.5.6   Contractor shall not allow any required insurance coverage to lapse during the term of this Contract.  Contractor shall obtain and have in place replacement coverage in accordance with the requirements of this Contact and shall furnish PG&E with certificates of insurance and additional insured endorsements of all required insurance before termination or expiration of prior coverage.

10.5.7   All policies or binders with respect to insurance maintained by Contractor shall waive any right of subrogation of the insurers hereunder against PG&E, its parent company, affiliates and officers, directors, employees, agents and representatives of each of them.

10.6   RESPONSIBILITY FOR NON-COMPLIANCE WITH INSURANCE REQUIREMENTS

10.6.1   NONE OF THE FOREGOING INSURANCE REQUIREMENTS CAN BE WAIVED WITHOUT THE EXPRESS WRITTEN CONSENT OF AN OFFICER OF PG&E OR THE PG&E REPRESENTATIVE AUTHORIZED TO SIGN THIS CONTRACT.

10.6.2   Notwithstanding any other provisions of this Contract and separate and apart from Contractor's obligation to indemnify PG&E pursuant to Article 9 and the insurance requirements in Article 10 hereof, if Contractor's insurance carrier fails or refuses to defend or indemnify PG&E pursuant to an additional insured endorsement because of a failure to obtain an additional insured endorsement, policy deductible, self-insured retention, or other unauthorized coverage deletion, Contractor shall stand in the place of its insurer and defend and indemnify PG&E and its officers, directors, agents, and employees to the same extent that an insurer issuing ISO form occurrence coverage without coverage deletions would under California law.  If Contractor unreasonably fails or refuses to so defend and indemnify, Contractor shall be liable to PG&E for all resulting damages, including but not limited to attorney's fees and imposition of punitive damages.

11. FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT

11.1   FORCE MAJEURE:  Neither PG&E nor Contractor shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of the affected party.  In the event either party claims that performance of its obligations was prevented or delayed by any such cause, that party shall promptly notify the other party of that fact, and of the circumstances preventing or delaying performance.  Such party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

11.2   CANCELLATION FOR CAUSE:

11.2.1   PG&E may, at its option, cancel or suspend this Contract or any one or more CWAs for cause including, but not limited to, the following situations: (i) the failure, refusal or inability of the Contractor to perform the Work in accordance with this Contract for any reason (except as specified in the section titled "Force Majeure"); or (ii) Contractor has become insolvent, has failed to pay its bills, or has had checks for payment of its bills returned from suppliers and Subcontractors due to insufficient funds; or (iii) a legal action is placed against Contractor which, in PG&E's opinion, may interfere with the performance of the Work; or (iv) in PG&E's opinion, the Work will not be completed in the specified time and PG&E has requested Contractor to take steps necessary to accomplish the required progress and completion, and Contractor has failed to do so.  In addition PG&E may at its option and without prejudice to its

# EXHIBIT 2



Contract – Long Form

# Contract (Long Form)

This is a Contract between the below named Contractor ("Contractor"), an Ohio corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.

| Contractor's Legal Name: | ACRT, INC. | PG&E Contract No. 4400007121 |
|---|---|---|
| Contractor's Address: | 13333 Home Avenue<br>Akron, OH 44310 | This Contract consists of 265 pages. |
| Project Name: | Pre-Inspection Services -- Distribution, Reliability, and Transmission and System Orchard | |
| Job Location: | The Vegetation Management Program Manager Areas identified below and other locations in the PG&E service area, as mutually agreed:<br><br>Distribution and Reliability Work:  Mission, East Bay, Stockton, Diablo, Sacramento, Yosemite, Sierra, and Fresno<br><br>Transmission and System Orchard Work: Mission, East Bay, Stockton, Diablo, Sacramento, Yosemite, Sierra, and Fresno<br><br>Orchard - System wide | |

**WORK:** Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Specification No. 4851 Scope of Work.  This is not an exclusive Contract.  This Contract does not guarantee Contractor any Work nor is there any guarantee as to any volume or duration of Work.

