# EXHIBIT C

1  RANDY W. GIMPLE (SBN 129705)
   A. DAVID BONA (SBN 209605)
2  AARON P. SHAPIRO (SBN 263399)
   CARLSON, CALLADINE & PETERSON LLP
3  353 Sacramento Street, 16th Floor
   San Francisco, CA  94111
4  Telephone:     (415) 391-3911
   Facsimile:     (415) 391-3898
5  Email:         rgimple@ccplaw.com
                  dbona@ccplaw.com
6                 ashapiro@ccplaw.com

7  Attorneys for Defendant/Cross-Defendant/
   Cross-Complainant TREES, INC.

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF SACRAMENTO

11

| 12  Coordination Proceeding Special Title (Rule 3.550), | Case No.:        JCCP No. 4853 And Included Actions (see next page) |
|---|---|
| 14        BUTTE FIRE CASES | Assigned to:     Hon. Allen H. Sumner                  Dept. 42 |
| | **TREES, INC.'S CROSS-COMPLAINT FOR DECLARATORY RELIEF AND IMPLIED EQUITABLE INDEMNITY** |
| | **DEMAND FOR JURY TRIAL** |
| | Discovery Cut-Off:    None Set Motion Cut-Off:       None Set Trial Date:           None Set |

28

                                    1

**Actions Included in the JCCP 4853 Coordinated Proceeding:**

*Adair, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41876

*Adams, Jon, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41717

*Adams, Sylvia, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-549629

*Alander, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41216

*Alberg, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41878

*Allstate Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41279

*American Modern Home Ins., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41429

*Amerman, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 16-553719

*Ancar, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 16-551597

*Andrews v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41209

*Armstrong, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41879

*Bankers Standard Ins., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41278

*Barragan, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41255

*Biggs-Adams, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548386

*Bolton v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41635

*Brundage, et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41224

*Burriss, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548899

*California Casualty Indemnity Exchange v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court

2

16CV41676

*Christopher et al. v. PG&E, PG&E Corp.; Trees, Inc.; ACRT*; Amador Superior Court 16-CV-9797

*Cooper, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41663

*CSAA Ins. Exchange, et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41267

*Finch, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Sacramento Superior Court 34-2016-00196865

*Fire Ins. Exchange; Farmers; et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41276

*Hartford Casualty Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41274

*Kern v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41290

*Liberty Ins., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41289

*Lloyds Policy No. LMHO01163 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41632

*Lloyds Policy No. LMHO01044 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41630

*Lloyds Policy No. LSI101819-01 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41629

*Lloyds Policy No. LSI102892 v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41631

*Mainville, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 16-552778

*Mathes, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548619

*Moeller, et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41162

*Monteith, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-549036

3

1  *Moresco, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court
2       16CV41474
3  *National General Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court
4       16CV41601
5  *Nationwide Mutual Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court
6       15CV41277
7  *Norfolk, et al. v. PG&E; Trees, Inc.; ACRT*; San Francisco Superior Court 16-551700
8  *Pargett, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41335
9  *Rush, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41261
10 *Sacks, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-
11      549334
12 *Slifkoff, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 15CV41194
13 *Smith, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-
14      548611
15 *State Farm General Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court
16      15CV41266
17 *Thomas, et al. v. PG&E Corp; PG&E, Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41774
18 *Thompson, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-
19      549623
20 *Travelers Commercial Ins. Co., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court
21      16CV41581
22 *Tyler v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; San Francisco Superior Court 15-548319
23 *United Services Auto. Assoc., et al. v. PG&E; Trees, Inc.; ACRT*; Calaveras Superior Court
24      15CV41275
25 *White, et al. v. PG&E; PG&E Corp.; Trees, Inc., ACRT*; Calaveras Superior Court 16CV41622
26 *Wilcox, et al. v. PG&E; PG&E Corp.; Trees, Inc.; ACRT*; Calaveras Superior Court 16CV41955
27
28

**TREES, INC.'S CROSS-COMPLAINT FOR DECLARATORY RELIEF AND IMPLIED EQUITABLE INDEMNITY**

Defendant/cross-defendant/cross-complainant TREES, INC. ("Trees") hereby alleges as follows:

### THE PARTIES

1.     At all times material hereto, defendant/cross-defendant/cross-complainant, Trees, was a Delaware corporation authorized to do business in the State of California. Trees is not a California public utility and is not regulated by the California Public Utilities Commission.

2.     At all times material hereto, plaintiff/cross-complainant/cross-defendant PACIFIC GAS & ELECTRIC COMPANY ("PG&E") was a California corporation with its corporate headquarters and principal place of business in San Francisco, California.

3.     At all times material hereto, defendant/cross-defendant ACRT, Inc. ("ACRT") was an Ohio corporation authorized to do business in the State of California and doing business throughout California.

4.     The true names and capacities of the cross-defendants, sued herein as Roes 1 through 50, are unknown and, therefore, Trees sues these cross-defendants by fictitious names. Trees is informed and believes, and thereon alleges, that at all times material hereto each cross-defendant designated "Roe" is responsible under the law in some manner, negligently, contractually or otherwise, for the events and happenings referred to in this cross-complaint, and thereby proximately caused the damages as alleged. Trees will amend this cross-complaint to allege the true names and capacities of these fictitiously named cross-defendants when their identities have been ascertained.

### JURISDICTION AND VENUE

5.     Numerous plaintiffs have filed actions in Calaveras, San Francisco, and Sacramento Counties alleging defendants PG&E, ACRT and Trees are liable for damages arising out of the Butte Fire. All such actions have been coordinated by the Judicial Counsel of California and transferred to this Court under case number JCCP 4853. These cross-claims relate to the subject matter of those actions and are being filed in each of the included actions.

6.     Thus, jurisdiction and venue over these cross-claims is proper under Cal. Code of Civ. Proc. § 410.10, Cal. Code of Civ. Proc. § 404 *et seq*., California Rules of Court 3.501 *et seq*.,

5

1  and Cal. Code Civ. Proc. § 428.10 *et seq.*

2  **FACTUAL ALLEGATIONS**

3  <u>The Butte Fire and Third-Party Claims Resulting Therefrom</u>

4      7.    The Butte Fire is believed to have started outside of Jackson, California on

5  September 9, 2015. The fire resulted in two fatalities and damage to over 1,000 structures.

6      8.    Claims have now been made against PG&E, Trees and ACRT by several hundred

7  homeowners and others alleging damages from the fire, many of which are included in this

8  proceeding. The claims asserted in this proceeding are the same claims which are the subject of

9  the Complaint filed by PG&E in this action.

