# EXHIBIT A



# Contract (Long Form)

This is a Contract between the below named Contractor ("Contractor"), a Delaware corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.

| Contractor's Legal Name: | TREES, INCORPORATED | PG&E Contract No. 4400009030 |
|---|---|---|
| Contractor's Address: | 650 N. Sam Houston Parkway E<br>Houston, TX 77080 | This Contract consists of 140 pages. |

| | |
|---|---|
| Project Name: | Distribution Tree Pruning and Tree and Brush Removal and Reliability Tree Pruning |
| Job Location: | The Vegetation Management Program Manager Areas identified below and other locations in the PG&E service area, as mutually agreed:<br>Distribution Tree Pruning Work: Central Valley (Stockton and Fresno areas)<br>Reliability Tree Pruning: Central Valley (Stockton and Fresno areas) |

WORK: Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Specification No. 5404 Scope of Work. This is not an exclusive Contract. This Contract does not guarantee Contractor any Work nor is there any guarantee as to any volume or duration of Work.

1) Contractor shall perform Distribution and Reliability Tree Pruning and Tree and Brush Removal in accordance with Specification No.5404, dated August 1, 2014. In consideration of the recitals, terms, covenants and conditions herein, the parties agree that Contract Number 4400009030 be established. The parties further agree that this Contract supersedes MSA 4400004205, effective 04/30/2010, which are hereby terminated by mutual agreement.

**ATTACHMENTS:** Each of the following documents is attached to this Contract and incorporated herein by this reference:

Attachment 1: Supplemental Terms and Conditions (5 pages)
Attachment 2: Specification 5404 (45 pages)
Attachment 3: Specification 5404 Exhibits (51 pages)
Attachment 4: General Conditions (31 pages)
Attachment 5: Pricing Sheet (6 pages)

| | |
|---|---|
| **CONTRACT TERM:** | This Contract is effective upon signature by both parties and expires on 12/31/2019. |
| **COMPLETION:** | Contractor shall commence performance hereof when directed to do so by PG&E. Work shall be completed by the completion date of 12/31/2019. Time is of the essence. |
| **INSURANCE:** | Contractor shall maintain insurance in accordance with Section 10 of the General Conditions. |
| **TERMS OF PAYMENT:** | In accordance with Section 7 of the General Conditions. |

**CONSIDERATION:** As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

TOTAL: The Sum of all Pricing specified on duly authorized Vegetation Management Work Requests.

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: TREES, INCORPORATED | |
|---|---|---|---|
| Signature | *[signature]* | Signature | *[signature]* |
| Name | Gun Shim | Name | Scott Huffmaster |
| Title | Vice President, Supply Chain | Title | Vice President |
| Date | 9.25.14 | Date | 09/19/2014 |

training is not included. Contractor shall submit a manual invoice monthly to PG&E's Vegetation Management Department Planning Manager listing the following:

- Employee name
- Whether employee is a certified arborist; and if so, include certification number
- Type of training (first aid or CPR)
- Date of training
- Duration of training (in hours)
- Location of training
- Employee's hourly wage (including payroll taxes and any other associated costs but excluding profit)

2.5 STANDARDS FOR WORK: Contractor shall diligently perform all Work in a proper, appropriate and professional manner, in accordance with All Applicable Requirements and approved principles of modern Arboriculture.

2.5.1 The Contractor shall perform the Work so as to obtain the vegetation line clearances prescribed in the Vegetation Work Request Form and in compliance with All Applicable Requirements, while taking into consideration the effect of pruning on the health and appearance of the tree and PG&E's legal rights and/or clearance requirements.

2.5.2 Contractor shall perform all Work in accordance with All Applicable Requirements, including but not limited to ANSI A300 Pruning Standards and "Best Management Practices - Utility Pruning of Trees – Special Companion Publication to the ANSI A300 Part 1: Tree, Shrub, and Other Woody Plant Maintenance – Standard Practices, Pruning." Contractor shall be responsible for obtaining and maintaining one copy of each of these publications with each crew and ensure each crew member knows, understands and practices these pruning standards.

