# EXHIBIT D

FILED
Superior Court Of California,
Sacramento

05/23/2016

amacias

By _____ , Deputy

Case Number:

JCCP 4853

1  Craig S. Simon (SBN 78158)
   **BERGER KAHN, A LAW CORPORATION**
2  2 Park Plaza, Suite 650
   Irvine, CA 92614
3  Phone: (949) 474-1880 • Fax: (949) 474-7265
   csimon@bergerkahn.com

4  Maura Walsh Ochoa (SBN 193799)
5  **GROTEFELD, HOFFMANN, SCHLEITER,**
   **GORDON, OCHOA & EVINGER LLP**
6  655 Montgomery Street, Suite 1220
   San Francisco, CA 94111
7  Phone: (415) 344-9670 • Fax: (415) 989-2802
   mochoa@ghlaw-llp.com

8
9  Co-Liaison Counsel for Subrogation Plaintiffs

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11            **IN AND FOR THE COUNTY OF SACRAMENTO**

12

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 3.550) **BUTTE FIRE CASES.** | No. JCCP 4853 **MASTER COMPLAINT** (Subrogation Plaintiffs) Judge: Hon. Allen H. Sumner Dept: 42 **JURY TRIAL DEMANDED** |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

File by Fax

---

SUBROGATION MASTER COMPLAINT; Butte Fire Cases, JCCP Case No. 4853

1

**CONTENTS**

2   I.   INTRODUCTION ................................................................................. 1

3   II.  THE PARTIES ................................................................................... 4

4        A.   SUBROGATION PLAINTIFFS ............................................... 4

5        B.   DEFENDANTS .......................................................................... 4

6        C.   DOE DEFENDANTS ................................................................ 5

7        D.   AGENCY, JOINT VENTURE, AND CONCERT OF ACTION ....................... 5

8        E.   JURISDICTION AND VENUE ................................................. 6

9   III. FACTUAL BASIS FOR THE CLAIMS ASSERTED ................................... 6

10       A.   DEFENDANTS WERE REQUIRED TO REMOVE HAZARDS TO

11            ENSURE THE SAFE OPERATION OF ELECTRICAL POWER LINES ........ 6

12       B.   AMADOR & CALAVERAS COUNTIES WERE IN THE MIDST OF A

13            SEVERE DROUGHT ................................................................ 7

14       C.   THE BUTTE FIRE WAS CAUSED BY DEFENDANTS' CONSCIOUS

15            DISREGARD FOR BOTH THE DANGEROUS CONDITIONS AND

16            THEIR ATTENDANT RESPONSIBILITIES ............................... 8

17       D.   PG&E HAS A PATTERN AND PRACTICE OF CONDUCT

18            DEMONSTRATING A DISREGARD FOR PUBLIC SAFETY ............ 11

19  IV.  CAUSES OF ACTION ........................................................................ 13

20  FIRST CAUSE OF ACTION – NEGLIGENCE ............................................ 13

21  SECOND CAUSE OF ACTION – OMITTED ..............................................

22  THIRD CAUSE OF ACTION – OMITTED ..................................................

23  FOURTH CAUSE OF ACTION – INVERSE CONDEMNATION ...................... 15

24  FIFTH CAUSE OF ACTION – PUBLIC NUISANCE ................................... 16

25  SIXTH CAUSE OF ACTION – PRIVATE NUISANCE ................................. 20

26  SEVENTH CAUSE OF ACTION – OMITTED ............................................

27  EIGHTH CAUSE OF ACTION – TRESPASS .............................................. 21

28  NINTH CAUSE OF ACTION – VIOLATION OF PUBLIC UTILITIES CODE § 2106 ........ 21

i

TENTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE §

13007 ..................................................................................................................... 23

PRAYER FOR RELIEF .............................................................................................. 23

JURY DEMAND ......................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION[1]

1.    On the afternoon of September 9, 2015, residents and property owners of Calaveras and Amador Counties had no idea devastation would soon ensue from a raging wildland fire that later became known as the Butte Fire ("Butte Fire"). The Butte Fire started near Butte Mountain Road, southeast of Jackson in Amador County, when electrical power lines constructed, owned, operated, managed, and/or maintained by **PACIFIC GAS AND ELECTRIC COMPANY** ("PG&E") came into contact with adjacent native vegetation that had been left in a hazardous condition due to the disregard of established fire safety management practices by **PG&E** and/or their subcontractors **ACRT, INC.** ("ACRT") and **TREES, INC.** ("TREES").

2.    Over the following weeks, the Butte Fire spread rapidly, causing extensive damage within Calaveras and Amador Counties. Over 4,000 firefighters battled the blaze. The



**Figure 1: The Uncontrolled Butte Wildfire**

[1] The Master Complaint filed on behalf of Individual Plaintiffs contained 105 numbered paragraphs with 10 Causes of Action. Many of the Individual Plaintiffs are insured with one or more of the Subrogation Plaintiffs, and therefore Subrogation Plaintiffs "stand in the shoes" of their insureds under the law of subrogation. To make it easier on the Court, Subrogation Plaintiffs have mirrored the Master Complaint of the Individual Plaintiffs where possible. The Individual Plaintiffs' Master Complaint Second Cause of Action-Wrongful Death, Third Cause of Action-Survival Action, and Seventh Cause of Action-Premises Liability have been omitted from this Master Complaint as not applying to the Subrogation Plaintiffs. Again, to make it more convenient for the Court, the Causes of Action alleged herein match by number the Causes of Action alleged by the Individual Plaintiffs.

1

fire was not reported as "contained" until October 1, 2015 – nearly one month after it started. The Butte Fire caused the deaths of two people, injured others, burned 70,868 acres, destroyed 571 homes, 368 outbuildings, and damaged approximately 44 other structures.