1. Contractor shall perform pre-inspection Work for Distribution Tree Trimming and Tree and Brush Removal in accordance with Specification No.4851, dated November 15, 2013.  In consideration of the recitals, terms, covenants and conditions herein, the parties agree that Contract Number 4400007121 be established.  The parties further agree that this Contract supersedes MSA 44000004201, effective 04/14/2010, and MSA 4600017544, effective 01/18/2007, both of which are hereby terminated by mutual agreement.

2. Contract termination date shall be December 31, 2019; provided, however, that PG&E may extend the Contract for up to two additional one-year periods by written notice to Contractor.

(Continue on page three)

**ATTACHMENTS:** Each of the following documents is attached to this Contract and incorporated herein by this reference:
Attachment 1:  Supplemental Terms and Conditions, (6 pages)
Attachment 2:  Specification 4851, (36 pages)
Attachment 3:  Specification 4851, Exhibits, (177 pages)
Attachment 4:  General Conditions, (29 pages)
Attachment 5:  Pricing Sheet, (6 pages)
Attachment 6:  Performance Security, (2 pages)
Attachment 7:  Exhibit A of Performance Security -- Letter of Credit Copy, (6 pages)

| | |
|---|---|
| **CONTRACT TERM:** | This Contract is effective upon signature by both parties and expires on 12/31/2019. |
| **COMPLETION:** | Contractor shall commence performance hereof when directed to do so by PG&E. Work shall be completed by the completion date of 12/31/2019. Time is of the essence. |
| **INSURANCE:** | Contractor shall maintain insurance in accordance with Section 7.0 of the General Conditions. |
| **TERMS OF PAYMENT:** | In accordance with Section 3.0 of the General Conditions. |

**CONSIDERATION:** As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount.  This amount is inclusive of all taxes incurred in the performance of the Work.  Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

**TOTAL:** The Sum of all Pricing specified on duly authorized Vegetation Management Work Requests

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: ACRT, INC. | |
|---|---|---|---|
| Signature | | Signature | |
| Name | Gun Shim | Name | Todd Jones |
| Title | Vice President, Supply Chain | Title | Chief Operating Officer |
| Date | 9.25.14 | Date | 9-22-14 |

Case 3:16-cv-07365-JD   Document 33-1   Filed 03/08/17   Page 38 of 42

Contract 4400007121
Attachment 2:  Specification No. 4851
Pre-Inspection and Post Audit Work
Part 1 – Pre-Inspection Work
ACRT, Inc.
Page **9** of **36**

2.2.1    Contractor shall perform all T&M Work not associated with Lump Sum Work as defined in Section 2.1 in accordance with VM standards and VM processes.  T&M Work to be performed shall include, but not be limited to, the following: training of contractor employees associated with implementation of new VM standards or VM processes; investigations of tree-related outages resulting from a storm event; emergency Work associated with a storm event; outage reduction or removal projects not associated with routine maintenance; incident investigations associated with LE-38's, CDF citations, CPUC notification of violations and fires; attendance at customer/property owner/agency meetings where the purpose of the meeting is to describe the VM program and VM practices; attendance at public events such as Arbor Day, Fire Safe Expos and fairs; patrol and notification for tree work associated with PG&E new business and re-construction; stand-by at Grade 1 locations.; training of PG&E tree contractors to facilitate their understanding of PG&E paperwork processes and post auditing of tree contractor work as requested by PG&E.

2.2.2    All work associated with open, pending and audit findings of open work requests, including reprints, field checking, checking VM office archives for a copy is considered to be tree contractor work.  Requests by the PG&E Representative to perform these tasks shall be considered T&M Work.

2.3     STANDARDS FOR WORK:  Contractor shall diligently perform all Work in a proper and professional manner in accordance with the requirements of all applicable federal, state, and/or local laws, rules, ordinances, and regulations, in accordance with approved principles of modern Arboriculture, and to the satisfaction of PG&E.