10      9.    Plaintiffs allege that the fire was caused by contact between a gray pine and an

11  electrical power line owned, operated and maintained by PG&E. Trees is informed and believes

12  and thereon alleges that, at the time of the fire, the gray pine ("the subject tree") was not dead,

13  defective, or decayed and did not break or uproot; rather, the subject tree allegedly separated from

14  the trees surrounding it, bent over and contacted PG&E's lines while the tree remained firmly

15  rooted in soil.

16      10.    Plaintiffs generally allege that PG&E, Trees and ACRT wrongfully failed to

17  identify and remediate the hazard posed by the subject tree. Plaintiffs allege causes of action

18  against PG&E, Trees and ACRT for negligence, private nuisance, public nuisance, trespass and a

19  violation of Health & Safety Code § 13007 which generally prohibits the negligent starting of a

20  fire.

21      11.    In addition to the causes of action alleged against all three defendants, plaintiffs

22  assert the following theories of recovery specially and only against PG&E: A failure to comply

23  with rules and regulations promulgated under Public Utilities Code § 702; public utility liability

24  under Public Utilities Code § 2106; failure to provide adequate means to maintain the safety of

25  the public under Public Utilities Code § 451; failure to comply with Public Utility Commission

26  General Order 95, General Order 165 and Rule 33.1; and failure to maintain vegetation in

27  compliance with Public Resources Code §§ 4293, 4294 and 4453, as well as Health & Safety

28  Code § 13001. Plaintiffs further allege, also specially and only against PG&E, a cause of action

6

1    for inverse condemnation which requires no showing of fault and is not available against any

2    other defendant.

3              PG&E's Utility Vegetation Management Program ("VMP")

4              12.    Trees is informed and believes and thereon alleges that PG&E has designed and

5    developed a vegetation management program intended to provide for the inspection of areas

6    around its power lines for the purpose of identifying and remedying conditions which may result

7    in fire caused by contact between trees and power lines (hereafter, "VMP"). Trees is informed and

8    believes and thereon alleges that PG&E's VMP is designed, developed, modified, implemented,

9    maintained, funded and managed by persons within PG&E, including qualified and experienced

10   foresters who are dedicated to utility vegetation management activities. Trees is not responsible

11   for the development of PG&E's VMP.

12             13.    As part of its VMP, PG&E developed detailed standards for patrolling areas

13   around PG&E power lines for the purpose of identifying trees and other vegetation which may

14   contact PG&E power lines and cause fires. These patrols are called "pre-inspections."

15             14.    Trees is informed and believes and thereon alleges that PG&E mandates the

16   standards for all aspects of pre-inspections, including the qualifications required of persons

17   conducting pre-inspections, the method for conducting pre-inspections, the frequency of pre-

18   inspections, the sequencing of pre-inspections, the conditions which pre-inspectors are required to

19   identify, the process for recording results of pre-inspections, the nature of the remedial work to be

20   recommended by pre-inspectors, the method for relaying the pre-inspectors' recommendations,

21   and the auditing of the quality of pre-inspections and of the level of performance of the pre-

22   inspectors. Trees was not contracted to perform pre-inspections for PG&E at the times or

23   locations material to this action.

24             15.    Trees is informed and believes and thereon alleges that PG&E's VMP also

25   includes special requirements for conducting enhanced inspections in specific areas which present

26   a high risk of fire caused by tree-to-power-line conduct. Trees is further informed and believes

27   that these enhanced inspections are, among other things, specifically intended to provide

28   increased assurance that changing forest conditions will not result in vegetation and power line

1   conflicts. These enhanced inspections are funded under a program known as the Catastrophic

2   Event Memorandum Account (hereafter, "CEMA inspections").

3          16.     Trees is informed and believes and thereon alleges that the CEMA inspections

4   include aerial patrols conducted by helicopter for the specific purpose of identifying potentially

5   hazardous conditions around power lines using aerial orthoimagery, high-resolution color, near-

6   infrared and/or short-wave infrared photographs. CEMA inspections also include aerial, laser-

7   based surveying, and foot patrols conducted by persons who possess the same qualifications as

8   those conducting pre-inspections. Trees was not contracted to perform CEMA inspections for

9   PG&E at the times or locations material to this action.

10         17.     PG&E's VMP also includes requirements for trimming or removal of trees or other

11   vegetation which has been identified by pre-inspectors or CEMA inspectors as being in need of

12   remediation. Trees was contracted to perform these tree-trimming and removal services for PG&E

13   at all times and locations material hereto, as described more particularly hereafter.

14         The Inspection Contract Between ACRT and PG&E

15         18.     Trees is informed and believes and thereon alleges that PG&E and ACRT entered

16   into a contract on September 25, 2014 which called for ACRT to provide PG&E with personnel

17   who are sufficiently qualified, trained and experienced to perform the task of "identifying

18   required tree work along the existing PG&E rights-of-way [and] prescribing work to be

19   performed." This work included the above-described pre-inspections and CEMA inspections.

20         19.     Trees is further informed and believes and thereon alleges that ACRT's contract

21   with PG&E required ACRT to provide Senior Utility Consulting Foresters ("SCUFs") who have

22   degrees or experience in forestry and who will become certified arborists within one year of

23   becoming a SCUF, as well as Consulting Utility Foresters ("CUFs") who are either degreed

24   foresters or possess a minimum of two years' experience. ACRT's contract with PG&E further

25   required ACRT to provide a Contract Vegetation Management Program Manager, Vegetation

26   Management Quality Assurance Auditor, and Database Management Specialist.

27         20.     Trees is further informed and believes and thereon alleges that, under the VMP it

28   designed and managed, PG&E required that ACRT's pre-inspections and/or CEMA inspections

8

specifically include the obligation to rate hazards presented by trees based on species, age, extent of defects, vertical and longitudinal proportion of defective areas of trees, anticipated wind exposure, soil support, local temperatures, and other tree-specific features. At all times and locations material hereto, the obligation to rate tree hazards was not required of Trees under PG&E's VMP.

21.     Trees is further informed and believes and thereon alleges that PG&E required that ACRT's pre-inspections and/or CEMA inspections pay particular attention to gray pines, including the obligation to look for gray pines which had separated from the neighboring stand of trees.

The Tree-Trimming Contract Between PG&E and Trees

22.     PG&E and Trees entered into a contract on September 25, 2014 (Distribution Tree Pruning and Tree Brush Removal and Reliability Tree Pruning, contract number 4400009030, hereinafter the "Tree Trimming Contract") wherein Trees agreed to perform tree trimming and removal work along PG&E's distribution lines. Relevant excerpts from the Tree Trimming Contract are attached as Exhibit 1.