2.5.3 A "Unit" shall be Work performed in any one of the tree and brush categories listed below. For all Units of Work, any cut tree parts less than 4 inches diameter shall be chipped and removed from the site unless otherwise directed by PG&E. Contractor shall incur a processing charge of $100 for each Work location which incorrectly reports the number of Units satisfactorily completed.

2.5.3.1 Tree Pruned: For tree pruning purposes, a tree qualifying for "Tree Pruned" status is defined as a plant with at least one stem that is four (4) inches or larger DBH and where final cuts are made above four and one-half (4.5) feet above the ground. Multiple stems originating from the same common root crown are considered as one (1) tree. If there is no visible connecting wood, the following process is used to determine Unit count: Place a 6-inch measuring device between two stems of same species at ground level. If the measuring device touches bark to bark or does not fit between

changes shall, at PG&E's option, be based on unit prices, fixed prices, or time and material prices quoted by Contractor in its Proposal.

9. INDEMNIFICATION, WITHHOLDING, LIMITATION OF LIABILITY, CLAIMS

    9.1 INDEMNIFICATION

    9.1.1 To the maximum extent permitted by applicable law, Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Contractor;(ii) injury to property or other interests of PG&E, Contractor, or any third party; (iii) violation of a local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; or (iv) strict liability imposed by any law or regulation; so long as such injury, violation, or strict liability (as set forth in (i) - (iv) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, strict liability, or violation of law or regulation as is caused by (a) the sole negligence or willful misconduct of PG&E, its affiliates, officers, managers, directors, agents or employees; or (b) by such injury to property (as set forth in (ii) above) resulting from the pre-inspecting party's failure to give adequate notice or obtain prior written permission of the property owner as required by this Contract, where pre-inspection was performed by a third party and Contractor was not responsible under the Contract to notify property owner or obtain a property owner's prior written permission; or (c) by PG&E's written directions to Contractor not to perform Work modifications proposed in writing by Contractor in accordance with the Specific Conditions, provided that Contractor was performing Work that had been pre-inspected by a third party, had timely and properly notified PG&E that the Work prescribed on the PG&E work request form should be modified; had timely and properly documented the recommended modification on the PG&E work request form; and had timely and properly submitted the PG&E work request form, noting recommended modifications in writing, to the PG&E Representative.

    9.1.2 Contractor acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arises from or are in any way connected with the release or spill of any legally designated Hazardous Material or Waste and arises from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

    9.1.3 Contractor shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity. Contractor shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

    9.1.4 To the extent necessary, each party was represented by counsel in the negotiation and execution of this Contract.

    9.2 CLAIMS PROCEDURE

    9.2.1 REPORTS: Contractor shall report to PG&E's Representative each case of injury to or death of person or injury to property immediately after knowledge of the occurrence. This condition shall be included in all Subcontracts.

    9.2.2 CONTRACTOR'S RESPONSIBILITY: Contractor shall make every effort to promptly acknowledge and satisfactorily settle, within a reasonable time after it arises or occurs, any loss, damage, expense, or liability for which Contractor is responsible under this Contract.

    9.2.3 Contractor shall promptly resolve, at Contractor's expense, all claims for private property

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line  
08/01/2014 kbw4

Contract 4400009030  
Attachment 4: General Conditions  
Trees, Incorporated  
Page 12 of 31

damage or loss caused by Contractor.

9.3 TAX WITHHOLDING: Contractor represents and warrants that it will withhold all taxes, if any, which are required to be withheld under applicable law with respect to payments to persons hired by Contractor who perform services for PG&E. Contractor shall indemnify and hold PG&E harmless, on an after-tax basis, for any liability incurred by PG&E as a result of Contractor's failure to institute any such required withholding.