3.      Prior to the Butte Fire, the State of California, including Calaveras and Amador Counties, was experiencing record drought conditions that had persisted for approximately five years. As a result of the drought plaguing the state, Governor Edmund G. Brown, Jr., declared a state of emergency on two separate occasions leading up to the Butte Fire. It is well-known that drought conditions create a significantly increased risk for uncontrolled wildfires, and if power lines come into contact with vegetation during a drought, the consequences will likely be catastrophic. **PG&E, ACRT,** and **TREES** (collectively "**DEFENDANTS**") failed to identify, inspect, manage, and/or control vegetation growth near power lines that were constructed, owned, operated, managed, and/or maintained by **PG&E. DEFENDANTS'** failure created the foreseeable danger of vegetation coming into contact with energized power lines and igniting a raging wildfire.

4.      Power lines were the second-leading cause of wildfires in 2013 (the most recent year for which statistics are available). Conditions that cause power line fires – particularly high winds – are generally the same conditions that contribute to the volatile spread of fires, and power line fires tend to be disproportionately larger than those caused by other ignition sources. Cal Fire long ago determined that communities along the Sierras foothills – including Calaveras and Amador Counties – were at high risk from wildfire.

1       5.    The tree that came in contact with **PG&E's** power line and started the Butte Fire

2   was a gray pine approximately forty-four (44) feet tall and only seven (7) inches in diameter

3   ("**ORIGIN PINE**").  It was surrounded and held upright by a closed stand of other gray pines

4   until **DEFENDANTS** removed two exterior gray pines from the stand left the weak, interior

5   **ORIGIN PINE** exposed and vulnerable to failure, leaning in a direct path toward the sun and



**Figure 2:  The Charred Tip of the Origin Tree Showing Where It Hit the Live Wire**

20   **PG&E's** power line.  Within less than one year after the other pines were removed, the

21   **ORIGIN PINE** leaned further over, made contact with **PG&E's** power line, and ignited the

22   Butte Fire – all while the area of origin was at high risk of a wildfire and under a state of

23   emergency due to severe drought.

3

## II.   THE PARTIES

### A.   SUBROGATION PLAINTIFFS

6.     **SUBROGATION PLAINTIFFS**[2] in this case were and are insurers authorized to carry on the business of insurance within the State of California as an insurance company. The insured(s) of **SUBROGATION PLAINTIFFS** owned property in Amador and/or Calaveras Counties.

7.     As a result of the Butte Fire, **SUBROGATION PLAINTIFFS** have paid and/or will pay money to their respective insured(s) under their policies of insurance for losses caused by the Butte Fire.  Such payments include, but are not limited to repair of real and personal property, replacement of real and personal property, additional living expenses, loss of use and business interruption.  The money was paid to their insured(s) pursuant to various homeowners, automobile, business/commercial and property insurance policies.  This action seeks recovery of amounts paid, and to be paid, by **SUBROGATION PLAINTIFFS** to their insured(s).

### B.   DEFENDANTS

8.     At all relevant times Defendants **PG&E** was a corporation authorized to do business and doing business in the State of California, with its principal place of business in San Francisco.  **PG&E** provides customers with public utility services, and services relating to the generation of energy, transmission of electricity and natural gas, generation of electricity, and the distribution of energy.

9.     **INTENTIONALLY OMITTED**

10.     Defendant **ACRT** is an Ohio corporation doing business all over the United States as a utility vegetation management consulting and training company, and has been doing business in California since 1995.   At all relevant times, **ACRT** provided vegetation management consulting services to **PG&E** in Calaveras and Amador Counties pursuant to an agency, service, employment and/or joint venture relationship.  At all relevant times **ACRT** was

---

[2] The plural term "Subrogation Plaintiffs" is used for ease of reference. One insurance company could file an adoption form incorporating the terms of this Master Complaint, and the plural term applies equally to the single insurer.

4

1    the agent of **PG&E** and was acting within the course and scope of that agency, service,
2    employment, and/or joint venture relationship.

3    11.    Defendant **TREES** is a Delaware corporation doing business all over the United
4    States as a utility vegetation management company, and has been doing business in California
5    since 2013.    **TREES** provided vegetation management services to defendant **PG&E** in
6    Calaveras and Amador Counties pursuant to an agency, service, employment, and/or joint
7    venture relationship.   At all relevant times, **TREES** was the agent of **PG&E** and was acting
8    within the course and scope of that agency, service, employment, and/or joint venture
9    relationship.

10    **C.    DOE DEFENDANTS**

11    12.    Except as described herein, **SUBROGATION PLAINTIFFS** are ignorant of the
12    true names and/or capacities of the Defendants sued as Does 1 through 100, inclusive, and
13    therefore, **SUBROGATION PLAINTIFFS** sue these Defendants by such fictitious names.
14    Following further investigation and discovery, **SUBROGATION PLAINTIFFS** will seek leave
15    of this Court to amend this Master Complaint to allege their true names and capacities when
16    ascertained.  These fictitiously named Doe Defendants are responsible in some manner for the
17    acts, occurrences, and events alleged herein.  These Doe Defendants aided, abetted, and/or
18    conspired with **Defendants** in the wrongful acts and course of conduct, or otherwise negligently
19    caused the damages and injuries claimed herein and are responsible in some manner for the acts,
20    occurrences, and events alleged in this Master Complaint.

21    **D.    AGENCY, JOINT VENTURE, AND CONCERT OF ACTION**

22    13.    At all relevant times, **DEFENDANTS** were the agents, servants, employees,
23    partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other
24    **DEFENDANTS** and were at all times operating and acting within the purpose and scope of said
25    agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each
26    **DEFENDANT** has ratified and approved the acts of each of the remaining **DEFENDANTS**.
27    Each **DEFENDANT** aided and abetted, encouraged, and rendered substantial assistance to the
28    other **DEFENDANTS** in breaching their obligations to **SUBROGATION PLAINTIFFS**.  In

taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings alleged herein, each of the **DEFENDANTS** acted with an awareness of his/her/its primary wrongdoing and realized his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**E.  JURISDICTION AND VENUE**

14.  This Court has jurisdiction over **DEFENDANTS** and the subject matter of this action pursuant to Code of Civil Procedure § 410.10.