2.3.1    Whenever possible, pruning techniques described in the Best Management Practices – Utility Pruning of Trees – Special Companion Publication to the ANSI A300 Part 1 shall be prescribed to direct growth away from electric facilities.  Contractor shall be responsible for obtaining one copy of this publication for each SCUF, PA, and CUF.

2.3.2    Units of Work:  During Pre-Inspection it shall be the Contractor's responsibility to patrol PG&E distribution lines and existing overbuilt transmission and underbuilt communication lines to identify tree Work to be performed by a PG&E tree contractor and prescribe that work using a Work Request.  Contractor shall use the following six categories to identify and prescribe a "Unit" of work to be performed.

2.3.2.1    Tree Pruned:  For tree pruning purposes, a tree qualifying for "Tree Pruned" status shall be defined as being a plant with at least one stem that is four (4) inches or larger DBH and where final cuts are made above four and one-half (4.5) feet from the ground.  Multiple stems originating from the same common

Case 3:16-cv-07365-JD   Document 33-1   Filed 03/08/17   Page 39 of 42

Tree Trimming Pre-Inspection and Post-Audit
Energized Electric Line within 10 Feet
11/15/2013 KBW4
Contract 4400007121
Attachment 4:  General Conditions
ACRT, Inc.
Page **12** of 29

personal or confidential information from unauthorized access, destruction, use, modification, or disclosure.

6.0    INDEMNIFICATION, WITHHOLDING AND LIMITATION OF LIABILITY

6.1    INDEMNIFICATION

6.1.1    Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any:  (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; (iv) strict liability imposed by any law or regulation; or (v) a breach of its confidentiality obligations under Article 5.0; so long as such injury, violation, or strict liability (as set forth in (i) - (v) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation that is caused by the sole negligence or willful misconduct of PG&E, its officers, managers, or employees.

6.1.2    Contractor acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arise from or are in any way connected with the release or spill of any legally designated hazardous material or waste and arise from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity.  Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

6.1.3    Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity, using counsel acceptable to PG&E.  Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.  To the extent necessary, each Party was represented by counsel in the negotiation and execution of this Contract.

6.2.    CLAIMS PROCEDURE

6.2.1    REPORTS: Contractor shall report to PG&E each case of injury to or death of person or damage to property as soon as possible after knowledge of the occurrence. This condition shall be included in all Subcontracts.

6.2.2    CONTRACTOR'S RESPONSIBILITY: Contractor shall make every effort to satisfactorily settle, within a reasonable time after it arises or occurs, any loss, damage, expense, or liability for which Contractor is responsible under this Contract.

6.2.3    Contractor shall promptly resolve all claims for private property damage or loss caused by Contractor, with all payments to be issued by the Contractor.

6.3.    WITHHOLDING

6.3.1    PG&E may withhold from payment due Contractor hereunder such amounts as,

Contractor performs Work.

7.1.2    Employers' Liability insurance shall not be less than $1,000,000 (One Million Dollars) for injury or death each accident.

7.2    COMMERCIAL GENERAL LIABILITY

7.2.1    Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, with no coverage deletions.

7.2.2    The limit shall not be less than $10,000,000 (Ten Million Dollars) each occurrence for bodily injury, property damage and personal injury. Coverage limits may be satisfied using an umbrella or excess liability policy.

7.2.3    Coverage shall: a) By "Additional Insured" endorsement add as insureds PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of or connected with the Work performed by or for the Contractor.  (ISO Form CG2010 or equivalent is preferred).  If the Commercial General Liability policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement:  "PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement."; b) Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

7.3    BUSINESS AUTO

7.3.1    Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

7.3.2    The limit shall not be less than $5,000,000 (Five Million Dollars) each accident for bodily injury and property damage. Coverage limits may be satisfied using an umbrella or excess liability policy

7.4    PROFESSIONAL LIABILITY INSURANCE

7.4.1    Errors and Omissions Liability insurance appropriate to the Contractor's profession.  Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract consequential financial loss and fire suppression, with no coverage deletions.