23.     The contract between PG&E and Trees required Trees to trim or remove trees as identified by other contractors performing inspections, including ACRT.

24.     The contract between PG&E and Trees did not require Trees to perform pre-inspections or CEMA inspections.

25.     The contract between PG&E and Trees did not require Trees to conduct hazard ratings of trees.

26.     The contract between PG&E and Trees did not require Trees to trim or remove trees which had not been identified by others, except in the case of trees which pose an obvious or imminent hazard.

Relevant VMP Work Preceding the Fire

27.     Trees is informed and believes and thereon alleges that, on October 17, 2014, an ACRT pre-inspector inspected the area around the subject tree as part of the scheduled yearly

9

1    inspection for that area and pursuant to the standards developed and required by PG&E.

2         28.    Trees is informed and believes and thereon alleges that the ACRT pre-inspector

3    identified two large gray pines for removal in the area where the Butte Fire would later occur. The

4    subject tree was a smaller tree which was situated some distance behind the two trees identified

5    for removal by the ACRT pre-inspector. The ACRT pre-inspector did not identify the subject tree

6    as a potential hazard and did not list it for removal or trimming.

7         29.    On January 6, 2015, consistent with the schedule and requirements of PG&E, a

8    Trees' crew removed the two trees identified by the pre-inspection contractor. Trees performed no

9    other relevant tree-trimming or tree-removal work in that area before the fire.

10        30.    Trees is informed and believes and thereon alleges that the area where the subject

11   tree was located was identified by PG&E as a high-risk area subject to enhanced CEMA

12   inspections. Trees is further informed and believes and thereon alleges that, between June 24 and

13   25, 2015, PG&E conducted aerial orthoimagery of that area by helicopter. Trees did not

14   participate in that process and was not informed of its results at any time prior to the Butte Fire.

15        31.    Trees is informed and believes and thereon alleges that, between July 19 and 20,

16   2015, PG&E conducted a high resolution, laser-based survey of the area where the subject tree

17   was located. Trees did not participate in that process and was not informed of its results at any

18   time prior to the Butte Fire.

19        32.    Trees is informed and believes and thereon alleges that, also in July of 2015,

20   ACRT inspectors conducted foot patrols in the area where the subject tree was located and did so

21   pursuant to guidelines created by PG&E, including the aforesaid requirements to assure that

22   changing forest conditions will not result in vegetation and power line conflicts and to be

23   particularly vigilant of gray pines which may have separated from the trees surrounding them.

24   Trees did not participate in that process and was not informed of its results at any time prior to the

25   Butte Fire.

26        33.    Trees is further informed and believes and thereon alleges that the Butte Fire

27   started two months after the CEMA inspections conducted by ACRT, two months after the aerial

28   laser survey conducted by PG&E, three months after the aerial photography performed by PG&E

                                                    10

1 | and nine months after Trees had removed the only two trees identified for removal by ACRT.

2 |     PG&E's Indemnity Claims Against Trees

3 |     34.    The tree trimming contract between PG&E and Trees contains the following

4 | indemnity provision:

> To the maximum extent permitted by applicable law, Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; (ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; so long as such injury, violation, or strict liability (as set forth in (i) – (iv) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation as is caused by (a) the sole negligence or willful misconduct of PG&E, its affiliates, officers, managers, directors, agents or employees . . . .

16 |     35.    Trees is informed and believes and thereon alleges that PG&E has resolved certain

17 | claims of the plaintiffs and intends to resolve additional claims.

18 |     36.    PG&E has demanded that Trees defend and indemnify PG&E with respect to all

19 | resolved claims, all pending claims and any and all future claims arising out of the Butte Fire.

20 |     37.    Given the aforesaid demands made against Trees by PG&E, an actual controversy

21 | has arisen and now exists between Trees and PG&E concerning their respective rights under the

22 | applicable provisions of the contract between PG&E and Trees. A judicial declaration is therefore

23 | necessary and appropriate at this time so that the parties may ascertain their rights in this

24 | controversy.

### FIRST CAUSE OF ACTION
### Declaratory Relief Against PG&E
### Fire Did Not Arise Out of Trees' Work

27 |     38.    Trees re-alleges and incorporates by reference each and every allegation contained

28 | in paragraphs 1 through 37 above.

11

39.     The indemnity provision in the contract between PG&E and Trees limits Trees' indemnity obligation to only those claims which arise out of Trees' performance, or failure to perform, its contract with PG&E.

40.     Trees was hired by PG&E to perform tree trimming and removal services as part of a multi-faceted, elaborate and detailed VMP designed, developed, modified, implemented, maintained, funded and managed by PG&E.

41.     The VMP designed, developed, modified, implemented, maintained, funded and managed by PG&E assigned roles and obligations with respect to inspections required to identify trees which may pose a hazard of striking PG&E electrical lines and causing fires, including but not limited to pre-inspections, CEMA inspections, aerial photography, aerial surveys, and quality control and quality assurance audits with respect to those inspections and other activities. PG&E chose not to assign those roles and obligations to Trees under its contract with Trees.

42.     The pre-inspection and CEMA inspection obligations developed and assigned by PG&E included specific qualifications required of SCUFs, CUFs and others performing those inspection services, and none of these qualifications were required of Trees' personnel.

43.     The pre-inspection and CEMA inspection obligations developed and assigned by PG&E also included specific standards regarding the rating of hazardous trees and the need to be particularly vigilant of gray pines, such as the subject tree, which may separate from surrounding trees. None of these obligations were required of Trees under its contract with PG&E.

44.     As designed, developed, modified, implemented, maintained, funded and managed by PG&E, PG&E retained for itself and also delegated to ACRT the obligation for identifying trees which present a potential hazard of striking power lines, during both pre-inspections and CEMA inspections.

45.     Consistent with the VMP designed, developed, modified, implemented, maintained, funded and managed by PG&E, ACRT in fact performed a pre-inspection of the specific area of the subject gray pine in October of 2014, PG&E performed aerial CEMA inspections in June of 2015, PG&E performed aerial CEMA surveying in July of 2015 and ACRT performed CEMA foot patrols in July of 2015, all for the specific purpose of identifying trees,

12

including gray pines in particular, which may contact PG&E power lines. ACRT and PG&E performed these pre-inspections, CEMA inspections and surveying without the assistance of Trees, as contemplated by PG&E's VMP.