9.4 INFRINGEMENT PROTECTION: Contractor represents to PG&E that the Work to be performed, and the materials prepared or used, under this Contract will not infringe upon the copyright, patent or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. Contractor agrees to indemnify and hold PG&E harmless from any suit, demand or claim made against PG&E alleging any such infringement or violation. In addition to the foregoing, if there is such a claim, Contractor agrees at PG&E's option to either procure for PG&E the right to continue using the material, replace the material with non-infringing material or modify it so it becomes non-infringing, or remove the item and refund the applicable portion of the Contract price; provided, however that the replaced or modified material shall be equal to that contracted for hereunder and satisfactory to PG&E. Contractor further agrees to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorney's fees incurred by PG&E in defense against such suit.

9.5 WITHHOLDING

9.5.1 PG&E may withhold from payment due Contractor hereunder such amounts as, in PG&E's opinion, are reasonably necessary to provide security against loss, damage, expense, and liability covered by the indemnity provision set forth above. Thereafter, PG&E may, if Contractor fails to settle any loss, damage, expense, or liability, take over the adjustment thereof and settle it for such sum as in PG&E's discretion is deemed reasonable and pay the sum from the monies withheld. This payment shall be deemed and treated as though made directly to Contractor as payment for Contractor's performance under this Contract.

9.5.2 If PG&E settles the loss, damage, expense, and liability for less than the amount of monies which it has previously withheld from monies otherwise due Contractor, PG&E shall pay to Contractor the balance over and above the amount of such settlements but not until all known or reasonably anticipated matters for which Contractor is responsible have been properly settled or terminated.

9.6 LIMITATION OF LIABILITY: TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, PG&E SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES, WHETHER IN CONTRACT, TORT, EQUITY, OR OTHERWISE, FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES, EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND REGARDLESS OF WHETHER OR NOT PG&E HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR UNRECOVERED OVERHEAD AND, UNLESS EXPRESSLY AUTHORIZED IN ADVANCE IN WRITING AND SPECIFICALLY ASSUMED BY PG&E, COMMITMENTS TO THIRD PARTIES, SUCH AS SUBCONTRACTS, RENTAL OR LEASE AGREEMENT(S), AND PERSONAL SERVICES CONTRACTS.

10. INSURANCE

Contractor shall maintain the following insurance coverage. Contractor is also responsible for its Subcontractors maintaining sufficient limits of the same insurance coverage.

10.1 WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY

10.1.1 Workers' Compensation insurance or self-insurance indicating compliance with any applicable labor codes, acts, laws, or statutes, state or federal, including LS&H and Jones Act, where Contractor performs Work.

10.1.2 Employers' Liability insurance shall not be less than $1,000,000 for injury or death per accident.

10.2 COMMERCIAL GENERAL LIABILITY

    10.2.1 Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, including coverage for fire suppression, with no coverage deletions. Work that involves chemical spraying shall include coverage for pesticide and herbicide application.

    10.2.2 The limit shall not be less than $10,000,000 per occurrence for bodily injury, property damage and personal injury and products/completed operations. Defense costs shall be provided as an additional benefit and not included within the limits of liability. Coverage limits may be satisfied using an umbrella or excess liability policy.

    10.2.3 Coverage shall: (i) By "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of Work performed by or for the Contractor, including completed operations; (ISO Form CG 2010 11/85 or equivalent). If the CGL policy includes "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement: "PG&E, its affiliates, subsidiaries, parent company, directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement"; (ii) Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; and (iii) include a severability of interest clause. The additional insureds shall fully cooperate with the Contractor on any Claim.

10.3 PROFESSIONAL LIABILITY INSURANCE

    10.3.1 Errors and Omissions Liability insurance appropriate to the Contractor's profession. Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract, including coverage for consequential financial loss and fire suppression, with no coverage deletions.

    10.3.2 The limit shall not be less than $10,000,000 per occurrence.

    10.3.3 Coverage shall be endorsed to specify that the Contractor's insurance is primary and that any Insurance or self-insurance maintained by PG&E shall not contribute with it.

10.4 BUSINESS AUTO

    10.4.1 Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

    10.4.2 The limit shall not be less than $5,000,000 each accident for bodily injury and property damage. Coverage limits may be satisfied using an umbrella or excess liability policy.