15.  Venue is proper in this Court pursuant to Code of Civil Procedure § 404.3 and California Rules of Court, rule 3.540.  The Honorable Allen H. Sumner of the Superior Court of California, County of Sacramento was assigned to sit as Coordination Trial Judge by the Judicial Council of California.

**III.  FACTUAL BASIS FOR THE CLAIMS ASSERTED**

**A.  DEFENDANTS WERE REQUIRED TO REMOVE HAZARDS TO ENSURE THE SAFE OPERATION OF ELECTRICAL POWER LINES**

16.  At all relevant times, Defendant **PG&E**, and DOES 1 through 50 (collectively "**PG&E DEFENDANTS**"), were suppliers of electricity to members of the public in both Calaveras and Amador Counties.  As part of supplying electricity to members of the public, the **PG&E DEFENDANTS** installed, constructed, built, maintained, managed, owned, and/or operated overhead power lines, together with supporting poles and appurtenances, in both Calaveras and Amador Counties for the purpose of providing electricity for delivery to the general public.  Such lines existed at the point of origin of the Butte Fire near Butte Mountain Road, southeast of Jackson.

17.  Defendants **ACRT, TREES,** and DOES 51 to 100 contracted with **PG&E** for the purpose of maintaining **PG&E's** overhead power lines and/or providing utility vegetation management services near the power lines and facilities operated by **PG&E.**  Those services include, but are not limited to, assessing, monitoring, inspecting, trimming, cutting, maintaining, managing, and/or replacing vegetation surrounding and in close proximity to the lines and

facilities operated by **PG&E** to insure that those power lines operate safely and consistently with State and Federal regulations, specifically including but not limited to Public Resources Code §§4292 and 4293, and Public Utilities Commission General Orders 95 and 165.

18.     At all relevant times, **DEFENDANTS** had a duty to properly construct, inspect, repair, maintain, manage, and/or operate the power lines and to keep vegetation properly trimmed and maintained so as to prevent foreseeable contact with power lines.   In the construction, inspection, repair, maintenance, management, ownership, and/or operation of the power lines, **DEFENDANTS** had an obligation to comply with statutes, regulations and standards, specifically including, but not limited to Public Resources Code §§4292 and 4293, and Public Utilities Commission General Orders 95 and 165. In addition, **DEFENDANTS** were specifically aware that such standards and regulations were minimum standards and that **DEFENDANTS** had a duty to identify all vegetation that posed a foreseeable hazard to **PG&E's** power lines, and to manage the growth of vegetation near the power lines to prevent the foreseeable danger of contact between vegetation and power lines starting a wildfire, and to avoid exposing members of the general public to a risk of death, serious injury, and property damage.

**B.     AMADOR & CALAVERAS COUNTIES WERE IN THE MIDST OF A SEVERE DROUGHT**

19.     At all relevant times **DEFENDANTS** were aware that the State of California, and in particular Calaveras and Amador Counties, were in the midst of a severe drought. **DEFENDANTS** were aware that the drought conditions had existed for a number of years and were aware that fire danger was extraordinarily high.   At least a full year before the fire, California's climate was classified as suffering from "exceptional drought" conditions by the U.S. Drought Monitor.

20.     On January 17, 2014, Governor Edmund G. Brown, Jr., declared a state of emergency "*due to severe drought conditions.*"   The Governor's proclamation declared that "*dry conditions and lack of precipitation present urgent problems . . . and the risk of wildfires across the state is greatly increased.*"

21. Further, on August 2, 2014, Governor Brown declared a state of emergency due to the effects of wildfires in Northern California, declaring in part: "WHEREAS on January 17, 2014, I declared a State of Emergency based on the extreme drought that has persisted in the State. *The drought conditions have increased the State's risk of wildfires*. Recent lightning storms and high temperatures have further increased this risk and the spread of additional wildfires."

22. When the Butte Fire started on the afternoon of September 9, 2015, the temperature in the area was nearly 100 degrees, or close to 20 degrees higher than normal for that time of year, and relative humidity was near 8%. Further, a trough over the Central Valley maintained winds out of the northwest at 7 to 12 miles per hour with gusts reaching as high as 24 miles per hour.

23. **DEFENDANTS** knew that if power lines came into contact with nearby, weak and vulnerable vegetation, a fire would likely result. Given the well-publicized drought and wind conditions in the area, **DEFENDANTS** were aware that such a fire would rapidly escalate into an uncontrollable wildfire capable of profound devastation that would cause loss of life, personal injury, significant damage to real and personal property, and other serious harm to members of the general public, including the insured(s) of **SUBROGATION PLAINTIFFS**.

**C.   THE BUTTE FIRE WAS CAUSED BY DEFENDANTS' CONSCIOUS DISREGARD FOR BOTH THE DANGEROUS CONDITIONS AND THEIR ATTENDANT RESPONSIBILITIES**

24. **DEFENDANTS** were wanton, reckless, careless, and/or negligent in failing to properly maintain, manage, repair, and/or inspect the subject lines and adjacent vegetation. They failed to properly trim, prune, remove, and/or otherwise maintain vegetation near their lines so as to prevent hazardous contact with power lines. As a consequence, **DEFENDANTS** imperiled public safety, and increased the risk of exposing the insured(s) of **SUBROGATION PLAINTIFFS** to harm or injury due to a wildfire. The **ORIGIN PINE** that came in contact with **PG&E's** powerline and caused the Butte Fire had previously been surrounded or

1    "captured" by a stand of other gray pines.  A "stand" is a group of forest trees sufficiently

2    similar in age, size and type to be considered a unit.   In or around October 2014,



Figure 3: The Origin Pine After It Struck the PG&E Power Line and Started the Butte Fire

15   **DEFENDANTS** performed an inspection of the area of origin and identified two gray pines for

16   removal that were adjacent to the **ORIGIN PINE** and part of the exterior of the stand.  In or

17   around January 2015, **DEFENDANTS** removed those two gray pines.  The removal of the two

18   gray pines exposed interior trees, including the **ORIGIN PINE**, that were left open and leaning

19   to the south, directly toward the path of the sun and the power lines.  It is commonly known that

20   when a stand is altered and interior trees previously captured are then exposed to open spaces,

21   they are prone to failure.  It is also well understood that trees have a physical orientation toward

22   the path of the sun and this can have significant consequences for maintaining safety.