7.4.2    The limit shall not be less than $10,000,000 (Ten Million Dollars) each claim.

7.5    ADDITIONAL INSURANCE REQUIREMENTS

7.5.1    Before commencing performance of Work, Contractor shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Contractor.

7.5.2    Should any of the above described policies be cancelled before the expiration date thereof, the insurer shall deliver notification to PG&E in accordance with the policy provisions.

7.5.3    PG&E uses a third party vendor, Exigis, to confirm and collect insurance documents.  Certificates of insurance and endorsements shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf and must be submitted by e-mail or fax only to the following address:

Certificate Holder:  Pacific Gas and Electric Company
c/o EXIGIS LLC
E-mail:  support@exigis.com
Fax:  646-755-3327

A copy of all such insurance documents shall be sent to PG&E's Contract negotiator and/or Contract administrator at Contract execution and whenever the terms of the insurance policy are updated or renewed.

7.5.4   PG&E may inspect the original policies or require complete certified copies at any time.

7.5.5   Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

7.5.6   Contractor shall not allow any required insurance coverage to lapse.  Contractor shall obtain and have in place replacement coverage in accordance with the terms specified  in this Article 7, Insurance Requirements, and shall furnish PG&E with certificates of insurance and additional insured endorsements of all required insurance before termination or expiration of prior coverage.

7.5.7   All policies or binders with respect to insurance maintained by Contractor shall waive any right of subrogation of the insurers hereunder against PG&E, its parent company, affiliates and officers, directors, employees, agents and representatives of each of them.

7.6   RESPONSIBILITY FOR NON-COMPLIANCE WITH INSURANCE REQUIREMENTS

7.6.1   None of the foregoing insurance requirements can be waived without the express written consent of an officer of PG&E or PG&E representative authorized to sign this Contract.

7.6.2   Notwithstanding any other provisions of this Contract and separate and apart from Contractor's obligation to indemnify PG&E and the insurance requirements herein, if Contractor's insurance carrier fails or refuses to defend or indemnify PG&E pursuant to an additional insured endorsement because of a failure to obtain an additional insured endorsement, policy deductible, self-insured retention, or other unauthorized coverage deletion, Contractor shall stand in the place of its insurer and shall defend and indemnify PG&E and its officers, directors, agents, and employees to the same extent that an insurer issuing ISO form occurrence coverage without coverage deletions would under California law.  If Contractor unreasonably fails or refuses to do so, Contractor shall be liable to PG&E for all damages caused thereby, including reasonable attorney's fees and imposition of punitive damages.

8.0   FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT

8.1   FORCE MAJEURE:  Neither PG&E nor Contractor shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control, and without the fault or negligence, of the affected Party.  If either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party shall promptly notify the other Party in writing and describe the circumstances preventing or delaying performance.  The Party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

8.2   CANCELLATION FOR CAUSE

*Butte Wildfire Litigation*

**ELECTRONIC PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within action.  I am employed by Gough & Hancock, LLP, Two Embarcadero Center, Suite 640, San Francisco, CA 94111.

On January 10, 2017, I caused to be served the within document(s) described as: **DEFENDANT AND CROSS-COMPLAINANT PACIFIC GAS AND ELECTRIC COMPANY'S FIRST AMENDED CROSS-COMPLAINT AGAINST CROSS-DEFENDANTS TREES, INC., ACRT INC., AND DOES 1-10** on the interested parties in this action pursuant to the most recent Omnibus Service List by submitting an electronic version of the document(s) via file transfer protocol (FTP) to CaseHomePage through the upload feature at www.casehomepage.com.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 10, 2017 at San Francisco, California.



_____
Jennifer McNeil

PROOF OF SERVICE