46.     Trees' only involvement in work pertaining to the subject tree was the removal of two neighboring trees as directed by ACRT nine months before the fire and several months before the aerial and ground patrol CEMA inspections conducted by PG&E and ACRT.

47.     The claims for which PG&E seeks indemnity from Trees do not arise from a failure to remove a tree previously identified as a hazard by any inspector or a failure to properly remove the trees which were identified by an ACRT inspector. The claims for which PG&E seeks indemnity from Trees instead arise from an alleged failure to properly inspect and identify the subject tree as one which posed a future threat of contacting a power line and causing a fire.

48.     Based on the above allegations, Trees seeks a declaration that the claims for which PG&E seeks indemnity do not arise from Trees' performance or failure to perform its contract with PG&E, and that Trees is therefore not required to indemnify Trees for those claims.

### SECOND CAUSE OF ACTION
**Declaratory Relief Against PG&E**
**Indemnity Requires Showing of Negligence**

49.     Trees re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37 above.

50.     The indemnity provision in the contract between PG&E and Trees contains no language which clearly, specifically or unequivocally requires Trees to indemnify PG&E for claims or losses which do not arise out of the fault or negligence of Trees.

51.     California law requires that any contract purporting to require a non-negligent party to indemnify another must contain language which clearly, specifically and unequivocally states that indemnity will be owed even if the indemnifying party is not negligent. Trees therefore seeks a declaration that the indemnity agreement in the contract between PG&E and Trees requires a finding of fault or negligence on Trees' part in order to trigger any obligation that Trees indemnify PG&E.

52.     At all times material hereto, Trees performed its contract with PG&E fully,

13

1    competently and in compliance with the standards developed by PG&E for its VMP and with the

2    reasonable standard of care for tree-trimming contractors engaged in utility vegetation

3    management services. Trees therefore seeks a declaration that, properly interpreted, the indemnity

4    provision in the contract between PG&E and Trees does not require Trees to indemnify PG&E for

5    claims or losses arising out of the Butte Fire.

### THIRD CAUSE OF ACTION
### Declaratory Relief Against PG&E
### PG&E's Active Negligence

8        53.    Trees re-alleges and incorporates by reference each and every allegation contained

9    in paragraphs 1 through 37 above.

10       54.    Trees is informed and believes and thereon alleges that the plaintiffs in the

11   Coordinated Proceeding have asserted various claims against PG&E which may lead to a finding

12   that the Butte Fire resulted from PG&E's active negligence, in that the claims alleged by plaintiffs

13   are that PG&E participated in one or more affirmative act of negligence, was connected with

14   negligent acts or omissions by knowledge or acquiescence, or failed to perform a precise duty

15   which PG&E had agreed to perform.

16       55.    Notwithstanding any contrary terms in the indemnity provision in the contract

17   between PG&E and Trees, Cal. Civil Code § 2782, *et seq.* prohibits a party from seeking or

18   obtaining indemnity for its active negligence in contracts which include the type of contract that

19   existed between PG&E and Trees. Trees therefore seeks a declaration that the indemnity

20   agreement in the contract between PG&E and Trees does not require Trees to indemnify PG&E to

21   the extent plaintiffs in the Coordinated Proceeding prove the Butte Fire was caused by the active

22   negligence of PG&E.

### FOURTH CAUSE OF ACTION
### Declaratory Relief Against PG&E
### Sole Negligence

25       56.    Trees re-alleges and incorporates by reference each and every allegation contained

26   in paragraphs 1 through 37 above.

27       57.    Trees is informed and believes and thereon alleges that the plaintiffs in the

28   Coordinated Proceeding have asserted various negligence claims against PG&E and ACRT.

14

58.     The indemnity provision in the contract between PG&E and Trees precludes PG&E from being indemnified for claims or losses caused by the sole negligence of PG&E. Furthermore, pursuant to Cal. Civil Code § 2782, *et seq.*, a party is prohibited from being indemnified not only for losses caused by its sole negligence but also for losses caused solely by its negligence in combination with that of any independent contractor directly responsible to the party seeking indemnity.

59.     Therefore, Trees seeks a declaration that the indemnity agreement in the contract between PG&E and Trees will not require Trees to indemnify PG&E if plaintiffs in the Coordinated Proceeding prove that the Butte Fire was caused solely by PG&E or solely by a combination of the conduct of PG&E and its other contractors, including ACRT.

### FIFTH CAUSE OF ACTION
### Implied Equitable Indemnity Against Cross-Defendant ACRT and ROES 1-50

60.     Trees re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37 above.

61.     Trees exercised no control or direction over the conduct of ACRT and ROES 1 to 50 and ACRT and ROES 1 to 50 are either wholly or partially responsible and liable for any damages allegedly sustained.

62.     Trees is informed and believes and thereon alleges that the Butte Fire was the direct and proximate result of the negligence of ACRT and ROES 1-50 in several respects, including but not limited to the following: (1) failing to follow and apply the standards reasonably required of SCUFs, CUFs, foresters and other professionals charged with identifying trees in need of remedial work during pre-inspections; and (2) failing to follow and apply the standards reasonably required of SCUFs, CUFs, foresters and other professionals for identifying trees in need of remedial work during CEMA inspections and patrols.

63.     In the event that any person or entity can recover damages through settlement or judgment from Trees, the damages will be the proximate result of the negligence or other fault of ACRT and ROES 1-50, as aforesaid, and not that of Trees.

64.     If judgment is taken against Trees, ACRT and ROES 1-50 should be required to

15

1 | pay Trees' share of the judgment in proportion to the comparative negligence or other tortious

2 | conduct of ACRT and ROES 1-50 in causing the damages.

3 | WHEREFORE, Trees prays for judgment against cross-defendants PG&E, ACRT, and

4 | ROES 1 through 50 as follows:

5 | **On the First Cause of Action Against PG&E:**

6 | 1)    A declaration that the claims for which PG&E seeks indemnity do not arise from

7 | Trees' performance or failure to perform its contract with PG&E.

8 | **On the Second Cause of Action Against PG&E:**

9 | 1)    A declaration that the indemnity agreement in the contract between PG&E and

10 | Trees requires a finding of fault or negligence on Trees' part in order to trigger any obligation that

11 | Trees indemnify PG&E; and

12 | 2)    A declaration that, due to the lack of negligence on Trees' part, the indemnity

13 | provision in the contract between PG&E and Trees does not require Trees to indemnify PG&E for

14 | claims or losses arising out of the Butte Fire.

15 | **On the Third Cause of Action Against PG&E:**

16 | 1)    A declaration that the indemnity agreement in the contract between PG&E and

17 | Trees does not require Trees to indemnify PG&E to the extent the plaintiffs in the Coordinated

18 | Proceeding prove that the Butte Fire was caused by the active negligence of PG&E.