10.5 ADDITIONAL INSURANCE REQUIREMENTS

    10.5.1 Before commencing performance of Work, Contractor shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Contractor.

    10.5.2 Should any of the above described policies be cancelled before the expiration date thereof, the insurer shall deliver notification to PG&E in accordance with the policy provisions.

    10.5.3 Certificates of insurance and endorsements shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf and must be submitted by e-mail or fax only:

        Certificate Holder: Pacific Gas and Electric Company
        c/o EXIGIS LLC
        E-mail: support@exigis.com
        Fax: 646-755-3327

Tree Trimming; Tree and Brush Removal Inside 10 Feet of Energized Line  
08/01/2014 kbw4

Contract 4400009030  
Attachment 4: General Conditions  
Trees, Incorporated  
Page 14 of 31

    A copy of all such insurance documents shall be sent to PG&E's Contract negotiator and/or Contract administrator at Contract execution and whenever the terms of the insurance policy are updated or renewed.

    10.5.4  PG&E may inspect the original policies or require complete certified copies, at any time.

    10.5.5  Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

    10.5.6  Contractor shall not allow any required insurance coverage to lapse during the term of this Contract. Contractor shall obtain and have in place replacement coverage in accordance with the requirements of this Contact and shall furnish PG&E with certificates of insurance and additional insured endorsements of all required insurance before termination or expiration of prior coverage.

    10.5.7  All policies or binders with respect to insurance maintained by Contractor shall waive any right of subrogation of the insurers hereunder against PG&E, its parent company, affiliates and officers, directors, employees, agents and representatives of each of them.

10.6  RESPONSIBILITY FOR NON-COMPLIANCE WITH INSURANCE REQUIREMENTS

    10.6.1  NONE OF THE FOREGOING INSURANCE REQUIREMENTS CAN BE WAIVED WITHOUT THE EXPRESS WRITTEN CONSENT OF AN OFFICER OF PG&E OR THE PG&E REPRESENTATIVE AUTHORIZED TO SIGN THIS CONTRACT.

    10.6.2  Notwithstanding any other provisions of this Contract and separate and apart from Contractor's obligation to indemnify PG&E pursuant to Article 9 and the insurance requirements in Article 10 hereof, if Contractor's insurance carrier fails or refuses to defend or indemnify PG&E pursuant to an additional insured endorsement because of a failure to obtain an additional insured endorsement, policy deductible, self-insured retention, or other unauthorized coverage deletion, Contractor shall stand in the place of its insurer and defend and indemnify PG&E and its officers, directors, agents, and employees to the same extent that an insurer issuing ISO form occurrence coverage without coverage deletions would under California law. If Contractor unreasonably fails or refuses to so defend and indemnify, Contractor shall be liable to PG&E for all resulting damages, including but not limited to attorney's fees and imposition of punitive damages.

11. FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT

    11.1  FORCE MAJEURE: Neither PG&E nor Contractor shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of the affected party. In the event either party claims that performance of its obligations was prevented or delayed by any such cause, that party shall promptly notify the other party of that fact, and of the circumstances preventing or delaying performance. Such party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

    11.2  CANCELLATION FOR CAUSE:

        11.2.1  PG&E may, at its option, cancel or suspend this Contract or any one or more CWAs for cause including, but not limited to, the following situations: (i) the failure, refusal or inability of the Contractor to perform the Work in accordance with this Contract for any reason (except as specified in the section titled "Force Majeure"); or (ii) Contractor has become insolvent, has failed to pay its bills, or has had checks for payment of its bills returned from suppliers and Subcontractors due to insufficient funds; or (iii) a legal action is placed against Contractor which, in PG&E's opinion, may interfere with the performance of the Work; or (iv) in PG&E's opinion, the Work will not be completed in the specified time and PG&E has requested Contractor to take steps necessary to accomplish the required progress and completion, and Contractor has failed to do so. In addition PG&E may at its option and without prejudice to its