23   Nonetheless, **DEFENDANTS**, and each of them: (1) ignored the safety hazard presented by

24   exposing the interior, weaker trees; (2) recklessly cut the two exterior, strong trees that

25   prevented the weak **ORIGIN PINE** from leaning over onto **PG&E's** powerline, causing a

26   safety hazard; and (3) disregarded the obvious safety hazard at any subsequent inspection,

27   monitoring, and/or maintenance work in the area of origin.

28

1        25.    Prior to the Butte Fire, the **PG&E DEFENDANTS** used aerial images and

2    LIDAR data to inspect and/or monitor vegetation in the origin area, but the **ORIGIN PINE**

3    could not be identified and/or recognized solely by the use of such an imaging technique.  The

4    **PG&E DEFENDANTS** refused and/or failed to conduct an adequate inspection of individual

5    trees despite having more than enough financial resources to do so.      The **PG&E**

6    **DEFENDANTS** knew or should have known of the inadequacy of the aerial images and LIDAR

7    data in performing such inspections and/or monitoring vegetation, but failed to undertake

8    supplemental inspection methods to adequately identify potential hazards, choosing to put

9    profits over safety.

26.     As a result of **DEFENDANTS'** acts and omissions, the **ORIGIN PINE** contacted **PG&E's** electrical power line, and the top part of the tree ignited.  Burning embers



**Figure 4: The Perimeter of the Butte Fire**

fell onto the fine dead fuels below the wire, and started the Butte Fire, which in turn resulted in the deaths of two people, caused severe personal injuries to others, and burned in excess of 70,000 acres, including the destruction of real and personal property owned, occupied, controlled, and/or possessed by the insured(s) of **SUBROGATION PLAINTIFFS.**

**D.      PG&E HAS A PATTERN AND PRACTICE OF CONDUCT**
**DEMONSTRATING A DISREGARD FOR PUBLIC SAFETY**

27.     The **PG&E DEFENDANTS** were aware of the foreseeable danger from fires in Calaveras and Amador Counties during the summer months when environmental conditions pose a high risk of extensive conflagration, exacerbated by the prevalence of wind and a lack of moisture that are known factors in the spread of wildland fire.

28. With full knowledge of these sensitive conditions and their potential catastrophic consequences, the **PG&E DEFENDANTS** recklessly ignored the safety of the public. PG&E's callous disregard for safety is well-documented by the extensive history of fires caused by the **PG&E DEFENDANTS'** utility lines in Calaveras County, Amador County and surrounding communities. **According to records maintained by Cal Fire, approximately 100 fires have been started and attributed to PG&E's utility lines in Calaveras County, Amador County, and surrounding counties in the five years immediately before the Butte Fire erupted.**

29. Over approximately the past 10 years, the **PG&E DEFENDANTS** have been subject to numerous fines and penalties as a result of their failure to abide by safety rules and regulations. Yet, despite these penalties and fines, the **PG&E DEFENDANTS** have failed and refused to modify their behavior and have continued to conduct their business with a conscious disregard for the safety of the public, and in particular the safety of the insured(s) of **SUBROGATION PLAINTIFFS.** As a result of the **PG&E DEFENDANTS'** corporate culture that repeatedly chooses to put profits over safety, the CPUC launched an investigation into the manner by which officers, directors, and/or managing agents of the **PG&E DEFENDANTS** establish safety policies and practices to prevent catastrophic events such as the Butte Fire. Recognizing that the **PG&E DEFENDANTS** have repeatedly failed to modify their conduct despite having incurred over $1.6 billion in penalties and fines for safety violations, the president of the CPUC recommended an investigation of **PG&E's** actions and operations. In July of 2015, only two months before this fire, the president of the CPUC, ominously warned:

> **Despite major public attention, ongoing CPUC investigations (OIIs) and rulemakings (OIRs) into PG&E's actions and operations, including the investigations we voted on today, federal grand jury, and California Department of Justice investigation, continued safety lapses at PG&E continue to occur.**

30. As a result of the **PG&E DEFENDANTS'** repeated failure and/or refusal to follow safety rules and regulations, they have incurred almost two billion dollars in fines. Yet they continue – undeterred – to manage their utility operations in a manner demonstrating a conscious disregard for the safety of the public, including that of the insured(s) of **SUBROGATION PLAINTIFFS.** The **PG&E DEFENDANTS** admit to having been

12

1  responsible for the deaths of at least ten (10) people, and burns and injuries inflicted on at least

2  forty (40) others, since December of 2008.  They also conceded in public filings with the CPUC

3  to having made safety decisions that put profits over safety and that they repeatedly violated

4  safety regulations.  Five years to the day before the Butte Fire, the **PG&E DEFENDANTS**,

5  acting with conscious disregard for the safety of others, caused the deaths of eight people and

6  destroyed an entire neighborhood in San Bruno, California.  The deaths, injuries, and damage

7  occasioned by the Butte Fire are the result of the ongoing policies, practices, and/or financial

8  decisions made by the **PG&E DEFENDANTS** who have acted with a conscious disregard for

9  public safety, and created a corporate culture that places a priority for profits above safety in

10 their business operations.  The direct and legal consequence of these actions is to create an

11 environment in which management is incentivized to circumvent safety regulations, search for

12 loopholes to avoid compliance, and/or delay safety expenditures, for the sole purpose of

13 enhancing financial performance. Despite having caused the Butte Fire calamity, and the

14 resultant death, injury, and property damage to thousands of affected citizens of Calaveras and

15 Amador Counties, the **PG&E DEFENDANTS** have ratified their disregard for the safety of

16 others in failing to discipline any of the corporate executives who were responsible for creating

17 the corporate culture and decisions that led to underfunding necessary vegetation management

18 practices that created the foreseeable risk of this calamity occurring.