19 | **On the Fourth Cause of Action Against PG&E:**

20 | 1)    A declaration that the indemnity agreement in the contract between PG&E and

21 | Trees does not require Trees to indemnify PG&E if plaintiffs in the Coordinated Proceeding

22 | prove that the Butte Fire was caused solely by PG&E or solely by a combination of the conduct of

23 | PG&E and its other contractors, including ACRT.

24 | **On the Fifth Cause of Action Against ACRT and ROES 1 to 50:**

25 | 1.    A declaration of the rights of Trees to total or partial indemnification from ACRT

26 | and ROES, and each of them, and apportioning the liability of Trees, ACRT and ROES, and each

27 | of them, on the basis of their comparative fault in the event the court determines that they are

28 | liable for the damages alleged in PG&E's complaint;

16

1      2.      A declaration of the obligations of ACRT and ROES, and each of them, to defend

2  Trees in this action, and to hold Trees harmless, either totally or in proportion to the relative fault

3  of the parties, for any judgment or settlement;

5  **On all Causes of Action:**

6  1)     For costs of suit incurred herein; and

7  2)     For such other relief as this Court deems appropriate.

9  DATED:  February 28, 2017          CARLSON, CALLADINE & PETERSON LLP

By: _____
RANDY W. GIMPLE
A.  DAVID BONA
AARON P. SHAPIRO
Attorneys for Defendant
TREES, INC.

TREES, INC.'S CROSS-COMPLAINT FOR DECLARATORY RELIEF AND IMPLIED EQUITABLE INDEMNITY

1

## **DEMAND FOR JURY TRIAL**

2  Defendant/Cross-Defendant/Cross-Complainant Trees, Inc. hereby demands a trial by jury in this

3  action.

4

5  DATED:   February 28, 2017                    CARLSON, CALLADINE & PETERSON LLP

6

7                                                     By: _____

8                                                           RANDY W. GIMPLE
                                                          B.  DAVID BONA
                                                          AARON P. SHAPIRO

9                                                         Attorneys for Defendant
                                                          TREES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TREES, INC.'S CROSS-COMPLAINT FOR DECLARATORY RELIEF AND IMPLIED EQUITABLE
INDEMNITY

# EXHIBIT 1



Contract – Long Form

# Contract (Long Form)

This is a Contract between the below named Contractor ("Contractor"), a Delaware corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.

| Contractor's Legal Name: | TREES, INCORPORATED | PG&E Contract No. 4400009030 |
|---|---|---|
| Contractor's Address: | 650 N. Sam Houston Parkway E Houston, TX 77080 | This Contract consists of 140 pages. |

| Project Name: | Distribution Tree Pruning and Tree and Brush Removal and Reliability Tree Pruning |
|---|---|
| Job Location: | The Vegetation Management Program Manager Areas identified below and other locations in the PG&E service area, as mutually agreed: Distribution Tree Pruning Work: Central Valley (Stockton and Fresno areas) Reliability Tree Pruning: Central Valley (Stockton and Fresno areas) |

WORK: Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Specification No. 5404 Scope of Work. This is not an exclusive Contract. This Contract does not guarantee Contractor any Work nor is there any guarantee as to any volume or duration of Work.

1) Contractor shall perform Distribution and Reliability Tree Pruning and Tree and Brush Removal in accordance with Specification No.5404, dated August 1, 2014. In consideration of the recitals, terms, covenants and conditions herein, the parties agree that Contract Number 4400009030 be established. The parties further agree that this Contract supersedes MSA 4400004205, effective 04/30/2010, which are hereby terminated by mutual agreement.

ATTACHMENTS: Each of the following documents is attached to this Contract and incorporated herein by this reference:

Attachment 1: Supplemental Terms and Conditions (5 pages)
Attachment 2: Specification 5404 (45 pages)
Attachment 3: Specification 5404 Exhibits (51 pages)
Attachment 4: General Conditions (31 pages)
Attachment 5: Pricing Sheet (6 pages)

| CONTRACT TERM: | This Contract is effective upon signature by both parties and expires on 12/31/2019. |
|---|---|
| COMPLETION: | Contractor shall commence performance hereof when directed to do so by PG&E. Work shall be completed by the completion date of 12/31/2019. Time is of the essence. |
| INSURANCE: | Contractor shall maintain insurance in accordance with Section 10 of the General Conditions. |
| TERMS OF PAYMENT: | In accordance with Section 7 of the General Conditions. |

CONSIDERATION: As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

TOTAL: The Sum of all Pricing specified on duly authorized Vegetation Management Work Requests.

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: TREES, INCORPORATED | |
|---|---|---|---|
| Signature | | Signature | |
| Name | Gun Shim | Name | Scott Hufmaster |
| Title | Vice President, Supply Chain | Title | Vice President |
| Date | 9.25.14 | Date | 09/19/2014 |

1.3.18   Tree Removal:  As defined in Section 2.5.5, Tree Removal, of this Specification.

1.3.19   Unit(s):  A measurement of Work performed, as further described in Section 2.5.3 of this Specification.

1.3.20   Unit Price(s):  Prices charged for Units pruned, wrapped or removed during Routine Maintenance Work performed by Contractor.

1.3.21   Vegetation Program Manager or VPM:  PG&E's Vegetation Program Manager or his or her designated representative, which may be the Pre-Inspection Contractor.  PG&E will notify Contractor of the name, contact information, and geographic area for the VPM.  If the Work is performed in more than one geographic area, there may be more than one VPM for a Contract.  The VPM has authority to authorize Work and answer questions pertaining to vegetation management processes and details for the VPN's specific geographic area.

1.3.22   Vegetation Work Request Form:  The form used to assign Routine Work to the Contractor.  A copy of the Vegetation Work Request Form is attached as Exhibit 3.

1.3.23   Work:  The Work under this Contract includes but is not limited tree pruning, tree and brush removal, tree wrap, clearing of vegetation, and associated activities.

2.   SCOPE OF WORK

2.1   GENERAL:  Contractor shall, at its own risk and expense, perform the Work requested by PG&E hereunder.  Work may be classified as Routine or Non-Routine Maintenance Work.  Contractor shall furnish all labor, supervision, material, equipment, and transportation required to perform the Work in compliance with this Specification and the Contract.  Work to be performed consists of removing, cutting, pruning, applying tree wrap material, chemically treating, and clearing away of trees, tops, limbs, branches, and foliage on trees which interfere with, or which by reason of their location or condition may interfere with, or which will not allow sufficient clearance for, safe and proper construction, maintenance, and operation of PG&E electric distribution and transmission lines in compliance with All Applicable Requirements.