19 **IV.     CAUSES OF ACTION**

20 **FIRST CAUSE OF ACTION – NEGLIGENCE**

21 **(Against All Defendants)**

22      31.     **SUBROGATION PLAINTIFFS** incorporate and re-allege each of the

23 paragraphs set forth above as though fully set forth herein.

24      32.     The Butte Fire was a direct and legal result of the negligence, carelessness,

25 recklessness, and/or unlawfulness of **DEFENDANTS** who breached their respective duties

26 owed individually and/or collectively to the insured(s) of **SUBROGATION PLAINTIFFS** by,

27 including but not limited to: (1) failing to comply with the applicable statutory, regulatory,

28 and/or professional standards of care;  (2) failing to timely and properly maintain, manage,

1    inspect, and/or monitor the subject power line and/or adjacent vegetation; (3) failing to properly

2    cut, trim, prune, and/or otherwise keep vegetation at a sufficient distance to avoid foreseeable

3    contact with its power lines; (4) failing to trim and/or prune vegetation so as to avoid creation of

4    a safety hazard within close proximity of the subject power line; (5) failing to make the overhead

5    lines safe under all the exigencies created by surrounding circumstances and conditions; (6)

6    failing to conduct adequate, reasonably prompt, proper, effective, and/or frequent inspections of

7    the electrical distribution lines, wires, and/or associated equipment; (7) failing to design,

8    construct, monitor, and/or maintain high voltage electrical distribution lines in a manner that

9    avoids the potential to ignite a fire during long, dry seasons by allowing vegetation to grow in an

10   unsafe manner; (8) failing to install the equipment necessary and/or to inspect and repair the

11   equipment installed, to prevent electrical distribution and distribution lines from improperly

12   sagging, operating, and/or making contact with other metal wires placed on its poles and igniting

13   fires; (9) failing to keep equipment in a safe condition at all times to prevent fire; (10) failing to

14   de-energize power lines during fire prone conditions; (11) failing to de-energize power lines

15   after the fire's ignition; and/or (12) failing to properly train and to supervise employees and

16   agents responsible for maintenance and inspection of the distribution lines and/or vegetation

17   areas near those lines.

18        33.    As a result of **DEFENDANTS'** actions and omissions, the insured(s) of

19   **SUBROGATION PLAINTIFFS** have suffered damage as alleged in Paragraph 7.

20   **SUBROGATION PLAINTIFFS** who are obligated to make payments or have made payments

21   to their insured(s) are equitably subrogated to the rights of their insured(s), "step into their

22   shoes," and are entitled to bring this claim for payments made or to be made.

23        34.    **INTENTIONALLY OMITTED.**

24        35.    **INTENTIONALLY OMITTED.**

25        36.    **INTENTIONALLY OMITTED.**

26        37.    **INTENTIONALLY OMITTED.**

27        38.    **INTENTIONALLY OMITTED.**

28        39.    **INTENTIONALLY OMITTED.**

1   40.   **INTENTIONALLY OMITTED.**

2   **SECOND CAUSE OF ACTION**

3   **(Against All Defendants)**

4   41.   **INTENTIONALLY OMITTED.**

5   42.   **INTENTIONALLY OMITTED.**

6   43.   **INTENTIONALLY OMITTED.**

7   44.   **INTENTIONALLY OMITTED.**

8   45.   **INTENTIONALLY OMITTED.**

9   **THIRD CAUSE OF ACTION**

10   **(Against All Defendants)**

11   46.   **INTENTIONALLY OMITTED.**

12   47.   **INTENTIONALLY OMITTED.**

13   48.   **INTENTIONALLY OMITTED.**

14   49.   **INTENTIONALLY OMITTED.**

15   50.   **INTENTIONALLY OMITTED.**

16   **FOURTH CAUSE OF ACTION – INVERSE CONDEMNATION**

17   **(Against the PG&E DEFENDANTS and DOES 1 through 50)**

18   51.   **SUBROGATION PLAINTIFFS** incorporate and re-allege by this reference

19   each of the paragraphs set forth above as though fully set forth herein.

20   52.   On or about September 9, 2015, insured(s) of **SUBROGATION PLAINTIFFS**

21   were owners of real property and/or personal property located within Calaveras and Amador

22   Counties in the area of the Butte Fire.

23   53.   Prior to and on September 9, 2015, the **PG&E DEFENDANTS** installed, owned,

24   operated, used, controlled, and/or maintained power lines for the public delivery of electricity,

25   including a power line in the area of Butte Mountain Road, near Jackson, California.

26   54.   On September 9, 2015, as a direct, necessary, and legal result of the **PG&E**

27   **DEFENDANTS'** installation, ownership, operation, use, control, management, and/or

28   maintenance for a public use of the power lines, the power line came in contact with vegetation

1   and started the Butte Fire that burned in excess of 70,000 acres, including property owned or

2   occupied by insured(s) of **SUBROGATION PLAINTIFFS**.   The fire damaged and/or

3   destroyed the insured(s) of **SUBROGATION PLAINTIFFS'** real and personal property.

4       55.    The damage to the insured(s) of **SUBROGATION PLAINTIFFS'** real and

5   personal property was caused by the actions and omissions of the **PG&E DEFENDANTS** in

6   their installation, ownership, operation, use, control, management, and/or maintenance of the

7   power lines for a public use.

8       56.    **SUBROGATION PLAINTIFFS** have not received adequate compensation for

9   the damage to and/or destruction of the real and personal property of their insured(s), thus

10  constituting a taking of the insured(s) of **SUBROGATION PLAINTIFFS'** property by the

11  **PG&E DEFENDANTS** without just compensation.