2.1.2   PRE-INSPECTIONS AND POST AUDITS:  Specific Pre-Inspection work may be assigned to the Contractor in writing by the Program Manager.  The Contractor also is expected to perform its own Pre-Inspection upon receiving a PG&E Vegetation Work Request to confirm the appropriateness of the Vegetation Work Request to comply with All Applicable Requirements.  In addition, Contractor must also perform its own post tree Work audit to confirm that it has performed all tasks required on a Vegetation Work Request in compliance with this Specification.

2.2   WORK STANDARDS.  Contractor shall perform all Work in accordance with the requirements of this Contract and each of the following requirements (collectively, "All Applicable Requirements"):

2.2.1  All Applicable Law.

2.2.2  All industry standards and procedures concerning tree pruning, tree removal and vegetation management, including but not limited to the most current version of each of the following:

- The California Department of Forestry & Fire Protection (Cal Fire) Power Line Fire Prevention Field Guide;
- American National Standards Institute (ANSI) A300 Pruning Standards;
- ANSI Best Management Practices, Tree Pruning;

2.2.3  PG&E's vegetation management standards and procedures.

Copies of the foregoing are available to Contractor from the PG&E Vegetation Program Manager  upon request.

2.2.  THE TREE PRUNING PROCESS:  Contractor shall follow the general process outlined below when performing Work:

2.2.1   Before assignment of Work to Contractor, the PG&E Pre-Inspection Contractor will identify and prescribe required tree pruning and tree/brush removal Work to be performed by the Contractor along the existing PG&E rights-of-way.  The Pre-Inspection Contractor will also notify customers that the Work will occur and will forward the description of the Work to PG&E's Vegetation Program Manager.

2.2.2   PG&E will assign work to Contractor using a Vegetation Work Request Form.  Upon receiving a Vegetation Work Request Form, the Contractor shall visit the Work site and shall inspect and evaluate the Work described in the Vegetation Work Request Form.

2.2.3   Contractor shall perform the Work and complete the Vegetation Work Request Form, either confirming that the Work has been performed as prescribed or noting any changes between the Work prescribed and the Work performed on the Vegetation Work Request Form, and shall return the completed Vegetation Work Request Form to PG&E.  Contractor shall keep a record of Time and Material (T&M) Work performed on a daily basis and submit a Vegetation Management T&M Justification Form (Exhibit 9) and a tree crew time card to the Vegetation Program Manager when the Work is invoiced.  All Routine T&M Maintenance Work shall be approved by the VPM prior to Contractor starting the Work.  Contractor shall input completed Work information electronically, within forty-five (45) days of Work completion in accordance with Part 5, Electronic Billing Data, of this Specification.

2.2.3.1   If Contractor  determines that the Work as described in the Vegetation Work Request Form does not conform to the

required clearances or does not meet All Applicable Requirements, the Contractor must notify the VPM in writing.

2.2.4    PG&E may request that new Work be assigned in an area, that Work assignments be reduced, and/or request that Work assignments be shifted.  If this will result in the Routine Maintenance Work already ordered not being done according to schedule, Contractor must inform the Vegetation Program Manager immediately upon receiving PG&E's request to modify Work assignments, and the VPM will determine if Routine Maintenance Work at Overtime Unit Prices is required to complete current Work.  If Work to be done is determined by the VPM not to require overtime, Work must be completed as Routine Maintenance Work and will be paid at standard Unit Prices.  If Work to be done is determined by the VPM to require overtime, Work will be completed as Routine Maintenance Work and paid at Overtime Unit Prices set forth in the Contract.

2.2.5    Upon arrival at the jobsite and prior to starting Work, the Contractor's crew shall attempt a courtesy notification to the property occupant that Work will be performed.   If property owner will not allow Contractor to perform Work prescribed on the Vegetation Work Request Form, Contractor shall complete the Vegetation Management Refusal Form (attached as Exhibit 19) and return the form to the Pre-Inspection Contractor promptly as directed by the VPM.

2.2.6    Contractor shall perform the Work only at locations identified on the Vegetation Work Request Form, including any necessary customer notification and obtaining any required permission, if such has not already been obtained.  It is the Contractor's responsibility to note any changes to the Work prescribed on the completed Vegetation Work Request Form returned to PG&E, if requested by the VPM detailing any added Work. Any tree to be removed must be authorized by the Vegetation Program Manager or have a Notice of Tree Work Form (attached as Exhibit 6) and signed by the customer or the VPM.

2.3    RELATIONSHIPS:

2.3.1    Contractor shall establish and maintain positive, cooperative relationships with all persons and entities connected to the Work, including but not limited to the following.  Contractor shall maintain direct contact with local PG&E operating personnel as needed or directed by the Vegetation Program Manager.  Contractor shall maintain direct contact with t Pre-Inspection Contractor and Post Audit Contractor to ensure coordination. Contractor shall maintain a relationship with all public agencies, including California Department of Transportation (CALTRANS), California Department of Forestry and Fire Protection (CalFire), United States Forest Service (USFS), and Bureau of Land Management (BLM) representatives in the Contractor's assigned area(s) to ensure smooth and conflict-free  interfaces with these agencies when Work  is performed

within their jurisdiction.  Contractor is responsible for the timely resolution of customer complaints, and Contractor's performance will be judged, in part, on demonstrating positive and effective customer contact skills.

2.3.2   CONTRACTOR/PG&E ALLIANCE:  PG&E and Contractor management will meet on a regular basis to review the performance by each party in supporting the agreed upon goals and to identify best practices and implement their use throughout Contractor's Work areas.

2.3.3   TREELINE USA:   Contractor shall provide the following information to PG&E by October 15th of each year for inclusion in PG&E's TreeLine USA application:

    2.3.3.1   The number of "Pruning Trees Near Electric Utility Lines:  A Field Pocket Guide for Qualified Line Clearance Tree Workers" in use for the applicable year.  If a different field pocket guide is used, Contractor shall provide a copy of the guide and the number in use.

    2.3.3.2   A statement that the field guide is available at every Work site.

    2.3.3.3   A copy of the agenda, date(s) and location(s) of worker training for ANSI pruning standards and the pocket field guide utilized by Contractor.

    2.3.3.4   The name, title, and qualifications of the trainer for pruning practices.

2.4   TYPES OF WORK:  Work under this Contract will be either Routine Maintenance Work or Non-Routine Maintenance Work, and payment to Contractor shall be calculated on the basis of the type of Work performed.