12      57.    As a result of the actions and omissions of the **PG&E DEFENDANTS**, the

13  insured(s) of **SUBROGATION PLAINTIFFS** suffered damages to their real and personal

14  property, including loss of use, interference with access, and diminution in value and/or

15  marketability, which amounts were paid by **SUBROGATION PLAINTIFFS** in an amount

16  according to proof at trial.

17      58.    As a result of the actions and omissions of the **PG&E DEFENDANTS**,

18  **SUBROGATION PLAINTIFFS** directly have incurred and will continue to incur costs,

19  disbursements, and expenses, including reasonable attorney, appraisal, engineering, and other

20  expert fees due to the conduct of the **PG&E DEFENDANTS** in amounts that cannot yet be

21  ascertained, but which are recoverable pursuant to Code of Civil Procedure §1036.

22            **FIFTH CAUSE OF ACTION – PUBLIC NUISANCE**

23            **(Against All Defendants)**

24      59.    **SUBROGATION PLAINTIFFS** incorporate and re-allege by this reference

25  each of the paragraphs set forth above as though fully set forth herein.

26      60.    The insured(s) of **SUBROGATION PLAINTIFFS** own and/or occupy property

27  at or near the site of the Butte Fire.  At all relevant times, the insured(s) of **SUBROGATION**

28

1    PLAINTIFFS had a right to occupy, enjoy, and/or use their property without interference by

2    DEFENDANTS.

3        61.    DEFENDANTS owed a duty to the public, including the insured(s) of

4    SUBROGATION PLAINTIFFS, to conduct the maintenance and/or operation of power lines

5    and vegetation near their power lines in Calaveras and Amador Counties, specifically including

6    the power line near Butte Mountain Road, in a manner that did not threaten harm or injury to the

7    public welfare from operation of those power lines.

8        62.    The Butte Fire scorched the earth over 70,000 acres leaving only black

9    matchsticks where there were once homes, farms, meadows, fields, and forests.

10   DEFENDANTS created a condition that was harmful to the health of the public, including the

11   insured(s) of SUBROGATION PLAINTIFFS, and that interfered with the comfortable

12   occupancy, use, and/or enjoyment of the insured(s) of SUBROGATION PLAINTIFFS'

13   property. The insured(s) of SUBROGATION PLAINTIFFS did not consent, expressly or

14   impliedly, to DEFENDANTS' wrongful conduct.

15       63.    The hazardous condition that DEFENDANTS created and/or permitted to exist

16   affected a substantial number of people within the general public, including the insured(s) of

17   SUBROGATION PLAINTIFFS, and constituted a public nuisance under Civil Code §§3479

18   and 3480, and Public Resources Code §4171. Further, the ensuing uncontrolled wildfire

19   constituted a public nuisance under Public Resources Code §4170.

20       64.    The damaging effects of DEFENDANTS' poor maintenance of fire hazards and

21   the resulting wildfire are ongoing and affect the public at large. Because of the fire's location,

22   temperature, and duration, extensive areas of hydrophobic soils developed within the fire's

23   perimeter. This caused significant post fire runoff hazards to occur, including hillside erosion,

24   debris flow hazards, and sediment laden flow hazards. As a result, large quantities of ash and

25   sediment will be deposited in perennial and ephemeral watercourses, including the Calaveras

26   River and the Mokelumne River, that flow into the Pardee Reservoir and the New Hogan

27   Reservoir where that ash and sediment will ultimately be deposited. Hazardous minerals

28   including mercury left over from historic mining activities and asbestos from the geologic units

of ultramafic rock within the fire's perimeter will be found in the sediment and debris deposited into those watercourses and reservoirs. The Pardee Reservoir is the primary water source for the East Bay Municipal Water District and the New Hogan Reservoir is used as a source of irrigation and drinking water by the Calaveras County Water District and the Stockton East Water District. As a result of ash and sediment loading, the turbidity of the water in the reservoirs will increase and there will be changes in water chemistry. These effects are expected to last 2 to 5 years or longer.

65. As a result of **DEFENDANTS'** actions and omissions, the insured(s) of **SUBROGATION PLAINTIFFS** suffered harm that is different from the type of harm suffered by the general public. Specifically, the insured(s) of **SUBROGATION PLAINTIFFS** have lost the occupancy, possession, use, and/or enjoyment of their land, real, and/or personal property, including, but not limited to: a reasonable and rational fear that the area is still dangerous; a diminution in the fair market value of their property; an impairment of the salability of their property; soils that have become hydrophobic; exposure to an array of toxic substances on their land; the presence of "special waste" (as defined in 22 California Code of Regulations §66261.120) on their property that requires special management and disposal; and a lingering smell of smoke, and/or constant soot, ash, and/or dust in the air. To the extent that **SUBROGATION PLAINTIFFS** insured such losses and made payment for such losses, **SUBROGATION PLAINTIFFS** are entitled to recover such amounts from **DEFENDANTS**.

66. As a result of **DEFENDANTS'** actions and omissions, the insured(s) of **SUBROGATION PLAINTIFFS** have suffered, and will continue to suffer, discomfort, anxiety, fear, worries, and stress attendant to the interference with the insured(s) of **SUBROGATION PLAINTIFFS'** occupancy, possession, use, and/or enjoyment of their property, as alleged above. To the extent that **SUBROGATION PLAINTIFFS** insured such losses and made payment for such losses, **SUBROGATION PLAINTIFFS** are entitled to recover such amounts from **DEFENDANTS**.

67. A reasonable, ordinary person would be annoyed or disturbed by the condition created by **DEFENDANTS** and the resulting fire.

1    68.    The conduct of **DEFENDANTS** is unreasonable and the seriousness of the harm
2  to the public, including the insured(s) of **SUBROGATION PLAINTIFFS**, outweighs the social
3  utility of **DEFENDANTS'** conduct.