2.4.1   Routine Maintenance Work:  Contractor shall be bound by the Unit Prices negotiated for pruning or removing Units which, when accepted by PG&E, shall become a part of the Contract.

2.4.2   Tags:  Tags will be performed by the Contractor and will be billed by Contractor on a Unit Price unless directed by Vegetation Program Manager to bill at T&M.

2.4.3   Non-Routine Maintenance Work:  Contractor shall be bound by its Hourly Crew Rates negotiated for labor and equipment, which when accepted by PG&E shall become a part of the Contract.

2.4.4   CPR and First Aid Training:  PG&E will reimburse Contractor for actual labor costs incurred for Contractor's employees performing Work under this Contract to attend training required to obtain and maintain a current card or certificate of completion of first aid and CPR training. Reimbursement for any training materials or any other type of safety

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 1 of 31

GENERAL CONDITIONS

CONTENTS

## Table of Contents

1.   DEFINITIONS ........................................................................................................ 2
2.   PROPOSAL ........................................................................................................... 2
3.   PERFORMANCE OF WORK ................................................................................. 3
4.   LEGAL REQUIREMENTS ..................................................................................... 7
5.   ROYALTIES AND LICENSES ............................................................................... 8
6.   DELAYS AND SUSPENSION OF WORK .............................................................. 9
7.   PAYMENT ............................................................................................................. 9
8.   EXTRA WORK AND CHANGES .......................................................................... 10
9.   INDEMNIFICATION, WITHHOLDING, LIMITATION OF LIABILITY, CLAIMS ...... 11
10.  INSURANCE ....................................................................................................... 12
11   FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT ...... 14
12   REQUIREMENTS AND POLICIES ...................................................................... 15
13.  GENERAL REQUIREMENTS .............................................................................. 19

Each of the following documents is attached hereto and incorporated herein:

| EXHIBIT 1 | PG&E Supplier Diversity Policy |
| EXHIBIT 1A | List of Subcontractors and Disbursement Record |
| EXHIBIT 2 | Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns |
| EXHIBIT 3 | Injury and Illness Prevention Program Compliance Certificate |
| EXHIBIT 4 | PG&E Drug and Alcohol Abuse and Testing Policies |
| EXHIBIT 5 | PG&E Contractor Document Retention and Production Requirements |
| EXHIBIT 5A | Document and Data List |
| EXHIBIT MOU | Memorandum of Understanding – Vegetation Management Work |

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 11 of 31

changes shall, at PG&E's option, be based on unit prices, fixed prices, or time and material prices quoted by Contractor in its Proposal.

9.  INDEMNIFICATION, WITHHOLDING, LIMITATION OF LIABILITY, CLAIMS

9.1   INDEMNIFICATION

9.1.1   To the maximum extent permitted by applicable law, Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any:  (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor;(ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; so long as such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation as is caused by (a) the sole negligence or willful misconduct of PG&E, its affiliates, officers, managers, directors, agents or employees; or (b) by such injury to property (as set forth in (ii) above) resulting from the pre-inspecting party's failure to give adequate notice or obtain prior written permission of the property owner as required by this Contract, where pre-inspection was performed by a third party and Contractor was not responsible under the Contract to notify property owner or obtain a property owner's prior written permission; or (c) by PG&E's written directions to Contractor not to perform Work modifications proposed in writing by Contractor in accordance with the Specific Conditions, provided that Contractor was performing Work that had been pre-inspected by a third party, had timely and properly notified PG&E that the Work prescribed on the PG&E work request form should be modified; had timely and properly documented the recommended modification on the PG&E work request form; and had timely and properly submitted the PG&E work request form, noting recommended modifications in writing, to the PG&E Representative.

9.1.2   Contractor acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arises from or are in any way connected with the release or spill of any legally designated Hazardous Material or Waste and arises from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

9.1.3   Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity.  Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

9.1.4   To the extent necessary, each party was represented by counsel in the negotiation and execution of this Contract.

9.2   CLAIMS PROCEDURE

9.2.1   REPORTS: Contractor shall report to PG&E's Representative each case of injury to or death of person or injury to property immediately after knowledge of the occurrence. This condition shall be included in all Subcontracts.

9.2.2   CONTRACTOR'S RESPONSIBILITY: Contractor shall make every effort to promptly acknowledge and satisfactorily settle, within a reasonable time after it arises or occurs, any loss, damage, expense, or liability for which Contractor is responsible under this Contract.

9.2.3   Contractor shall promptly resolve, at Contractor's expense, all claims for private property

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 11 of 31

changes shall, at PG&E's option, be based on unit prices, fixed prices, or time and material prices quoted by Contractor in its Proposal.

9. INDEMNIFICATION, WITHHOLDING, LIMITATION OF LIABILITY, CLAIMS

9.1     INDEMNIFICATION

9.1.1     To the maximum extent permitted by applicable law, Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any:  (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor;(ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; so long as such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation as is caused by (a) the sole negligence or willful misconduct of PG&E, its affiliates, officers, managers, directors, agents or employees; or (b) by such injury to property (as set forth in (ii) above) resulting from the pre-inspecting party's failure to give adequate notice or obtain prior written permission of the property owner as required by this Contract, where pre-inspection was performed by a third party and Contractor was not responsible under the Contract to notify property owner or obtain a property owner's prior written permission; or (c) by PG&E's written directions to Contractor not to perform Work modifications proposed in writing by Contractor in accordance with the Specific Conditions, provided that Contractor was performing Work that had been pre-inspected by a third party, had timely and properly notified PG&E that the Work prescribed on the PG&E work request form should be modified; had timely and properly documented the recommended modification on the PG&E work request form; and had timely and properly submitted the PG&E work request form, noting recommended modifications in writing, to the PG&E Representative.

9.1.2     Contractor acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arises from or are in any way connected with the release or spill of any legally designated Hazardous Material or Waste and arises from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

9.1.3     Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity.  Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

9.1.4     To the extent necessary, each party was represented by counsel in the negotiation and execution of this Contract.

9.2     CLAIMS PROCEDURE

9.2.1     REPORTS: Contractor shall report to PG&E's Representative each case of injury to or death of person or injury to property immediately after knowledge of the occurrence. This condition shall be included in all Subcontracts.

9.2.2     CONTRACTOR'S RESPONSIBILITY: Contractor shall make every effort to promptly acknowledge and satisfactorily settle, within a reasonable time after it arises or occurs, any loss, damage, expense, or liability for which Contractor is responsible under this Contract.