4    69.    The individual and/or collective conduct of **DEFENDANTS** set forth above
5  resulting in the Butte Fire is not an isolated incident, but is ongoing and/or a repeated course of
6  conduct, and **DEFENDANTS'** prior conduct and/or failures have resulted in other fires and
7  damage to the public.

8    70.    The unreasonable conduct of **DEFENDANTS** is a direct and legal cause of the
9  harm, injury, and/or damage to the public, including the insured(s) of **SUBROGATION**
10  **PLAINTIFFS**.  To the extent that **SUBROGATION PLAINTIFFS** insured such losses and
11  made payment for such losses, **SUBROGATION PLAINTIFFS** are entitled to recover such
12  amounts from **DEFENDANTS**.

13    71.    **DEFENDANTS** have individually and/or collectively, failed and refused to
14  conduct proper inspections and to properly trim, prune, and/or cut vegetation to ensure the safe
15  delivery of electricity to residents through the operation of power lines in the affected area, and
16  **DEFENDANTS'** individual and/or collective failure to do so exposed every member of the
17  public, residing and/or owning property in Calaveras and Amador Counties, to a foreseeable
18  danger of personal injury, death, and/or a loss of or destruction real and personal property.

19    72.    The conduct of **DEFENDANTS** constitutes a public nuisance within the meaning
20  of Civil Code §§3479 and 3480, Public Resources Code §§4104 and 4170, and Code of Civil
21  Procedure §731. Under Civil Code §3493, the insured(s) of **SUBROGATION PLAINTIFFS**
22  have standing to maintain an action for public nuisance because the nuisance is one that is
23  specially injurious and/or offensive to the senses of the **SUBROGATION PLAINTIFFS**,
24  unreasonably interferes with the comfortable enjoyment of their properties, unlawfully obstructs
25  the free and customary use of the insured(s) of **SUBROGATION PLAINTIFFS'** properties,
26  and caused individualized harm, injury, and damages to the insured(s) of **SUBROGATION**
27  **PLAINTIFFS**.

28

1    73.    For these reasons, the insured(s) of **SUBROGATION PLAINTIFFS** seek a

2    permanent injunction ordering that **DEFENDANTS** stop continued violation of Public Resource

3    Code §§4292 and 4293, and Public Utilities Commission General Order 95, Rule 35. Insureds

4    of **SUBROGATION PLAINTIFFS** also seek an order directing **DEFENDANTS** to abate the

5    existing and continuing nuisance described above, and to the extent that **SUBROGATION**

6    **PLAINTIFFS** insured such losses and made payment for such losses, **SUBROGATION**

7    **PLAINTIFFS** are entitled to recover such amounts from **DEFENDANTS**.

8                      **SIXTH CAUSE OF ACTION – PRIVATE NUISANCE**

9                              **(Against All Defendants)**

10    74.    **SUBROGATION PLAINTIFFS** incorporate and re-allege by this reference

11    each of the paragraphs set forth above as though fully set forth herein.

12    75.    **DEFENDANTS**, by their acts and omissions set forth above, directly and legally

13    caused an obstruction to the free use of the insured(s) of **SUBROGATION PLAINTIFFS'**

14    property, an invasion the insured(s) of **SUBROGATION PLAINTIFFS'** right to use their

15    property, and/or an interference with the enjoyment of the insured(s) of **SUBROGATION**

16    **PLAINTIFFS'** property resulting in the insured(s) of **SUBROGATION PLAINTIFFS**

17    suffering unreasonable harm and substantial actual damages constituting a nuisance pursuant to

18    Civil Code §§3479 and 3481.

19    76.    As a result of **DEFENDANTS'** actions and omissions, the insured(s) of

20    **SUBROGATION PLAINTIFFS** and each of them, suffered harm, injury, and damages, and to

21    the extent that **SUBROGATION PLAINTIFFS** insured such losses and made payment for such

22    losses, **SUBROGATION PLAINTIFFS** are entitled to recover such amounts from

23    **DEFENDANTS** in an amount according to proof at trial.

24    77.    **INTENTIONALLY OMITTED.**

25                              **SEVENTH CAUSE OF ACTION**

26                **(Against the PG&E DEFENDANTS and DOES 1 through 50)**

27    78.    **INTENTIONALLY OMITTED.**

28    79.    **INTENTIONALLY OMITTED.**

80.     **INTENTIONALLY OMITTED.**

81.     **INTENTIONALLY OMITTED.**

**EIGHTH CAUSE OF ACTION – TRESPASS**

**(Against All Defendants)**

82.     **SUBROGATION PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

83.     At all relevant times, the insured(s) of **SUBROGATION PLAINTIFFS** were the owners, tenants, and/or lawful occupants of property damaged by the Butte Fire.

84.     **DEFENDANTS**, in wrongfully acting and/or failing to act in the manner set forth above, caused the Butte Fire to ignite and/or spread out of control, causing harm, damage, and/or injury to the insured(s) of **SUBROGATION PLAINTIFFS**, resulting in a trespass upon the insured(s) of **SUBROGATION PLAINTIFFS'** property interests.

85.     The insured(s) of **SUBROGATION PLAINTIFFS** did not grant permission for **DEFENDANTS** to wrongfully act in a manner so as to cause the Butte Fire that spread and wrongfully entered upon their property, resulting in the harm, injury, and/or damage alleged above.

86.     As a direct and legal result of the wrongful conduct of **DEFENDANTS** that led to the trespass, the insured(s) of **SUBROGATION PLAINTIFFS** have suffered and will continue to suffer damages.  To the extent that **SUBROGATION PLAINTIFFS** insured such losses and made payment for such losses, **SUBROGATION PLAINTIFFS** are entitled to recover such amounts from **DEFENDANTS** in an amount according to proof at trial.