9.2.3     Contractor shall promptly resolve, at Contractor's expense, all claims for private property

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 13 of 31

10.2    COMMERCIAL GENERAL LIABILITY

10.2.1  Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, including coverage for fire suppression, with no coverage deletions.  Work that involves chemical spraying shall include coverage for pesticide and herbicide application.

10.2.2  The limit shall not be less than $10,000,000 per occurrence for bodily injury, property damage and personal injury and products/completed operations.  Defense costs shall be provided as an additional benefit and not included within the limits of liability.  Coverage limits may be satisfied using an umbrella or excess liability policy.

10.2.3  Coverage shall: (i) By "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of Work performed by or for the Contractor, including completed operations; (ISO Form CG 2010 11/85 or equivalent).  If the CGL policy includes "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement:  "PG&E, its affiliates, subsidiaries, parent company, directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement"; (ii) Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; and (iii) include a severability of interest clause. The additional insureds shall fully cooperate with the Contractor on any Claim.

10.3    PROFESSIONAL LIABILITY INSURANCE

10.3.1  Errors and Omissions Liability insurance appropriate to the Contractor's profession.  Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract, including coverage for consequential financial loss and fire suppression, with no coverage deletions.

10.3.2  The limit shall not be less than $10,000,000 per occurrence.

10.3.3  Coverage shall be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

10.4    BUSINESS AUTO

10.4.1  Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

10.4.2  The limit shall not be less than $5,000,000 each accident for bodily injury and property damage. Coverage limits may be satisfied using an umbrella or excess liability policy.

10.5    ADDITIONAL INSURANCE REQUIREMENTS

10.5.1  Before commencing performance of Work, Contractor shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Contractor.

10.5.2  Should any of the above described policies be cancelled before the expiration date thereof, the insurer shall deliver notification to PG&E in accordance with the policy provisions.

10.5.3  Certificates of insurance and endorsements shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf and must be submitted by e-mail or fax only:

Certificate Holder:  Pacific Gas and Electric Company
c/o EXIGIS LLC
E-mail: support@exigis.com
Fax: 646-755-3327

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line
08/01/2014 kbw4

Contract 4400009030
Attachment 4:  General Conditions
Trees, Incorporated
Page 14 of 31

A copy of all such insurance documents shall be sent to PG&E's Contract negotiator and/or Contract administrator at Contract execution and whenever the terms of the insurance policy are updated or renewed.

10.5.4   PG&E may inspect the original policies or require complete certified copies, at any time.

10.5.5   Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

10.5.6   Contractor shall not allow any required insurance coverage to lapse during the term of this Contract.  Contractor shall obtain and have in place replacement coverage in accordance with the requirements of this Contact and shall furnish PG&E with certificates of insurance and additional insured endorsements of all required insurance before termination or expiration of prior coverage.

10.5.7   All policies or binders with respect to insurance maintained by Contractor shall waive any right of subrogation of the insurers hereunder against PG&E, its parent company, affiliates and officers, directors, employees, agents and representatives of each of them.

10.6   RESPONSIBILITY FOR NON-COMPLIANCE WITH INSURANCE REQUIREMENTS

10.6.1   NONE OF THE FOREGOING INSURANCE REQUIREMENTS CAN BE WAIVED WITHOUT THE EXPRESS WRITTEN CONSENT OF AN OFFICER OF PG&E OR THE PG&E REPRESENTATIVE AUTHORIZED TO SIGN THIS CONTRACT.

10.6.2   Notwithstanding any other provisions of this Contract and separate and apart from Contractor's obligation to indemnify PG&E pursuant to Article 9 and the insurance requirements in Article 10 hereof, if Contractor's insurance carrier fails or refuses to defend or indemnify PG&E pursuant to an additional insured endorsement because of a failure to obtain an additional insured endorsement, policy deductible, self-insured retention, or other unauthorized coverage deletion, Contractor shall stand in the place of its insurer and defend and indemnify PG&E and its officers, directors, agents, and employees to the same extent that an insurer issuing ISO form occurrence coverage without coverage deletions would under California law.  If Contractor unreasonably fails or refuses to so defend and indemnify, Contractor shall be liable to PG&E for all resulting damages, including but not limited to attorney's fees and imposition of punitive damages.

11. FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT

11.1   FORCE MAJEURE:  Neither PG&E nor Contractor shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of the affected party.  In the event either party claims that performance of its obligations was prevented or delayed by any such cause, that party shall promptly notify the other party of that fact, and of the circumstances preventing or delaying performance.  Such party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

11.2   CANCELLATION FOR CAUSE:

11.2.1   PG&E may, at its option, cancel or suspend this Contract or any one or more CWAs for cause including, but not limited to, the following situations: (i) the failure, refusal or inability of the Contractor to perform the Work in accordance with this Contract for any reason (except as specified in the section titled "Force Majeure"); or (ii) Contractor has become insolvent, has failed to pay its bills, or has had checks for payment of its bills returned from suppliers and Subcontractors due to insufficient funds; or (iii) a legal action is placed against Contractor which, in PG&E's opinion, may interfere with the performance of the Work; or (iv) in PG&E's opinion, the Work will not be completed in the specified time and PG&E has requested Contractor to take steps necessary to accomplish the required progress and completion, and Contractor has failed to do so.  In addition PG&E may at its option and without prejudice to its

ELECTRONIC CERTIFICATE OF SERVICE

1

2     I am employed in the County of San Francisco, State of California.  I am over the age of
18 and not a party to the within action.  My business address is 353 Sacramento Street, 16th

3     Floor, San Francisco, California 94111.

4     On February 28, 2017, I served true copies of the following document(s) described as:

5     **TREES, INC.'S CROSS-COMPLAINT FOR DECLARATORY RELIEF AND
IMPLIED EQUITABLE INDEMNITY and DEMAND FOR JURY TRIAL**

6

7     on the interested parties in this action pursuant to the most recent Omnibus Service List.

8

Pursuant to C.C.P. §1010.6, Cal. R. Ct. Rule 2.260, and the parties' agreement to accept service
9     by e-mail or electronic transmission, I caused the document(s) to be sent to the person(s) at the e-
mail address listed by submitting a PDF format copy of such document via file transfer protocol
10    (FTP) to CaseHomePage through the upload feature at www.casehomepage.com on February 28,
11    2017. The document(s) was transmitted by file transfer protocol (FTP) without error.

12

13                                    SHARI L. HIIBEL

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TREES, INC.'S CROSS-COMPLAINT FOR DECLARATORY RELIEF AND IMPLIED EQUITABLE
INDEMNITY