87.     **INTENTIONALLY OMITTED.**

88.     **INTENTIONALLY OMITTED.**

89.     **INTENTIONALLY OMITTED.**

**NINTH CAUSE OF ACTION – VIOLATION OF PUBLIC UTILITIES CODE § 2106**

**(Against the PG&E DEFENDANTS and DOES 1 through 50)**

90.     **SUBROGATION PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

1    91.    The **PG&E DEFENDANTS** are legally required to comply with the rules and
2    orders promulgated by the Public Utilities Commission pursuant to Public Utilities Code §702.

3    92.    Pursuant to Public Utilities Code §2106, a public utility that fails to carry out
4    duties required by the California Constitution, a law of the State, a regulation or order of the
5    Public Utilities Commission, which thereby leads to loss or injury, is liable for that loss or
6    injury.

7    93.    The **PG&E DEFENDANTS** are required to provide and maintain service,
8    equipment and facilities in a manner adequate to maintain the safety, health and convenience of
9    their customers and the public, pursuant to Public Utilities Code §451.

10    94.    The **PG&E DEFENDANTS** are required to design, engineer, construct, operate,
11    manage and maintain electrical supply lines in a manner consistent with their use, taking into
12    consideration local conditions and other circumstances, so as to provide safe and adequate
13    electric service, pursuant to Public Utility Commission General Orders 95 and 165, and Rule
14    33.1.

15    95.    The **PG&E DEFENDANTS** are required to maintain vegetation in compliance
16    with Public Resources Code §§4293, 4294, and 4435, and Health & Safety Code §13001.

17    96.    By their conduct alleged above, the **PG&E DEFENDANTS** violated Public
18    Utilities Code §§702 and 451, and/or Public Utilities Commission General Order 95, thereby
19    imposing liability on the **PG&E DEFENDANTS** for losses, damages, and/or injury sustained
20    by Plaintiff pursuant to Public Utilities Code §2106.

21    97.    By further reason of the premises set forth above, the **PG&E DEFENDANTS**,
22    acted in a manner that violated the laws of this State and/or the orders or decisions of the Public
23    Utilities Commission, as referenced herein.

24    98.    As a result of the act and omissions of the **PG&E DEFENDANTS**,
25    **SUBROGATION PLAINTIFFS**, and each of them have suffered harm, injury and damages as
26    set forth above.

27    99.    **INTENTIONALLY OMITTED.**

28

**TENTH CAUSE OF ACTION – VIOLATION OF HEALTH & SAFETY CODE §13007**

**(Against All Defendants)**

100.   **SUBROGATION PLAINTIFFS** incorporate and re-allege by this reference each of the paragraphs set forth above as though fully set forth herein.

101.   By engaging in the acts and/or omissions alleged in this Master Complaint, **DEFENDANTS** willfully, negligently, carelessly, recklessly, and/or in violation of law, set fire to and/or allowed fire to be set to the property of another in violation of Health & Safety Code §13007.

102.   As a result of **DEFENDANTS'** violation of Health & Safety Code §13007, **SUBROGATION PLAINTIFFS** suffered recoverable damages under Health & Safety Code §13007.21 for amounts paid to its insured(s).

103.   As a result of the **DEFENDANTS'** violation of Health & Safety Code §13007, **SUBROGATION PLAINTIFFS** are entitled to reasonable attorneys' fees under Code of Civil Procedure §1021.9.

104.   As a result of the act and omissions of the **PG&E DEFENDANTS**, **SUBROGATION PLAINTIFFS**, and each of them have suffered harm, injury and damages as set forth above.

105.   **INTENTIONALLY OMITTED.**

**PRAYER FOR RELIEF**

WHEREFORE, **SUBROGATION PLAINTIFFS** pray for judgment against **DEFENDANTS PACIFIC GAS AND ELECTRIC COMPANY, TREES, INC., ACRT, INC.**, and DOES 1 through 100, and each of them as follows:

1.   For monetary damages in an amount to be proven at trial, which exceeds the jurisdictional minimum of this Court;

2.   For prejudgment interest in accordance with California Civil Code §3287;

3.   For attorneys' fees and cost of suit to the extent allowed by California law, including California Code of Civil Procedure §1036;

4.     On the claim for inverse condemnation against **PG&E**, all amounts recoverable under the California Constitution including prejudgment interest, attorney's fees, litigation expenses, expenses for consultants and experts, and other just compensation; and

5.     For such other relief as the Court deems just and proper.

Dated: May 23, 2016

**Grotefeld, Hoffmann, Schleiter, Gordon, Ochoa & Evinger LLP**

By: _____
Maura Walsh Ochoa
Liaison Counsel for Subrogation Plaintiffs

Dated: May 23, 2016

**Berger Kahn, A Law Corporation**

By: _____
Craig S. Simon
Liaison Counsel for Subrogation Plaintiffs

1

**JURY DEMAND**

2

**SUBROGATION PLAINTIFFS** demand a trial by jury as to all claims in this action.

3     Dated:  May 23, 2016                           **Grotefeld, Hoffmann, Schleiter, Gordon,**
                                                      **Ochoa & Evinger LLP**

4

5                                                     By: _____
                                                      Maura Walsh Ochoa
6                                                     Liaison Counsel for Subrogation Plaintiffs

7

8     Dated:  May 23, 2016                           **Berger Kahn, A Law Corporation**

9                                                     By: _____
                                                      Craig S. Simon
10                                                    Liaison Counsel for Subrogation Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Butte Wildfire Litigation*

**ELECTRONIC PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within action.  I am employed by Berger Kahn, A Law Corporation, whose business address is:  2 Park Plaza, Suite 650, Irvine, California 92614.

On May 23, 2016 I caused to be served the within document(s) described as: **MASTER COMPLAINT** (Subrogation Plaintiffs) on the interested parties in this action pursuant to the most recent Omnibus Service List by submitting an electronic version of the document(s) via file transfer protocol (FTP) to CaseHomePage through the upload feature at www.casehomepage.com.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 23, 2016 at Irvine, California.

_____

ATHENA KETCHER

-1-

PROOF OF SERVICE